Cynthia A. Ricketts (Arizona Bar No. 012668)
cindy.ricketts@dlapiper.com
Shane D. Gosdis (Arizona Bar No. 022471)
shane.gosdis@dlapiper.com
DLA Piper US LLP
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (480) 606-5100
Facsimile: (480) 606-5101

Attorneys for Defendants Costar Realty
Information, Inc., and Costar Group, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PETER STROJNIK, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE COSTAR REALTY INFORMATION, INC., a Corporation; COSTAR GROUP, INC.,<br><br>　　　　　　Defendants. | Case No. 2:08-CV-1276<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT** |

　　　　Defendants The Costar Realty Information, Inc. and Costar Group, Inc. ("Defendants") hereby request that the Court enter an order granting their Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6), or in the alternative granting their Motion for a More Definite Statement pursuant to Federal Rules of Civil Procedure 12(b)(e). Defendants previously moved to dismiss Plaintiff's original Complaint, which asserted claims for violations of the Arizona Commercial Electronic Mail Act ("ACEMA") and the Arizona Consumer Fraud Act ("ACFA"). In response to that Motion, Plaintiff's First Amended Complaint asserts new causes of action, attempting to remedy the admitted fatal deficiencies with Plaintiff's original Complaint. Specifically, the First Amended Complaint alleges causes of action for violation of the ACEMA, ACFA, trespass, and

intrusion upon seclusion, each of which are preempted by federal law. Not only are Plaintiff's claims preempted as a matter of law, they are so vague and ambiguous that they fail to state a claim upon which relief may be granted and make it virtually impossible for Defendants to frame a meaningful response. This is true even though this is Plaintiff's second attempt to state claims upon which relief may be granted.[1] This Motion is supported by the following Memorandum of Points and Authorities and the Court's entire record herein.

/s/Shane D. Gosdis
Cynthia A. Ricketts
Shane D. Gosdis
DLA Piper US LLP
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: (480) 606-5100
Facsimile: (480) 606-5101

Attorneys for Defendants The Costar Realty Information, Inc. and Costar Group, Inc.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

The crux of Plaintiff's Complaint is that Defendants violated ACEMA by sending to Plaintiff a single commercial e-mail. Plaintiff alleges causes of action, among others, under ACEMA and the ACFA, each of which is explicitly based on ACEMA regulations purporting to regulate commercial e-mail messages. In 2003, Congress passed the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM

---

[1] This lawsuit is one of 12 other lawsuits that Plaintiff has initiated against other companies alleging identical claims. *See Strojnik v. Wyndham Hotel Group, Inc.*, filed June 10, 2008, Case No. CC2008-123561; *Strojnik v. E-Justice/Peter Lawrence*, filed June 10, 2008, Case No. CC2008-123537; *Strojnik v. Costa Cruise Lines NV LLC*, filed June 10, 2008, Case No. CC2008-123595; *Strojnik v. Pro Sound and Stage Lighting*, June 11, 2008, Case No. CC2008-124321; *Strojnik v. Kerzner Int'l Resorts, Inc.*, filed June 11, 2008, Case No. CC2008-124338; *Strojnik v. Law.Com*, filed June 11, 2008, Case No. CC2008-124353; *Strojnik v. Strafford Publications, Inc.*, filed June 11, 2008, Case No. CC2008-124386; *Strojnik v. National Constitution Center*, filed June 11, 2008, Case No. CC2008-124424; *Strojnik v. Smarter Travel Media LLC*, filed June 11, 2008, Case No. CC2008-124477; *Strojnik v. Telestrat Consulting, Inc.*, filed June 18, 2008, Case No. CC2008-131917; *Strojnik v. Vertue Corporation*, filed June 18, 2008, Case No. CC2008-131925; and *Strojnik v. Gate 1 Ltd.*, filed June 18, 2008, Case No. CC2008-131828. It is clear that Plaintiff has filed these baseless strike suits in an effort to extort money from Defendants and the other companies he has sued.

