**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Peter Strojnik, | ) | No. CV 08-1276-PHX-SRB |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| Costar Realty Information, Inc.; Costar Group, Inc., | ) ) ) | |
| Defendants. | ) ) ) | |

The Court now considers Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, or, in the Alternative, Motion for a More Definite Statement ("Defs.' Mot."). (Doc. 12.)

**I.   Background**

Plaintiff Peter Strojnik is an attorney who resides in Phoenix, Arizona. (FAC at 1, ¶ 1.) Defendants operate a commercial real estate website and listing service. (Defs.' Mot. at 3.) On June 4, 2008, Defendants sent Plaintiff an e-mail advertising their services. (FAC, Ex. 1.) The e-mail was sent from Defendants' corporate e-mail address (announcements@costar.com), and it contained a brief advertisement and links to Defendants' website. (*Id.*) The e-mail also contained a link to a page where the recipient could "opt out of receiving future 'commercial electronic mail messages' from [Defendants]." (*Id.*) The subject heading of the e-mail read, "Find a Commercial Property

Now – No Cost / No Registration." (*Id.*) Plaintiff does not allege that he received any further communications, electronic or otherwise, from the Defendants.

Plaintiff filed his First Amended Complaint ("FAC") in this Court on July 15, 2008. (Doc. 9.) The FAC contains four counts. First, Plaintiff claims that Defendants violated the Arizona Commercial Electronic Mail Act ("ACEMA"), which prohibits the transmission of e-mail that contains false or misleading information in the header and requires senders to include the characters "ADV:" in the subject line of any unsolicited e-mail. (FAC ¶¶ 6-17.) Count Two of the FAC charges that Defendants have violated the Arizona Consumer Fraud Act ("ACFA") because "a violation of ACEMA is an unlawful practice pursuant to . . . ACFA." (FAC ¶¶ 18-24.) The other two counts in the FAC arise under Arizona state tort law and consist of a claim for trespass and one for intrusion upon seclusion, each related to Defendants' e-mail. (FAC ¶¶ 25-34.)[1]

## II.  Legal Standards and Analysis

### A.  Motion to Dismiss

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In determining whether an asserted

---

[1] Defendants note that this lawsuit is one of thirteen identical cases that Plaintiff has initiated against other companies, all filed between June 10, 2008 and June 18, 2008. (Defs.' Mot. at 2 n.1.)

claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). The Supreme Court has explained that factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In ruling on a motion to dismiss, the issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Gilligan*, 108 F.3d at 249.

### B. ACEMA and ACMA Claims

ACEMA makes it unlawful to send a commercial e-mail with "false or misleading information in the subject line." ARIZ. REV. STAT. ("A.R.S.") § 44-1372.01(A)(2). Plaintiff claims that Defendants have violated ACEMA by sending an unsolicited commercial e-mail that was deceptive because it did not contain the prefix "ADV:" in the header. (FAC ¶¶ 9-11.) ACEMA requires that "ADV:" precede the subject line of an unsolicited commercial e-mail in order to alert the recipient to a commercial message. A.R.S. § 44-1372(B)(1). The statute also mandates display of a means by which the recipient could "opt-out" of receiving any future communications. A.R.S. § 44-1372(B)(2).

The Controlling the Assault of Non-Solicited Pornography and Marketing Act ("the CAN-SPAM Act") prohibits, among other things, the sending of commercial e-mail that contains materially false or materially misleading header information. 15 U.S.C. § 7704(a)(1). The CAN-SPAM Act contains an explicit preemption provision. The statute states that it "supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). Defendants argue that this provision makes clear that "Congress intended that the CAN-SPAM Act occupy the field of commercial e-mail regulation." (Defs.' Mot. at 3.)

Federal preemption can be express or implied. "The critical question in any preemption analysis is always whether Congress intended that federal regulation supersede

state law." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986). *See also NY State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("[P]reemption claims turn on Congress's intent[.]"). In the case of express preemption, state law is controlled by federal law to the extent Congress has explicitly stated. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98 (1983). Even if a federal statute or regulation does not explicitly preempt state law, it may do so impliedly, if the federal law regulates a field that Congress intends to be fully and exclusively occupied by the federal government. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) ("We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively[.]"). "Congress'[s] intent to [supersede] state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it." *Pac. Gas & Elec. Co. v. State Energy Res.*, 461 U.S. 190, 203-04 (1983).

The Congressional findings and determinations and the legislative history are instructive in determining Congress's purpose in passing the CAN-SPAM Act. Congress referenced the difficulties legitimate commercial enterprises face in determining which state law to follow, given the "inherently interstate nature of e-mail communications." S. REP. NO. 108-102, at 21 (2003). *See also* 15 U.S.C. § 7701(a)(11) (2003) ("Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply."). The legislative history also sheds light on the precise issue at hand:

> Section 8(b)(1) sets forth the general rule concerning the preemption of State law by the legislation. The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send

> commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted.

S. REP. NO. 108-102, at 21.

Plaintiff alleges that Defendants have violated ACEMA, in that they sent him a commercial e-mail that did not have "ADV:" in the subject line. (FAC ¶ 11.) Plaintiff alleges no other conduct by the Defendants that violates ACEMA. Moreover, it is clear from Exhibit One to the FAC that Defendants' e-mail was neither false nor misleading. (FAC, Ex. 1.) Based on the language of the statute and the legislative history, Congress plainly seems to have intended to preempt just this type of law. The Court concludes that ACEMA is preempted by the CAN-SPAM Act.

ACEMA classifies a failure to include the "ADV:" characters in the subject heading of an unsolicited commercial e-mail as a violation of the state consumer fraud statute, ACFA. Since it only arises from the alleged violation of ACEMA, Plaintiff's claim that Defendants violated ACFA is also preempted. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353 n.1 (4th Cir. 2006) ("Since we find that Mummagraphics did not raise a cognizable cause of action under Oklahoma's commercial e-mail laws due to federal preemption, the alleged violations cannot give rise to further claims under the Oklahoma Consumer Protection Act."). Because the Court concludes that Plaintiff's claims under ACEMA and ACFA are preempted and grants Defendants' Motion as to these claims, it will not address Defendants' other arguments with respect to Counts One and Two.

### C.     State Law Tort Claims

Plaintiff also makes claims under Arizona state law for trespass and intrusion upon seclusion. Defendants argue that these claims are also preempted, under a conflict theory. In the absence of express statutory or regulatory provision, state laws can still be preempted if they conflict with a federal scheme in such a way that compliance with both would be impossible or enforcing the state law would frustrate the accomplishment of a federal goal.

- 5 -

*See, e.g.*, *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000) (holding that state laws that prevent or frustrate accomplishment of a federal objective, as well as those that make it impossible for parties to comply with both federal and state law, are preempted by the Supremacy Clause); *Freightliner Corp.*, 514 U.S. at 287 (recognizing that federal law governs when it is "impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (internal quotations and citations omitted)). One goal of the CAN-SPAM Act, as discussed above, was to create a uniform national standard for legitimate commercial e-mail. Although the CAN-SPAM Act does not directly address trespass or intrusion upon seclusion, if federal law did not preempt these claims in the context of commercial e-mail, one central goal of the CAN-SPAM Act would be at least frustrated, if not prevented altogether. Senders of legitimate commercial e-mail could fully comply with the CAN-SPAM Act and nonetheless be liable under state law for their actions. Plaintiffs claims for trespass and intrusion upon seclusion are therefore preempted, and Defendants' Motion is granted as to these claims as well.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 12.)

DATED this 23rd day of December, 2008.

_____
Susan R. Bolton
United States District Judge