# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise Brancatelli and Gloria Maria Santiago, on behalf of themselves and all others similarly situated, | No. CIV 04-421 TUC CKJ |
| Plaintiffs, | |
| vs. | **STIPULATION AND ORDER OF SETTLEMENT** |
| David Berns, Director of the Arizona Department of Economic Security, | |
| Defendant. | |

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that the Defendant, David Berns, in his capacity as Director of the Arizona Department of Economic Security, failed to process food stamp applications within the times prescribed by the Food Stamp Act.

The Department alleges it is in compliance with the Food Stamp Act and its implementing regulations. Plaintiffs seek declaratory and injunctive relief against the Department, on behalf of themselves and members of a putative class, to require the Department to process all food stamp applications within thirty days, or seven if an expedited application, and to process recertification applications prior to the expiration of the certification period. A class has not yet been certified in this action.

**EXHIBIT 1**

The parties have agreed to resolve all the issues presented in this litigation without further proceedings and without admitting any fault or liability. As used in this Agreement the singular term shall include the plural. The parties desire to settle this action, and good cause appearing,

**IT IS HEREBY ORDERED:**

**A.  DEFINITIONS**

1. "Act" or "Food Stamp Act" means the Food Stamp Act, 7 U.S.C. § 2020, and it implementing regulations, 7 C.F.R. § 273.2.

2. "Agency Delay" means only those delays in processing an application within the federal time-frame that are not due to applicant caused delays or circumstances beyond the Department's control.

3. "Agreement" means this Stipulation and Order of Settlement.

4. "Applicant" means any person or household that applies for food stamps including initial applications, recertifications, and expedited applications.

5. "Applicant Caused Delay" means a delay in processing an application attributable to an applicant in accord with criteria in 7 C.F.R. § 273.2(h)(1)(i).

6. "Application" means an initial, recertification, and expedited application for food stamps.

7. "Circumstances Beyond the Department's Control" means events or occurrences that the Department has no power to change or affect despite the Department's reasonable preparation and that frustrate, delay, or impede the Department's ability to meet the federal time-frames. The term does not include increases in the number of applications, fluctuations in staffing levels, or acts of the state legislature in failing to appropriate funds that affect the Department's ability to meet the federal time frames. For the purposes of this Agreement, the occurrence of a circumstance beyond the Department's control shall not be deemed to relieve the Department from taking all steps necessary to bring itself into

compliance with the Act as expeditiously as possible.

8. "Department" means the Arizona Department of Economic Security and includes Defendant Berns in his capacity as director.

9. "Dispute" means any claim or other matter in controversy arising out of or related to this Agreement, or the breach, implementation, or performance thereof.

10. "Federal time frame" means the requirement that a state agency shall:

    a. Promptly determine the eligibility for food stamps of each applicant household so as to complete certification and provide food stamps retroactive to the period of application to any eligible household not later than thirty days following its filing of an application. 7 U.S.C. § 2020 (e)(3);

    b. Provided expedited issuance of food stamps no later than seven days after the date of application to any household which:

        i. Has gross income that is less than $ 150 per month; or is a destitute migrant or a seasonal farm worker household in accordance with the regulations governing such households in effect July 1, 1982; and has liquid resources that do not exceed $ 100; or

        ii. Has a combined gross income and liquid resources that is less than the monthly rent, or mortgage, and utilities of the household; 7 U.S.C. § 2020(e)(9); and

    c. Insure that each participating household receives a notice of expiration of its certification prior to the start of the last month of its certification period advising the household that it must submit a new application in order to renew its eligibility for a new certification period and, further, that each such household which seeks to be certified another time or

more times thereafter by filing an application for such recertification no later than fifteen days prior to the day upon which its existing certification period expires shall, if found to be still eligible, receive its allotment no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification. 7 U.S.C. § 2020(e)(4).