Act"). Congress intended that the CAN-SPAM Act occupy the field of commercial e-mail regulation. As a result, the CAN-SPAM Act preempts any state laws that attempt to regulate commercial e-mails. Because Plaintiff's claims are based upon ACEMA and fall well within the scope of the CAN-SPAM Act, they are preempted under federal law.

Not only are Plaintiff's ACEMA and ACFA claims preempted, they fail to state facts sufficient to state a claim. Indeed, the Amended Complaint is so vague and ambiguous that Defendants cannot be expected to frame a response. For example, the Complaint does not allege that Defendants "knowingly" sent an e-mail to Plaintiff nor does it allege which, if any, of the various ACEMA provisions regulating commercial e-mail Defendants allegedly violated. Instead, Defendants are left to speculate as to the facts under which Plaintiff purports to state a claim. This is true even though Plaintiff filed his First Amended Complaint after Defendants filed their initial Motion to Dismiss, alerting Plaintiff of these fatal deficiencies.

Plaintiff similarly fails to state claims for trespass and intrusion upon seclusion. Plaintiff fails to establish as a matter of law that the receipt of a single e-mail dispossessed Plaintiff of any recognizable chattel or otherwise deprived Plaintiff's use of such chattel for any substantial period of time. Likewise, Plaintiff fails to establish as a matter of law that a single business communication constitutes an intrusion upon seclusion under Arizona law. Moreover, the Supremacy Clause of the United States Constitution preempts Plaintiff's common law trespass and intrusion upon seclusion claims based on conduct that is expressly allowed by federal law. As such, Plaintiff has failed to state a cause of action against Defendants and his Amended Complaint should be dismissed with prejudice. Plaintiff should not be permitted to continue this baseless and frivolous lawsuit.

**RELEVANT FACTUAL BACKGROUND**

Defendants operate a commercial real estate website and listing service. On June 4, 2008, Defendants sent an e-mail to Plaintiff's e-mail address advertising Defendants' website ("e-mail"). *See* Exhibit 1 to Amended Complaint. Defendants sent the e-mail from their corporate e-mail address, "announcements@Costar," as is evident on the face of

the e-mail itself. *See id.* Equally evident is the e-mail's "opt-out" provision, which plainly allows Plaintiff to opt-out of receiving further e-mail messages from Defendants. *See id.*

As Plaintiff admits, the purpose of the e-mail was to encourage "Plaintiff to purchase, rent or invest in the property, goods or services described in the e-mail," namely commercial real estate. Amended Complaint at ¶ 3. The e-mail's subject heading confirms as much. It provides: "Find a Commercial Property Now – No Cost/No Registration." *See* Exhibit 1 to Amended Complaint. The e-mail itself advertises Defendants' "commercial property listings" and contains a link to Defendants' commercial real estate website, each of which is consistent with the e-mail's subject heading. *See id.* In short, neither the e-mail's subject heading nor the e-mail itself use any false or misleading information. Nonetheless, Plaintiff alleges that by sending the e-mail, "Defendants violated ACEMA," ACFA, and are liable for trespass and intrusion upon seclusion. *See* Amended Complaint at ¶ 13. As set forth in greater detail below, Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed with prejudice.

## **ARGUMENT**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted when "plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Lewis v. Telephone Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996). Although when considering a motion to dismiss, courts generally assume the facts alleged in a complaint are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "conclusory allegations [] and unwarranted inferences are insufficient to defeat a motion to dismiss." *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted). Thus, the Court may not assume that "the plaintiff can prove facts [which] [he or she] has not alleged." *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 527 (1983).

## I. PLAINTIFF'S ACEMA AND ACFA CLAIMS ARE EXPRESSLY PREEMPTED BY THE CAN-SPAM ACT.

The CAN-SPAM Act makes it unlawful for any person to transmit a commercial electronic mail message that contains, or is accompanied by, header information that is materially false or misleading. *See* 15 U.S.C. § 7704. It also includes a sweeping preemption provision that displaces state law statutes that regulate commercial electronic messages. *See id.* at § 7704(b). Under Section 7707(b), Congress explicitly provided that the CAN-SPAM Act "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages . . ." *Id.* at § 7707(b). It thus is absolutely clear that the CAN-SPAM Act preempts state law that seeks to regulate commercial electronic messages.