**B.     INTRODUCTION**

11.     Both parties agree that it is the goal of the Department to provide food stamp assistance within the federal time frame. In an effort to achieve that goal, as well as to settle the instant litigation, the parties have entered into this Agreement.

12.     The Department asserts the following:

The Act provides that if a state fails to process an application within the federal time frame and the delay is the state's fault, an applicant, if otherwise qualified, is entitled to retroactive benefits to the date of application. 7 C.F.R. § 273.2(h)(3). If the delay in processing is caused by the applicant, the applicant loses benefits for the month of application. 7 C.F.R. § 273.2(h)(2). The Act also gives the United States Department of Agriculture ("USDA"), the federal agency that administers the Food Stamp Act, the ability to seek an injunction against a state to comply with the Act. 7 C.F.R. § 276.5. The state may escape sanctions or injunctive relief if it has good cause for failure to comply with the Act, as defined in 7 C.F.R. § 276.6.

13.     The Department further asserts that: (a) upon request, the Department allows applicants to delay processing of applications instead of closing the applicant's files to meet timeliness deadlines; (b) the Department currently includes in its report of untimely applications such applicant caused delays, and those delays that are the result of circumstances beyond the control of either the Department or the applicant; (c) the Department has not historically tracked the number of applications that are untimely as a result of applicant-caused delays, or delays that are due to circumstances beyond the

Department or the applicant's control and no statistics are presently available regarding the cause of untimely applications; (d) the Department began tracking the reason for delays in February 2005, and the Department believes that a significant portion of the applications that are currently not timely processed are a result of applicant-caused delays; and (e) as of the date of this Agreement, the Department is processing at least ninety-five percent of all applications within the federal time-frames, despite delays the Department believes are caused by applicants or delays that the Department believes are due to circumstances beyond the Department's control.

14. This Agreement resolves all claims of Plaintiffs and the class against the Department arising out of this lawsuit.

15. The parties do not object to the jurisdiction of the Court over this action.

### C. CLASS CERTIFICATION

16. During the term of this Agreement and any extension thereof a class is certified consisting of all residents of Arizona who have since August 17, 2004, submitted or will submit an application for food stamps, including expedited food stamps and recertifications, and whose application has not been or will not be processed timely by the Department.

### D. COMPLIANCE WITH THE ACT

17. The Department shall comply with the Act regarding the processing of applications within the federal time frames. The parties agree that the Department is accountable only for its failure to reach the federal time frame caused by agency delay and that the Department shall adhere to 7 C.F.R. § 273.2(h)(1)(i) in processing applications.

18. The parties shall resolve any disputes arising out of this Agreement in accordance with Section I.

### E. MONITORING

19. Beginning October 2005 and thereafter for the remaining term of this

Agreement, the Department shall provide Plaintiffs' counsel with the following information, within 10 business days of the expiration of each month:

    a. A report noting the number of applications received in the month, by local office;

    b. A report noting the number of application determinations made in the month, subdivided by office where filed showing:

        i. Whether the applicant was entitled to expedited food stamp processing;

        ii. Whether the application was timely processed; and

        iii. Whether the application was approved or denied.

    c. A report indicating the number of recertification determinations made in the month, subdivided by office where filed showing whether the recertification was timely processed.

    d. For each office, a report indicating the number of application determinations that were untimely subdivided by whether the delay is attributable to the agency or to the applicant and the extent of the delay as follows:

        i. Untimely by 1 day

        ii. Untimely by 2 days

        iii. Untimely by 3 days

        iv. Untimely by more than 3 days

    e. For each local office, a report indicating by week, the lead date for scheduling the initial interview. The lead date is the number of days from the date of application to the first available interview date.

    f. With respect to cases in which the Department attributes the delay in processing the application to the applicant, a report for each office

indicating the number of cases attributable to applicant delay and the reason for the delay broken down as follows:

    i. Applicant failure to complete application form;

    ii. Applicant request to reschedule interview;

    iii. Applicant delay in providing documentation;

    iv. Applicant or household member failure to register for work; and

    v. Other.

g. For each month, a report indicating the number of applicants that called the special agency telephone line, maintained pursuant to paragraph 23, to inquire about the Department's failure to process their application timely and the Department disposition of those calls by:

    i. Issuance of benefits;

    ii. Denial of benefits; and

    iii. Pending.