Plaintiff alleges a violation of ACEMA. However, the CAN-SPAM Act preempts ACEMA's provisions and remedies and thus Plaintiff has failed to state a cause of action for which relief may be granted. ACEMA plainly is an attempt to regulate commercial electronic mail. Subsection A of ACEMA provides that:

> A person shall not knowingly transmit commercial electronic mail if any of the following apply:
>
> 1. The person falsifies electronic mail transmission information or other routing information for unsolicited commercial electronic mail.
>
> 2. The mail contains false or misleading information in the subject line.
>
> 3. The person uses a third party's internet address or domain name without the third party's consent for the purpose of transmitting electronic mail in a way that makes it appear that the third party was the sender of the mail.

*See* A.R.S. § 44-1372.01(A). Subsection B of ACEMA similarly regulates commercial electronic mail, and provides that:

> If a person sends unsolicited commercial electronic mail or maintains a database for the purpose of sending unsolicited commercial electronic mail, the person shall do the following:

> 1. Use the exact characters 'ADV:' as the first four characters in the subject line of the unsolicited commercial electronic mail.
>
> 2. Provide a procedure that allows recipients, at no cost to the recipients, to easily do both of the following:
>
>> (a) Remove themselves from the sender's electronic mail address lists so the recipients are not included in future electronic mailings from the sender. The sender shall have three business days to remove the recipient's electronic mail address from the sender's electronic mail address lists so the recipients are not included in future electronic mailings from the sender.
>>
>> (b) Restrict the future sale or transfer of the recipient's electronic mail address information to another person or organization for the purpose of sending commercial electronic mail.

*See id.* at § 44-1372.01(B).

Thus, ACEMA's plain language regulates commercial electronic mail and is expressly preempted by the CAN-SPAM Act and thus must be dismissed. *See* 15 U.S.C. § 7707(b); *see also Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006) (upholding district court finding that the CAN-SPAM Act preempts plaintiff's claims under state statute governing commercial electronic mail); *Fenn v. MLeads Enters.*, 137 P.3d 706, 709 (2006) (the CAN-SPAM Act preempted Utah's Unsolicited Commercial and Sexually Explicit Email Act); *cf. also Stewart v. United States Bancorp*, 297 F.3d 953, 956-58 (9th Cir. 2002) (express preemption under ERISA is a failure on the merits and, as such, dismissal of state law claims was with prejudice); *Selkridge v. United of Omaha Life Ins. Co.*, 237 F. Supp. 2d 600, 602 (D.V.I. 2002) (upholding dismissal of various preempted state law claims, including breach of contract, bad faith, misrepresentation, intentional and negligent infliction of emotional distress, and punitive damages).

Plaintiff attempts to circumvent the CAN-SPAM Act's preemption by alleging that Defendants' e-mail was fraudulent and/or deceptive on account of the fact that it failed to

contain the letters "ADV:" in the subject line. However, the CAN-SPAM Act was specifically intended to preempt the differing state laws that force companies to put differing subject lines or text in their e-mails to create a uniform national standard:

> Section 8(b)(1) sets forth the general rule concerning the preemption of State law by the legislation. The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in e-mail. Thus, *a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted.*

S. Rep. No. 108-102 at 21-22 (2003) (emphasis added). ACEMA regulates commercial e-mail, therefore its mandates on e-mail's subject lines are preemptive.

Plaintiff's ACFA cause of action is also based entirely on Plaintiff's allegation that Defendants violated ACEMA by sending Plaintiff an unsolicited e-mail, which according to Plaintiff was an "unlawful practice" under ACFA. Amended Complaint at 19. Because Plaintiff's claim under ACEMA fails (both because it is preempted and because Plaintiff fails to allege any facts sufficient to state a claim), the alleged ACEMA violations also do not state a claim under the ACFA. *See Omega World Travel, Inc.*, 469 F.3d at 353 fn.1 (plaintiff "did not raise a cognizable cause of action under Oklahoma's commercial e-mail laws due to federal preemption, the alleged violations cannot give rise to further claims under the Oklahoma Consumer Protection Act").