20. During the term of this Agreement, the Department shall undertake the following reviews:

    a. Each quarter, beginning in July 2005, the Department shall select a random sample of 90-100 cases drawn from the total number of cases denied for the three months preceding the month in which the sample is drawn. The Department shall review each case to determine whether the denial was correct. The Department shall develop a corrective action plan for individual cases found to be incorrectly denied and a systemic corrective action to address patterns of error. The Department shall provide Plaintiffs' counsel a report detailing the results of the reviews and any corrective action undertaken within 60 days after the end of the month in which the sample was drawn.

b. Each quarter, beginning in July 2005, the Department shall select a random sample of 90-100 cases drawn from the total number of cases that the Department has classified as applicant caused delay. The Department shall review each case to determine whether the local office determination of applicant-caused delay was correct. Within 60 days after the end of the month in which the sample is drawn, the Department shall provide to Plaintiffs' counsel a report in a format substantially similar to Exhibit "A" that includes:

    i. The results of the Department's review of each case; and

    ii. For those cases in which the Department's review determines that the local office incorrectly attributed the delay to the applicant, information on the corrective action taken, including corrective action with respect to the individual case and systemic corrective action.

21. Plaintiffs' counsel shall have access, upon reasonable notice, and no more than once a month to the data reasonably necessary to determine whether the applications reported as timely processed in the monitoring reports described in paragraphs 19 and 20 of this Agreement prepared by the Department were timely processed. The data described in this section will be preserved in accordance with state records retention requirements, which currently are two years.

    a. Plaintiffs agree to maintain for all time the confidentiality of all confidential information obtained by Plaintiffs in the course of this litigation and during the term of the settlement and shall not disclose such information to any individual, other than Defendant and the individual whose case is involved, except to the extent necessary in any proceeding brought before any court to enforce any right under this

Agreement. Nothing in this paragraph shall preclude any person from utilizing, for any purpose, any non-confidential information obtained by Plaintiffs in the course of this litigation and during the term of this agreement. Plaintiffs shall not disclose personally identifiable information on any applicant without a signed release.

22. If, for any month, the Department claims that it was unable to process one or more applications within the federal time frames because of circumstances beyond the Department's control, the Department shall provide to Plaintiffs' counsel within 10 business days of the expiration of the month a report that identifies:

    a. The number of applications that were not processed timely;

    b. The office at which the applications were dispositioned;

    c. The reason for the non-timely processing; and

    d. The number of days by which each application was untimely processed.

**F. ADDITIONAL DEFENDANT OBLIGATIONS**

23. The Department shall establish, maintain, and adequately staff, for the pendency of this Agreement, a toll-free "800" number for use by food stamp applicants whose application or recertification for food stamps has not been timely processed. The Department shall resolve all calls to the 800 number pertaining to untimely applications or recertifications within 2 business days. The Department shall keep a log of calls to the 800 number pertaining to untimely applications or recertifications and shall record the identity of the caller, the date of the call, whether the application was an initial, recertification, or expedited application, the worker recording the information, the steps taken (if any) to address the matter raised, and the date the action was taken. Information concerning the "800" number shall be provided to applicants at the time of application or recertification. Plaintiffs' counsel shall have access, upon reasonable notice, no more often than once a

month, to the above information during the term of this Agreement.

24. The Department shall post and maintain in the public waiting area of each food stamp office operated under its control a poster in a format and with language agreed to by the parties that shall inform applicants of: (a) their right to apply for food stamps or to have their eligibility recertified; (b) the time frames for processing applications and recertifications; and (c) the availability of the 800 number identified in paragraph 23. The poster shall be in both English and Spanish. In addition, the Department shall include notice of the foregoing by distribution of a handout size copy of the poster as a tear-off sheet on the application beginning September 1, 2005.