## II. PLAINTIFF'S ACEMA AND ACFA CLAIMS FAIL TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED

In addition to being preempted under the CAN-SPAM Act, Plaintiff fails to state a claim upon which relief may be granted. While a court must pay deference to a plaintiff's allegations, it may not assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *See* F.R.C.P. 12(b)(6); *see also Associated General Contractors,* 459 U.S. at 527; *Anthony v. County of Sacramento*, *Sheriff's Dep't,* 845 F. Supp. 1396, 1399 (E.D. Cal. 1994).

Here, Plaintiff has failed to allege every element necessary to state a claim under ACEMA and by extension has likewise failed to allege every element necessary to state a

claim under ACFA.[2] For example, nowhere does Plaintiff allege the first element necessary to state a claim under ACEMA, namely that Defendants "knowingly" sent commercial electronic mail to Plaintiff. *See* Complaint; A.R.S. § 44-1372.01(A). Plaintiff also fails to allege any facts supporting his conclusory claim that Defendants "knew or had reason to know that Plaintiff's e-mail address is held by a resident of this State." *See Western Mining Council*, 643 F.2d at 624 (legal conclusions cast as factual assertions do not suffice).

Plaintiff likewise fails to allege any of the other elements necessary to state a claim under Subsection A of ACEMA, A.R.S. § 44-1372.01(A), including that Defendants falsified electronic mail transmission information under Subsection (A)(1); that Defendants' e-mail contains false or misleading information in the subject line under Subsection (A)(2); or that Defendants used a third-party Internet address or domain name to send the e-mail under Subsection (A)(3). A.R.S. § 44-1372.01(A)(1)-(3). Indeed, as is plain from the e-mail's face, Defendants sent the e-mail from their own "announcements@Costar" e-mail address, not from a third party's Internet address and not by any other false electronic mail transmission. *See* Exhibit 1 to Amended Complaint. As is also plain from the e-mail's face, the subject line does not contain any false or misleading information. It advises: "Find a Commercial Property Now – No Cost/No Registration." *See id.* The body of the e-mail then proceeds to advertise Defendants' "commercial property listings," precisely as suggested in the subject line. The e-mail further contains a link to Defendants' Internet website, which provides users with commercial real estate listings at "no cost" and with "no registration," also as suggested in the subject line of the e-mail. *See id.*

Plaintiff similarly fails to allege any of the other elements necessary to state a claim under Subsection B of ACEMA, A.R.S. § 44-1372.01(B), including that Defendants failed

---

[2] As set forth above, Plaintiff's ACFA claim is based entirely on Plaintiff's allegation that Defendants violated ACEMA by sending Plaintiff an unsolicited e-mail and that the alleged violation of ACEMA is also a violation of ACFA. Plaintiff's failure to state a claim under ACEMA is also a failure to state a claim under ACFA.

- 8 -

to provide an "opt-out" procedure as required under Subsection (b)(2). *See id.* This is, of course, because Plaintiff cannot make any such allegation. Defendants' e-mail plainly contains such a provision. The e-mail directs its recipient to: "Please click on www.costar.com/legal/optout to opt out of receiving future 'commercial electronic mail messages' from Costar Realty Information, Inc." *See id.*

Accordingly, Plaintiff's First Amended Complaint fails to state the elements necessary to state a claim under ACEMA and ACFA. Plaintiff's conclusory statements of law do not suffice. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403 ("conclusory allegations [] and unwarranted inferences are insufficient to defeat a motion to dismiss"); *Western Mining Council*, 643 F.2d at 624 (courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Indeed, the face of Defendants' e-mail defeats Plaintiff's claim. Accordingly, Plaintiff's First Amended Complaint should be dismissed.