25. The Department shall provide Plaintiffs' counsel an affidavit attesting to posting of the posters in the public waiting area of each site operated under its control and the distribution of the tear-off sheet handout to applicants within thirty days of the approval of this Agreement by the Court or October 1, 2005, whichever is later, and every six months thereafter for the term of this Agreement.

**G. TERM**

26. The term of this Agreement is November 1, 2004 to April 30, 2007, unless shortened or extended under paragraphs 27 and 28.

**H. JURISDICTION OF THE COURT**

27. This Court shall retain jurisdiction over this Agreement for the purpose of modification and enforcement until April 30, 2007, except as set forth in paragraphs 28 and 29. At the end of this period, this Agreement shall cease to have any effect except as provided in accordance with paragraph 28. At the expiration of the jurisdiction of this Court as set forth in this paragraph (and as modified by paragraph 28), the Department shall file a Certification in the form of Exhibit B, and form of Order (Exhibit C) with the Court for approval to dismiss this action.

28. Plaintiffs shall have sixty days to review the monitoring reports to determine if the Department has processed ninety-five percent of all applications within the applicable federal time frames, for a total of twenty-eight months during the thirty-month term of this Agreement. The jurisdiction of this Court shall terminate for all purposes and the Court shall dismiss this cause of action retroactive to the last day of the 28th month that the Department has timely processed ninety-five percent of all applications in a total of twenty-eight months. However, if, at the conclusion of the thirty-month period, the Department has not complied with the terms of this Agreement, Plaintiffs shall have the option of:

    a. Restoring this matter to the calendar for litigation for all purposes;

    b. With the concurrence of the Department, modifying the terms of this Agreement; or

    c. Having the jurisdiction of the Court terminate and having this matter dismissed on the sixtieth day following the receipt by the Plaintiffs' attorneys of the report specified in paragraph 19 for the month of April 2007 without prejudice to Plaintiffs' right to commence a new action.

Nothing in this paragraph 28 shall be construed to be a limitation on a new Agreement following the expiration of this Agreement.

29. The failure of Plaintiffs to select any option in paragraph 28 and so notify the Department on or before the sixtieth day following the receipt by the Plaintiffs' attorneys of the report(s) specified in the monitoring sections for the month of April 2007 shall result in the termination of the jurisdiction of the Court and dismissal of the action retroactive to April 30, 2007.

**I. DISPUTE RESOLUTION**

30. In the event that the monitoring provided pursuant to this Agreement demonstrates that the Department has failed to process applications within the federal time frames for at least ninety-seven percent of all applications in any month, exclusive of delays

- 11 -

caused by applicant fault or by circumstances beyond the Department's control, then Plaintiffs' counsel shall engage in the following steps:

    a. Plaintiffs shall notify the Defendant in writing and the Department shall:

        i. Within 30 days of the notice, provide Plaintiffs' counsel a written corrective action plan intended to address the cause of the decline in performance;

        ii. Within 15 days of the submission of the corrective action plan begin to undertake fully the steps in the corrective action plan;

        iii. Provide a corrective action plan that must contain at a minimum the following:

            (a) A detailed description of the action to be taken by the Department;

            (b) An assessment of the reasons for the decline in performance;

            (c) A timetable for completion of the steps- such completion to occur within 90 days;

            (d) A mechanism for reporting progress on implementation of the corrective action plan; and

            (e) Copies of all memoranda, training materials, and other documents used to implement the corrective action plan:

        iv. During the period for implementation of the corrective action plan, the Department shall continue to provide the monitoring reports required by this Agreement to Plaintiffs' counsel.

  v.  Nothing herein shall preclude the Department from modifying the corrective action plan by changing or adding corrective steps.