**III. THE SUPREMACY CLAUSE SEPARATELY PREEMPTS PLAINTIFF'S COMMON LAW CLAIMS BASED ON CONDUCT EXPRESSLY ALLOWED BY FEDERAL LAW**

Even if the CAN-SPAM Act does not expressly preempt Plaintiff's state law claims, the Supremacy Clause of the United States Constitution preempts them because the claims, if allowed, conflict with federal law and negate the federal standard that the CAN-SPAM Act establishes. *See* U.S. Const. Art. VI, cl. 2; *see, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 540-51 (2001). Under the Supremacy Clause, state law "may be foreclosed by express language in a congressional enactment . . . or by implication because of a conflict with a congressional enactment." *See id.* at 541. Thus, there are two kinds of preemption: (1) express preemption through specific Congressional language defining the extent a federal law preempts state laws; and (2) conflict preemption whereby a state law conflicting with federal law cannot stand. *See Hutto v. Francisco*, 210 Ariz. 88, 90, 107 P.3d 934, 936 (Ct. App. 2005). State common law is subject to the same conflict preemption as state legislative enactments. *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 325-27 (1981). A state law is subject to conflict

preemption "when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007). For example, in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95 (1983), the Supreme Court held that ERISA preempted a state law that prohibited practices that were lawful under ERISA.

Plaintiff's common law trespass to chattels and intrusion upon seclusion claims are preempted because, if allowed, they would make Defendants' act of sending an e-mail consistent with the CAN-SPAM Act unlawful. Plaintiff makes it plain in his Amended Complaint that his receipt of *any* e-mail from Defendants that does not contain the four characters "ADV:" violates ACEMA and consequently ACFA, and is a trespass on his chattels and an intrusion on his seclusion. If Plaintiff could maintain his asserted claims under Arizona common law and extract damages and injunctive relief from Defendants, it would, in effect negate the protections afforded by the federal CAN-SPAM Act standard in Arizona. Thus, while under the CAN-SPAM Act, it would be completely lawful to send an e-mail without such an "ADV:" subject line, in Arizona, it would subject the sender to liability. This would conflict with Congress's express finding that it desired to create a federal standard under which law-abiding businesses could confidently send e-mails:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

*See* 15 U.S.C. § 7701 (11).

Precedent in analogous situations support the conclusion that Plaintiff's claims are preempted by the doctrine of conflict preemption. The Supreme Court held that a Florida law was preempted under a similar factual scenario in *Barnett Bank, N.A. v. Nelson*, 517

U.S. 25 (1996). In that case, federal law allowed national banks to sell insurance in small towns, while a Florida law *prohibited* such national banks from selling insurance in small towns. *See id.* at 28-29. Despite the fact that the federal law was only permissive (*i.e.*, it *allowed* national banks to sell insurance in small towns but did not *require* it), the Supreme Court held that the Florida law was preempted because it conflicted with the federal banking law. *See id.* at 34-37. Similarly, in *Hernandez-Gomez v. Volkswagen of Am., Inc.*, 201 Ariz. 141, 145, 32 P.3d 424, 428 (Ct. App. 2001), the Arizona Court of Appeals found that a state product liability law was preempted where the claim was predicated upon an alleged safety belt design flaw when the design was one of several designs allowed in a federal regulation.

As was true in *Barnett Bank* and *Hernandez-Gomez*, Plaintiff's state law claims, if accepted, would impose a state law limitation on conduct that is expressly allowed by federal law and would frustrate Congress's ability to establish a national standard for law-abiding companies to engage in legitimate electronic communications. Contrary to Congress's intention in passing the CAN-SPAM Act, marketers would be frustrated in their ability to send out non-misleading e-mails to customers following a single federal guideline. *See* 15 U.S.C. § 7701(11). Instead, companies would be subject to a patchwork of state laws that would be subject to all of the vagaries inherent in common law decision-making. Because such a result would frustrate the purpose of the CAN-SPAM Act and Congress in passing the CAN-SPAM Act, Plaintiff's trespass to chattels and intrusion upon seclusion claims are preempted and fail as a matter of law. *See Hernandez-Gomez*, 32 P.3d at 428.