  vi.  At the expiration of the period for the implementation of the corrective action plan, if the Department is still not processing ninety-seven percent of applications within the federal time frame (exclusive of delays caused by applicant fault or circumstances beyond the control of the Department), the Plaintiffs shall be entitled to pursue all remedies available at law or equity, unless the Department has implemented the plan in good faith. If the Department implemented the corrective action plan in good faith, the Department shall be obligated to initiate a new Corrective Action Plan to determine why the original plan, despite good faith implementation, was unsuccessful in restoring compliance to a level of not less than ninety-seven percent, and shall implement such new plan in accordance with the terms of this paragraph.

  vii.  If at any time during the period of the corrective action plan, Department's processing of timely applications falls below 94% as described in paragraph 31, Plaintiffs may pursue the remedies available in paragraph 31.

  31.  In the event that the monitoring provided pursuant to this Agreement demonstrates that the Department has failed to process applications within the federal time frames for at least ninety-four percent of all applications in any month, exclusive of delays caused by applicant fault or by circumstances beyond the Department's control, twenty days prior to making any motion for contempt or enforcement, Plaintiffs' counsel shall notify

Defendant's counsel in writing and shall request a meeting to discuss the Department's non-compliance to determine whether the non-compliance can be resolved without judicial intervention. If the motion is made on the basis of any monitoring reports that the Department has submitted to Plaintiffs, Plaintiffs shall notify the Department which records they rely on when the notice of intention to make the motion is provided.

32. For all other alleged violations of the terms of this stipulation and order of settlement, the parties shall utilize the procedures outlined in paragraph 31 of this stipulation and order of settlement.

### J. GENERAL PROVISIONS

33. No provision in this Agreement shall infringe upon the right of any individual identified in this cause of action to seek relief against the Department in the appropriate forum for any alleged violation of the Act and implementing regulations.

34. Nothing contained in this Agreement shall be deemed to be a finding or an admission that the Department has in any manner violated Plaintiffs' rights as contained in the Act or any other law and rules and regulations of the United States or the State of Arizona.

35. No provision of this Agreement shall be deemed a waiver by the Department of its rights under the Eleventh Amendment to the United States Constitution.

36. The Department agrees that Plaintiffs' counsel are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

37. Within 45 days of entry of this Agreement, Plaintiffs' counsel shall submit a request for attorneys' fees and costs to the Department. If the parties are unable to agree to an award of attorneys' fees and costs for Plaintiffs, then Plaintiffs shall file a bill of costs and motion for attorneys' fees and costs with the Court pursuant to Local Rules 54.1 and 54.2. In response to the bill of costs and motion for fees and costs, the Department shall not challenge Plaintiffs' entitlement to fees and costs, but only the amount of the request.

Plaintiffs' time to file the bill of costs pursuant to Local Rule 54.1 and a motion pursuant to Local Rule 54.2 shall be extended to 30 days after the 45 day period set forth in this paragraph 37.

38. Nothing in this Agreement or otherwise is intended to interfere with the Department's ability to directly communicate with members of the class.

39. The parties agree that the Department must at all times comply with federal and state law. Accordingly, this Agreement including, but not limited to Section A, is subject to any laws and changes in federal laws applicable to the Department.

40. This Agreement is final and binding upon the parties, their successors, and assigns.

DATED this 14th day of October 2005.

_____
CINDY K. JORGENSON
United States District Court Judge

APPROVED AND CONSENTED TO:

s/Anna Bronnenkant
Anna Bronnenkant
Assistant Attorney General

Department of Economic Security
1275 West Washington
Phoenix, Arizona 85007
Attorneys for Defendant

s/Ellen Sue Katz
Ellen Sue Katz
   William E. Morris Institute for Justice
202 E. McDowell Suite 257
Phoenix, Arizona 85004
Attorney for Plaintiffs

s/Ellen Sue Katz for
Marc Cohan
Mary R. Mannix
Welfare Law Center, Inc.
275 Seventh Avenue, Suite 1205
New York, New York 10001

Attorneys for Plaintiffs

- 15 -