**IV. PLAINTIFF CANNOT ASSERT A TRESPASS TO CHATTELS CLAIM BASED ON A SINGLE E-MAIL FROM DEFENDANTS.**

Even if Plaintiff's trespass to chattels claim is not preempted (which it is), Plaintiff still fails to state a claim under Arizona law because his receipt of a single e-mail (at an address he publicized widely on the Internet) did not dispossess him of or impair any of his "chattels" or deprive him of the use of such "chattels" for a substantial time as a matter

of law.³ *See Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 331, 762 P. 2d 609, 618 (Ct. App. 1988). Indeed, on facts similar to these, courts have found that the receipt of a single e-mail is not the kind of trespass to chattel that is cognizable under common law.

While trespass to chattels may be a "recognized" cause of action under Arizona law, in fact there are no reported Arizona cases in which a trespass to chattels claim has been held to be valid. In *Koepnick*, the Arizona Court of Appeals held that Arizona would follow the Restatement (Second) of Torts with respect to a trespass to chattels claim. *See id.* at 330-31, 762 P.2d at 617-18. The Restatement (Second) of Torts sets forth that a person can be liable for trespass to chattel "if, but only if:

(a) he dispossesses the other of the chattel, or
(b) the chattel is impaired as to its condition, quality, or value, or
(c) the possessor is deprived of the use of the chattel for a substantial time, or
(d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest."

Restatement (Second) of Torts, § 218.

Plaintiff's Amended Complaint – based on his receipt of a single e-mail – fails to state a claim for trespass of chattels. By *sending* the e-mail, Defendants did not dispossess Plaintiff of any of his chattels. There is no allegation – nor could Plaintiff make a plausible allegation – that Defendants were in control of his computer or related chattels as a result of that e-mail.⁴ Nor is there (nor could there be) an allegation that Defendants impaired the condition, quality, or value of Plaintiff's chattels – indeed, if a single e-mail could impair a computer system, all computer users would be in trouble.

As a matter of law, Plaintiff's claim based on a single e-mail cannot be sustained. As the Arizona Court of Appeals held in *Koepnick*, a "trespass" that uses a "chattel" for a

---

³ The Court may take judicial notice that Plaintiff widely publicizes his e-mail address on the Internet. *See* Plaintiff's website at http://www.strojnik.com; Federal Rules of Evidence 201.
⁴ To the extent that Plaintiff would allege that Defendants were in possession of a portion of his computer's memory as a result of the e-mail being stored on his computer, Plaintiff has failed to make any allegation that he lacked the ability to actually control the computer's memory (*e.g.*, by deleting the e-mail), negating any conclusion that Defendants actually dispossessed him of his computer memory.

period of two minutes – far longer than Plaintiff's chattels could possibly have been deprived by Defendants' e-mail – is not "so substantial that it is possible to estimate the loss that is caused" as a matter of law and thus cannot sustain a claim. *See Koepnick*, 158 Ariz. at 331, 762 P. 2d at 618. Indeed, the most applicable and analogous precedent is *Omega World Travel*, 469 F.3d at 348. There, the Court analyzed a common law trespass to chattels claim in the context of plaintiff's receipt of *eleven* unsolicited e-mails. Applying the same Restatement (Second) of Torts section the Arizona Court of Appeals adopted in *Koepnick*, the court concluded that "courts that recognize trespass to chattels based upon computer intrusions do not allow 'an action for nominal damages for harmless intermeddlings with the chattel.'" *Id.* at 359 (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 71 P.3d 296, 302 (2003) (e-mail communications "do[] not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself")). The Court in *Omega World Travel* rejected plaintiff's trespass to chattels claim; there was no evidence that the receipt of eleven e-mails would place a meaningful burden on the plaintiff's computers. *See id.* Likewise here, absent an allegation that the receipt of Defendants' single e-mail placed a meaningful burden on Plaintiff's computers – an allegation that Plaintiff cannot make consistent with Rule 11 – Plaintiff's claim also fails as a matter of law.

### V. PLAINTIFF FAILS TO STATE A CLAIM FOR INTRUSION UPON SECLUSION.

To the extent that Plaintiff's intrusion upon seclusion claim is not preempted (which it is), Plaintiff fails to state a claim under Arizona law. In Arizona, to establish an intrusion upon seclusion claim, Plaintiff must prove that Defendants: (1) intentionally intruded, physically or otherwise; (2) upon Plaintiff's "solitude or seclusion" or upon Plaintiff's "private affairs or concerns;" and (3) the conduct was "extreme and outrageous." Restatement (Second) of Torts § 652B; *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 339, 783 P.2d 781, 785 (1989).

### A. A Single Promotional E-mail Does Not, As a Matter of Law, Constitute Intrusion.

It is well established that advertising and business promotions do not constitute intrusion. As quoted by the Arizona Court of Appeals in *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 947 P.2d 846 (Ct. App. 1997), the Restatement requires:

> The invasion may be by *physical intrusion* into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, *to oversee or overhear the plaintiff's private affairs*, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by *some other form of investigation or examination into his private concerns*, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

Restatement (Second) of Torts § 652B, cmt. B (emphasis added). Thus, an "intrusion" must be either a *physical* intrusion or a non-physical intrusion that allows the defendant to *observe or otherwise gain information* about the plaintiff. It cannot be said that the sending of an e-mail, which is simply an electronic, one-way communication from Defendants to Plaintiff, was either a physical intrusion or a means by which Defendants could observe, oversee, or overhear Plaintiff. *See id.*

Instead, Defendants' conduct is analogous to the credit card company in *Bradshaw v. Michigan Nat'l Bank*, 39 Mich. App. 354, 197 N.W.2d 531 (1972). There, the credit card company issued a credit card in plaintiff's name and sent it to plaintiff's former address. *Id.* at 355, 197 N.W.2d at 531-32. The card fell into the hands of third parties who used it to make unauthorized purchases. *Id.* When rejecting plaintiff's intrusion of seclusion claim, the court distinguished the unsolicited mailing of a credit card from conduct such as peering into windows or making persistent and unwanted phone calls. *Id.*; *Perry v. Moskins Stores, Inc.*, 249 S.W.2d 812 (Ky. 1952) (retail store's mailing not an actionable invasion of privacy, recognizing that modern forms of advertising such as retail mailings have become acceptable); *Stilson v. Reader's Digest Assn.*, 28 Cal. App. 3d 270,

104 Cal. Rptr. 581 (1972) (sweepstakes advertisement for subscriptions not actionable intrusion). Defendants' single e-mail is not an actionable intrusion as a matter of law.

### B. Plaintiff's E-mail Account Does Not Qualify as the Type of "Solitude" or "Seclusion" Envisioned Under the Restatement.

Plaintiff further fails to establish that the e-mail message intruded upon his "solitude or seclusion" or upon his "private affairs or concerns." Plaintiff makes no allegation that his e-mail address is an inherently private affair or concern such that he takes steps to protect it from the public's view. There is nothing more inherently private about an e-mail address than a street address. On the contrary, the Court may take judicial notice of the fact that Plaintiff's e-mail address is featured prominently on the front page of Plaintiff's own website soliciting legal business for himself. *See* www.strojnik.com. Further, Plaintiff's eagerness to attach his e-mail address as an exhibit to his Amended Complaint belies any claim that the e-mail address is particularly private or otherwise unavailable to the general public. *See* Amended Complaint [Docket No. 9].

### C. A Single Promotional E-mail Does Not, As a Matter of Law, Constitute Extreme and Outrageous Conduct.

The Restatement provides that:

> Thus, there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three . . . **It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence**, that his privacy is invaded.

Restatement (Second) of Torts § 652B, cmt. D (emphasis added). Courts have consistently held that a single business communication is not extreme or outrageous conduct under the Restatement. Such courts uniformly hold that a claim for intrusion upon seclusion exists only upon evidence of truly extreme conduct, including for example, 100 or more telephone calls (*Summit Loans, Inc. v. Pecola*, 265 Md. 43, 288 A.2d 114 (1972) (defendant loan company used vile, insulting, and outrageous language in over 200 calls to plaintiff's home)); a combination of telephone calls and house calls (*Carey v. Statewide Finance Co.*, 223 A.2d 405 (Conn. 1963) (systematic campaign of phone calls and house

calls)); or a combination of telephone calls and mailings (*Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970) (company continued telephone calls and mailings to plaintiff to collect a debt)).

Indeed, no court has found liability for a single e-mail message. Instead, courts have repeatedly found that a single intrusion is insufficient to state a claim or upon which to base liability. For instance, in *Shorter v. Retail Credit Co.*, 251 F. Supp. 329 (D.S.C. 1966), the court held that the plaintiff failed to establish an actionable intrusion upon seclusion claim where a retail credit company agent, ignoring "Keep Out" and "Private Drive Keep Out" signs, went to the plaintiff's residence and obtained certain personal information from the plaintiff. *Id.* at 329. The court explained that, to be actionable, defendant's "conduct must outrage one of ordinary sensibilities and the hypersensitive person may not recover for actions which are merely rude or inconsiderate." The Court held that an intrusion upon seclusion claim would not lie for "a single inquiry, politely conducted and quite limited in scope." *Id.* at 331. The court emphasized that there was no public surveillance, no publication that any investigation was taking place, no constant harassment or continued trespass on property, no rudeness or coercion during the single conversation, no fraud or deception, and very little information obtained, most of which was a matter of public record. *Id.* at 332. Defendants' single e-mail message does not qualify as the type of "hounding" required to establish an intrusion upon seclusion claim.

### III. ALTERNATIVELY, PLAINTIFF SHOULD BE REQUIRED TO MAKE A MORE DEFINITE STATEMENT AS TO ITS ENTIRE COMPLAINT.

A Rule 12(e) motion should be granted when the complaint is so indefinite or ambiguous the defendant cannot ascertain the nature of the claim being asserted. *See Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wis. 1975). In such cases, the defendant cannot reasonably be expected to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.* 525 F. Supp. 940, 949 (E.D. Cal. 1981).

As demonstrated above, if Plaintiff's Amended Complaint states a claim upon which relief may be granted (which it does not as discussed above), the Amended

Complaint is still replete with vague and ambiguous factual assertions, which result in the entire pleading being unintelligible. Plaintiff has failed to allege the specific sections of ACEMA Defendants allegedly violated or plead any factual assertions supporting the elements necessary to state a claim under the statutes under which Plaintiff has asserted a cause of action as discussed above. This is true even though Plaintiff was previously put on notice of these fatal defects. *See* Defendants' Motion to Dismiss [Docket No. 7]. Instead, Plaintiff simply quotes ACEMA in its entirety and alleges that "Defendants violated ACEMA." Plaintiff similarly fails to allege facts sufficient to establish his common law tort claims, including any facts from which the Court may infer that Plaintiff was dispossessed of his purported chattel or deprived of its use for a substantial period of time; that the alleged trespass actually caused harm to Plaintiff or his purported chattel; that Plaintiff's e-mail address constitutes the kind of solitude or seclusion envisioned under the Restatement; or that Defendants' conduct was outrageous or extreme.

Accordingly, if Plaintiff's Amended Complaint is not dismissed in its entirety with prejudice for the multiple deficiencies described above, at a minimum, Plaintiff should be required to provide a more definite statement as to his causes of action, the factual basis of his causes of action, the specific portions of any statute he claims Defendants violated, and Defendants' specific conduct that Plaintiff claims violated each identified statute and each identified common law tort. Because Plaintiff has already had two chances to do so, however, he should not be given yet a third attempt.

## IV. CONCLUSION.

For the foregoing reasons, Defendants request that the Court dismiss Plaintiff's Amended Complaint in its entirety. Alternatively, Defendants request that the Court grant Defendants' Motion for a More Definite Statement.

RESPECTFULLY SUBMITTED this 1st day of August, 2008.

    /s/Shane D. Gosdis
Cynthia A. Ricketts
Shane D. Gosdis
DLA Piper US LLP
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: (480) 606-5100
Facsimile: (480) 606-5101

Attorneys for Defendant Costar Group, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2008, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Peter Strojnik
strojnik@aol.com
THE LAW FIRM OF PETER STROJNIK
3030 N. Central Ave., Suite 1401
Phoenix, AZ 85012

Attorney for Plaintiff


    /s/Linda Farrell