Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone:  330-535-5711
Facsimile: 330-253-8601
Email:  cmarvinney@brouse.com,
           jskeriotis@brouse.com,
           jbautista@brouse.com
*Admitted Pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone:  602-263-1700
Facsimile: 602-263-1784
Email:  dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**MIDWEST INDUSTRIAL SUPPLY, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ..........................................................................................i

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION ............................................................................................... 1

LAW AND ANALYSIS ...................................................................................... 2

A.    **Summary Judgment Standard.** ........................................................... 2

**MIDWEST'S CLAIMS** .................................................................................. 2

B.    **Midwest's '266 Patent and '270 Patent are Valid.** ............................ 2

C.    **Soilworks Is Liable for Trademark Infringement, False Designation of Origin, and Unfair Competition under the Lanham Act (Count I).** ............................... 3

    1.   Soilworks Infringes Midwest's Marks in Violation of the Lanham Act. ................. 3

        a. *Midwest Owns Valid, Protectable Trademarks.* ....................................... 3

        b. *Soilworks Has Used Midwest's Marks in Commerce Without Consent.* .................. 5

        c. *There Is A Likelihood of Consumer Confusion.* ....................................... 5

            i-ii.   Soilworks and Midwest Provide Identical Goods and Use Identical Marketing Channels. ................. 6

            iii.   Soilworks Uses Marks Identical to Midwest. ............................. 7

            iv.   Soilworks Acted with the Intent to Trade on Midwest's Goodwill. ............... 7

    2.   Soilworks' Actions Constitute False Designation of Origin and Unfair Competition in Violation of the Lanham Act . .................. 8

D.    **Soilworks is Liable for False Advertising Under the Lanham Act (Count II)**. . 8

    1.   Standard for False Advertising Under 15 U.S.C. §1125(a)(1)(B). ................ 8

    2.   The Undisputed Evidence Demonstrates that Soilworks Engaged in False Advertising within the Meaning of the Lanham Act. ............... 9

E.    **Soilworks Unfairly Competes with Midwest.** .................................... 10

**SOILWORKS' CLAIMS** ............................................................................. 11

F.    **Soilworks Cannot Establish Its False Advertising Claim (Count I)**. ............... 11

    1.   Bad Faith Constitutes an Element of a False Advertising Claim When the Claim Involves a Patentee's Marketplace Statements about Its Patent. .................. 11

2.   There Is No Evidence that Midwest Acted in Bad Faith. ...................................... 11

3.   None of the Alleged Statements Made by Midwest were False. ............................ 13

4.   Midwest Did Not Disseminate the Alleged Representations Sufficiently to ............
     Constitute "Advertising" or "Promotion ................................................... 13

G.   **Soilworks' State Law Claims are Preempted by Federal Patent Law and, Even
     if They Were not Preempted, Soilworks Lacks Evidence to Support These
     Claims** ...................................................................................... 14

1.   In the Absence of Clear and Convincing Proof of Bad Faith, Federal Patent Law
     Preempts State Tort Claims Premised on a Patentee's Marketplace Statements
     about its Patent. ............................................................................. 14

2.   Midwest did not Tortiously Interfere with Soilworks' Business Relationships or
     Expectancy (Count IV). ..................................................................... 15

3.   Midwest did not Unfairly Compete with Soilworks (Count VI). ........................... 17

**CONCLUSION** ................................................................................. 17

# TABLE OF AUTHORITIES

## STATUTES

                                                                                            **PAGE**

15 U.S.C. § 1057(b) ...............................................................................4

15 U.S.C. § 1065 ...................................................................................4

15 U.S.C. § 1114 ...................................................................................3

15 U.S.C. § 1115(a) ...............................................................................4

15 U.S.C. § 1125(a) ...............................................................................3

15 U.S.C. § 1127 ...................................................................................6

35 U.S.C. § 282 .....................................................................................2

35 U.S.C. § 287 ...................................................................................16

## CASE LAW

*800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273 (D.N.J. 2006) ......................5

*Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101 (D.Del. 2002)........................11

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062 (9th Cir. 2006) ................................................................................6

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999).................................................................3

*Buying for the Home, LLC v. Humble Abode, LLC*, 459 F.Supp.2d 310 (D.N.J. 2006) ................................................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).................................................2

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988) ......................8

iii

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999)...........13

*DCI Marketing, Inc. v. Justrite Manufacturing Co.*, 213 F.Supp.2d 971 (E.D.Wis. 2002)..................................................................................................................11

*DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445 (S.D.Tex. 2006) ................................................................................................11

*Edina Realty, Inc. v. TheMLSonline.com,* Civ. No. 04-4371JRTFLN, 2006 WL 737064 (D. Minn. 2006) ..................................................................................................5

*Fairway Construction, Inc. v. Ahern*, 970 P.2d 954 (Ariz. App. 1998) ..................10, 17

*Farnam Cos., Inc. v. Stabar Enterprises, Inc.*, D.Ariz. No. CV05-1520PHXNVW, 2005 WL 3334348 (D. Ariz. Dec. 5, 2005)..................................11

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143 (9th Cir. 1999). ....................................................................................................................4

*Fred Siegal Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171 (Ohio 1999) ...............15

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) ...................................................................................................................11, 15

*Golan v. Pingel Enter., Inc.*, 310 F.3d 1360 (Fed. Cir. 2002)....................................12, 15

*Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2007 WL 1159950 (N.D. Cal. April 18, 2007) ..........................................................5

*Government Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700 (E.D.Va. 2004).......................................................................................................................5

*GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369 (Fed. Cir. 2007) ............................11

*In re Netflix Antitrust Litig.*, 506 F. Supp.3d 308 (N.D. Cal. 2007)...............................14

*Int'l Elecs., Inc. v. Human Elecs., Inc.*, 320 F. Supp.2d 1085 (W.D. Wash. 2004) ......................................................................................................................................14

*Internat'l Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672 (N.D.Ill. 2006).............5

iv

1

*Interstellar Starship Services, Ltd. v. Epix Inc.*, 304 F.3d 936 (9th Cir. 2002) ...............6

2

3

*J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007) ....................................5

4

5

*Kinzel v. Discovery Drilling, Inc*, 93 P.3d 427 (Alaska 2004)........................................15

6

7

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005) ................................................................................................4

8

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) .............................4

9

10

*Melea Ltd. v. Quality Models Ltd.*, 345 F.Supp.2d 743 (E.D.Mich. 2004) ...................11

11

12

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999)(en banc)..............................................................................11

13

14

*Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) ..................................................................................................14

15

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 897 (Fed. Cir. 1998)..............12

16

17

*Murray v. Cable Nat. Broadcasting Co.,* 86 F.3d 858 (9th Cir. 1996)............................8

18

19

*Neonatology Associates, Ltd. v. Phoenix Perinatal Associates Inc.*, 164 P.3d 691 (Ariz. App. Aug. 21, 2007)..............................................................15

20

*Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038 (9th Cir. 2008)...............8, 13

21

22

*Norwell v. Cincinnati*, 729 N.E.2d 1223 (Ohio App. 1999) .........................................17

23

*Oaksmith v. Brusich*, 774 P.2d 191 (Alaska 1989)......................................................17

24

25

*Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561  (Fed. Cir. 1987), *cert. denied*, 481 U.S. 1052 (1987)........................................................................2

26

27

*Perfumebay.com v. eBay Inc.*, 506 F.3d 1165 (Fed. Cir. 2007) ......................................6

28

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004) ....................................................................................5

*Rainbow Play Sys., Inc. v. GroundScape Tech., LLC*, 364 F.Supp.2d 1026 (D.Minn. 2005) ...............................................................................10

*Reid-Ashman Manufacturing, Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-4693, 2007 WL 1394427 (N.D. Cal. May 10, 2007) ..............11

*Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573 (Fed. Cir. 1983). ..................2

*Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp.*, 459 F.3d 1311 (Fed.Cir. 2006) ...........................................................................11

*Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204 (Ariz. 1986) ..........................17

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)........................9

*System Management Arts Inc. v. Avesta Technologies, Inc.*, 87 F.Supp.2d 258 (S.D.N.Y. 2000) ...............................................................................11

*Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025 (Ariz. 1985)................16

*Walker v. Zanger, Inc. v. Paragon Indus., Inc.*, No. C-04-1946VRW, 2007 WL 1302980 (N. D. Cal. May 3, 2007) .........................................................13

*Wells Fargo Bank v. Arizona Labors*, 38 P.3d 12 (Ariz. 2002) ....................16

*Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)................11, 14

**CIVIL RULES OF PROCEDURE**

Fed.R.Civ.P. 56(c)..................................................................................2

vi

# INTRODUCTION

As detailed in Midwest's accompanying Statement of Material Facts, this case involves Soilworks, LLC's scheme to trade upon and injure the substantial goodwill, reputation, and business that Midwest has established in its thirty-year history as a leading manufacturer and provider of chemical soil stabilization and dust control products to various industries throughout the country. (Midwest's Statement of Material Facts at ¶¶1-61.) Soilworks' scheme includes using Midwest's trademarks and falsely advertising the characteristics of Soilworks' own products in violation of the Lanham Act and unfair competition common law. (*Id.* at ¶¶28-61.) Soilworks' scheme also involves the infringement of Midwest's patented products and technology. (*Id.* at ¶¶66-71.)

Soilworks alleges in this action that Midwest's act of sending two letters to a Soilworks' distributor (Polar Supply Company), which notified the distributor of Midwest's patent and its correlated patent rights, constitutes false advertising in violation of the Lanham Act, tortious interference with Soilworks' business relationships and expectancy, and unfair competition. (*Id.* at ¶¶70-72.) Soilworks' claims against Midwest fail because patent holders, such as Midwest, have the right to notify others in good faith, including distributors, of their patent rights and the potential infringement of their patents. Soilworks has no evidence in this case that Midwest sent the Polar Supply Letters in bad faith, an element on which Soilworks bears the burden of proving in this case by clear and convincing evidence. Moreover, despite the year and a half of discovery that has taken place in this case, Soilworks cannot produce sufficient evidentiary support for the remaining substantive elements of these claims that is sufficient to survive summary judgment.

1

## LAW AND ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## MIDWEST'S CLAIMS

### B.    Midwest's '266 Patent and '270 Patent are Valid.

Midwest was granted U.S. Patent Nos. 7,074,266 ("'266 Patent") and 7,081,270 ("'270 Patent") from the U.S. Patent and Trademark Office ("USPTO") for its innovative soil stabilization and dust control technology.  (Statement of Facts ¶5.)  Under 35 U.S.C. § 282, all patents are presumed to be valid when issued.  *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987), *cert. denied*, 481 U.S. 1052 (1987).  A party claiming invalidity bears the burden of proof by clear and convincing evidence.  *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1579 (Fed. Cir. 1983).  This burden is more arduous when, as here, the party challenging the patent's validity based on allegations of prior art has failed to produce any prior art that the USPTO examiner failed to consider.  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821 (1984).

Despite Midwest's repeated requests during discovery, Soilworks has failed to produce *any* prior art not already considered by the patent examiner at the USPTO.  (Statement of Facts at ¶¶24-26.)  Moreover, Chad Falkenberg, Soilworks' President and Rule

30(b)(6) corporate representative, has admitted that he presently has no information regarding prior art. (*Id.* at ¶27.) Soilworks, consequently, cannot meet its burden of proving by clear and convincing evidence of the invalidity of the '266 Patent and the '270 Patent. The Court should accordingly deny Soilworks' request for a declaration of patent invalidity.

**C. Soilworks Is Liable for Trademark Infringement, False Designation of Origin, and Unfair Competition under the Lanham Act (Count I).**

**1. <u>Soilworks Infringes Midwest's Marks in Violation of the Lanham Act</u>.**

To prevail on a trademark infringement claim under 15 U.S.C. § 1114 and/or 1125(a), a plaintiff must show that: (a) it has a valid, protectable trademark, and (b) the defendant's use of the mark is likely to cause consumer confusion. *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

*a. Midwest Owns Valid, Protectable Trademarks.*

Registration of a mark on "the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (citing 15 U.S.C. §§ 1057(b) and 1115(a)). Midwest's Synthetic Organic Dust Control® and Soil-Sement® marks ("Midwest's Marks") are protected by Trademark Registration Nos. 3,318,243, 1,204,198, and 2,222,732 and are accordingly presumed valid and signify Midwest's exclusive right to use them. (Statement of Facts at ¶¶7, 8, and 10.)

Further, Midwest's Soil-Sement® trademark has become incontestable because Midwest has used the trademark in commerce for more than five consecutive years. (*Id.* at

3

¶9.)  *See* 15 U.S.C. § 1065; *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602-603 (9th Cir. 2005).  This means that the mark cannot be challenged on the basis that it is allegedly descriptive without a secondary meaning.  *See id.* at 606.

Even without the benefit of the statutory presumption of incontestability, [1] Midwest's Synthetic Organic Dust Control® mark is suggestive or, at a minimum, descriptive with a secondary meaning and, therefore, entitled to protection.  *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999).  In determining whether a descriptive mark has acquired a secondary meaning, courts consider:

> "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive."

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc) (citation and alteration omitted).  Midwest began using its Synthetic Organic Dust Control® mark in commerce since at least as early as July 1998 and had used the mark exclusively until Soilworks began using it in 2003.  (Statement of Facts at ¶11.)  Midwest has expended considerable resources marketing its soil stabilization and dust control products using the marks "Synthetic Organic Dust Control" in its product literature, online, on the Internet, and at trade shows.  (*Id.* at ¶12.)  As a result, an appreciable number of consumers have come to associate the Synthetic Organic Dust Control® mark with Midwest.  (*Id.* at ¶13.)

---

[1]  Midwest's Synthetic Organic Dust Control® mark was registered on October 23. 2007. (Statement of Facts ¶10.)  Regarding its claims under the Lanham Act, Midwest seeks damages for pre-registration and post-registration infringement of this mark.

4

### b. Soilworks Has Used Midwest's Marks in Commerce Without Consent.

There is no genuine dispute that Soilworks has used Midwest's Marks in commerce without Midwest's consent. (*Id.* at ¶¶32-43.) *See* 15 U.S.C. § 1127. Specifically, Soilworks admittedly uses the marks "Synthetic Organic Dust Control" on its website with respect to its Durasoil® product. (*Id.* at ¶¶32-36.) In addition, Soilworks has used Midwest's Soil-Sement® mark in metatags for its websites, www.soiltac.com and www.soilworks.com. (*Id.* at ¶¶38-41) This unauthorized use of another's trademark in metatags constitutes actionable trademark infringement under the Lanham Act. *See Playboy Enterprises, Inc. v. Netscape Communications Corp.,* 354 F.3d 1020, 1025-1026 (9th Cir. 2004); *Brookfield Communications*, 174 F.3d at 1065. Finally, there is no dispute that Soilworks has paid the search engine Google to use Midwest's Soil-Sement® mark as a "keyword," without Midwest's consent. (Statement of Facts at ¶¶38-39.) The purchase of another entity's trademark as a keyword for an internet advertising campaign constitutes use of the trademark in commerce for purposes of the Lanham Act. *See Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2007 WL 1159950, *5-6 (N.D. Cal. April 18, 2007).[2]

### c. There Is A Likelihood of Consumer Confusion.

"The core element of trademark infringement is likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products."

---

[2] *See, e.g., Government Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700 (E.D.Va. 2004); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273, 278 (D.N.J. 2006); *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F.Supp.2d 310, 321-22 (D.N.J. 2006); *Internat'l Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 677 n.3 (N.D.Ill. 2006); *Edina Realty, Inc. v. TheMLSonline.com,* Civ. No. 04-4371JRTFLN, 2006 WL 737064, *3 (D. Minn. 2006); *J.G. Wentworth, S.S.C. Ltd. Partnership v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115, *7 (E.D. Pa. Jan. 4, 2007).

*Brookfield Communications*, 174 F.3d at 1053 (citations omitted). The Ninth Circuit employs an eight-factor test (the "*Sleekcraft*" factors) to determine this element:

> [1] similarity of the conflicting designations; [2] relatedness or proximity of the two companies' products or services; [3] strength of [the] mark; [4] marketing channels used; [5] degree of care likely to be exercised by purchasers in selecting goods; [6] [the alleged infringer's] intent in selecting its mark; [7] evidence of actual confusion; and [8] likelihood of expansion in product lines.

*Id.* at 1053-1054. "These elements are not applied mechanically [and] courts may examine some or all of the factors, depending on their relevance and importance." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

"[I]n the context of the Web, the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Interstellar Starship Services, Ltd. v. Epix Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) (internal quotation and citation omitted). "When this 'controlling troika,' or 'internet trinity,' suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Id.* (internal quotation, citation, and alteration omitted); *Perfumebay.com v. eBay Inc.*, 506 F.3d 1165, 1174-75 (Fed. Cir. 2007).

i-ii.   Soilworks and Midwest Provide Identical Goods and Use Identical Marketing Channels.

Midwest and Soilworks provide identical types of goods, having competed against one another in the areas of dust control and soil stabilization products since Soilworks began operating in 2003. (Statement of Facts at ¶¶28-29.) Further, Soilworks and Midwest both market their dust control and soil stabilization products on the Internet. (*Id.* at ¶¶30-31.)

6

iii.    <u>Soilworks Uses Marks Identical to Midwest</u>.

In marketing its products, Soilworks has used and continues to use the mark "Synthetic Organic Dust Control" on its website with respect to its Durasoil® product. (*Id.* at ¶¶32-37.) It has also used the phrase "sement soil" as well as the words "soil" and "sement" in close proximity with one another as metatags. (*Id.* at ¶¶39-41.) Further, Soilworks admits to paying Google to use "soil sement" as a "keyword" from Google so that it appears as a Sponsored Link when a potential customer searches for "soil sement," again, without Midwest's consent. (*Id.* at ¶¶38-39.) As is evident, Soilworks uses marks identical to Midwest's registered trademarks Synthetic Organic Dust Control® and Soil-Sement®.

Accordingly, there is no triable issue of fact with respect to any of the three "factors of the internet trilogy," and each weighs strongly in favor of finding that a likelihood of confusion exists. *See Interstellar Starship*, 304 F.3d at 942. Such a finding is proper, unless the remaining factors "weigh strongly against a likelihood of confusion[.]" *Id.* None of the remaining *Sleekcraft* factors, however, negate a finding of a likelihood of confusion.

iv.    <u>Soilworks Acted with the Intent to Trade on Midwest's Goodwill</u>.

In fact, one of the remaining factors—intent to trade on Midwest's goodwill—merits particular discussion because it strongly supports a finding that a likelihood of confusion exists. Specifically, during his deposition, Mr. Falkenberg testified that Soilworks used Midwest's Marks in a manner that would increase the chance that someone performing an internet search would find those Soilworks products that compete with Midwest's products (Statement of Facts at ¶¶39, 42.) Thus, Soilworks' admitted intent is to trade off of

Midwest's goodwill in its Soil-Sement® trademark. Based on the foregoing, Midwest is entitled to summary judgment as to its trademark infringement claim.

## 2. Soilworks' Actions Constitute False Designation of Origin and Unfair Competition in Violation of the Lanham Act .

Claims of false designation of origin and unfair competition under the Lanham Act are measured by identical standards as those of federal trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks. *Murray v. Cable Nat. Broadcasting Co.,* 86 F.3d 858, 860 (9th Cir. 1996); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). Here, the same evidence establishing a likelihood of confusion for Midwest's trademark infringement claim also establishes a likelihood of confusion with respect to its false designation of origin and unfair competition claims, rendering summary judgment in favor of Midwest on those claims appropriate.

## D. Soilworks is Liable for False Advertising Under the Lanham Act (Count II).

## 1. Standard for False Advertising Under 15 U.S.C. §1125(a)(1)(B).

The Ninth Circuit Court of Appeals has held that in order to establish a false advertising claim under the Lanham Act, a plaintiff must show:

> "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."

*Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1052 (9th Cir. 2008) (citation omitted).

2.    **The Undisputed Evidence Demonstrates that Soilworks Engaged in False Advertising within the Meaning of the Lanham Act.**

On its website and in other marketing materials, Soilworks falsely and/or misleadingly advertises its Durasoil® product as being "synthetic." (Statement of Facts at ¶¶43-49.) Despite prominently advertising Durasoil® as "synthetic," Mr. Falkenberg does not even know whether Durasoil® is, in fact, "synthetic" and even acknowledges that the manufacturer of Durasoil® would not consider it to be "synthetic." (*Id.*)

Soilworks likewise misrepresents its Durasoil® product as being "oil-sheen free" in its marketing literature. (*Id.* at ¶¶50-54.) For example, Soilworks has not performed the requisite standardized tests of the United States Environmental Protection Agency to confirm that Durasoil®, actually, qualifies as "oil-sheen free," rendering its statement, at the very minimum, misleading. (*Id.* at ¶¶51-53.) *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997). Further, Durasoil® would not pass the oil sheen test based on Midwest's prior testing of similar materials in relation to its own products. (Statement of Facts at ¶54.)[3]

Thus, even though Soilworks had no objective basis for making these statements, it proceeded to misleadingly represent that Durasoil® had the characteristics of being "synthetic" and "oil-sheen free." These statements unquestionably have the tendency to deceive a substantial segment of their audience and are undeniably material, as the synthetic

_____

[3] In addition, Soilworks has conceded that, in other advertising materials, it misrepresented that Durasoil consists of "proprietary ingredients." (Statement of Facts at ¶¶57-59.) Further, on its website, Soilworks falsely and/or misleadingly stated that it "is the innovator and manufacturer of Durasoil™ dust control agent" and that "Durasoil is a revolutionary state-of-the-art innovation[.]" Mr. Falkenberg, however, admitted that, despite drafting this web page, he did not know, or was "not sure," what he meant by "innovator" or "revolutionary state-of-the-art innovation." (*Id.* at ¶¶60-61.)

and/or oil-sheen free nature of dust control and soil stabilization products is often considered to important to consumers when selecting a product. (*Id.* at ¶¶55-56.) For example, requests for bids for public products often include express specifications that dust control and soil stabilization products must be synthetic and/or oil-sheen free. (*Id.* at ¶56.) As a result, Midwest is likely to be injured through the loss of sales when Soilworks falsely represents that its products have these attributes, particularly considering Midwest and Soilworks and/or its distributors often compete for the same projects. (*Id.* at ¶56.) As there is no triable issue, the Court should enter judgment in Midwest's favor on its false advertising claim.

### E. Soilworks Unfairly Competes with Midwest.

"The common law doctrine of unfair competition under Arizona law is based on principles of equity." *Fairway Construction, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. App. 1998). "The general purpose of the doctrine is to prevent business conduct that is contrary to honest practice in industrial or commercial matters." *Id.* at 956 (citation omitted). The doctrine encompasses several tort theories, including as trademark infringement, false advertising, "palming off," and misappropriation. *Id.* (citation omitted).

Soilworks' false advertising regarding its products and its infringing use of Midwest's Marks, which the public identifies with Midwest's products and reputation, in order to gain a competitive advantage is flatly contrary to honest commercial practices and is inequitable. (*See* Sections C and D above and Statement of Facts at ¶¶28-81.) The Court should grant summary judgment as to Soilworks' liability for unfair competition.

# SOILWORKS' CLAIMS

**F.     Soilworks Cannot Establish Its False Advertising Claim (Count I).[4]**

    **1.     Bad Faith Constitutes an Element of a False Advertising Claim When the Claim Involves a Patentee's Marketplace Statements about Its Patent.**

Because Soilworks' false advertising claim arises out of Midwest's marketplace statements about its patent to Midwest's distributor, Polar Supply Company, Soilworks must satisfy the additional element of bad faith.  (Statement of Facts at ¶71.)  *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).[5]  A showing of bad faith is required in these circumstances to avoid a conflict between patent law and the Lanham Act.  *Id.* at 1353-1354.  In fact, the overwhelming majority, if not all, of the district courts considering similar claims have applied the bad faith requirement of *Zenith*.[6]

    **2.     There Is No Evidence that Midwest Acted in Bad Faith.**

---

[4] Soilworks also asserts a claim styled "misappropriation of goodwill" (Complaint at Count III).  Misappropriation of goodwill, however, is not a separate cause of action under the Lanham Act.  *See Rainbow Play Sys., Inc. v. GroundScape Tech., LLC*, 364 F.Supp.2d 1026, 1029 (D.Minn. 2005).

[5] In ruling on Midwest's motion to dismiss, this Court held that the bad faith requirement set forth by the Federal Circuit in *Zenith* did not apply to cases pending in courts in the Ninth Circuit (March 5, 2007 Order, ECF #10).  In reaching its decision, this Court properly recognized that the law of the regional circuits generally applies to Lanham Act claims but failed to acknowledge that, where the Lanham Act conflicts or potentially conflicts with patent law (as is the case herein), the law of the Federal Circuit controls.  *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999)(en banc); *Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp.*, 459 F.3d 1311, 1321 (Fed.Cir. 2006); *Zenith*, 182 F.3d at 1347.

[6] *See Farnam Cos., Inc. v. Stabar Enterprises, Inc.*, D.Ariz. No. CV05-1520PHXNVW, 2005 WL 3334348, at *12 (D. Ariz. Dec. 5, 2005); *Reid-Ashman Manufacturing, Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-4693, 2007 WL 1394427, at *8-9 (N.D. Cal. May 10, 2007); *DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 460-461 (S.D.Tex. 2006); *Melea Ltd. v. Quality Models Ltd.*, 345 F.Supp.2d 743, 760 (E.D.Mich. 2004); *DCI Marketing, Inc. v. Justrite Manufacturing Co.*, 213 F.Supp.2d 971, 972 (E.D.Wis. 2002); *Allen v. Howmedica Leibinger, Inc.*, 197 F.Supp.2d 101, 107-108 (D.Del. 2002); *System Management Arts Inc. v. Avesta Technologies, Inc.*, 87 F.Supp.2d 258, 271-272 (S.D.N.Y. 2000).

The bad faith standard of *Zenith* cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 362 F.3d 1367, 1375 (Fed. Cir. 2004). To be objectively baseless, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits." *GP Indus., Inc. v. Eran Indus., Inc*., 500 F.3d 1369, 1374 (Fed. Cir. 2007).

Here, after reviewing publicly available information, Midwest believed that Soilworks' Durasoil® product infringed some of the claims in its pending patent applications. (Statement of Facts at ¶65.) Midwest's concerns voiced by its attorney to Soilworks' attorney went without any substantive response by Soilworks. (*Id.* at ¶66-69.)

Thereafter, Midwest became aware that one of Soilworks' distributors, Polar Supply Company of Anchorage, Alaska, was attempting to submit a project bid that included Soilworks' Durasoil® product in response to an ADOT Notice of Intent to Award a Contract that included an express specification for Midwest's EK35® product. (*Id.* at ¶69.) As a result, Midwest sent the President and Sales Manager for Polar Supply Company identical letters (the "Polar Supply Letters") simply advising them about the issuance of the '266 Patent to Midwest and the fact that the patent allowed Midwest to pursue those who make, sell, offer for sale, and/or import knock-off or imitators of EK35® and EnviroKleen®. (*Id.* at ¶70.) Midwest also informed them that Midwest had apprised Soilworks of its patent but had not yet received a substantive response. (*Id.* at ¶70.)

Midwest's actions were entirely consistent with its right to inform a potential infringer of the existence and scope of its patents, *see* 35 U.S.C. § 287, and, therefore, do not

12

constitute bad faith as a matter of law. This is so even if it is ultimately determined that Soilworks' products do not infringe Midwest's patents. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 897, 897 (Fed. Cir. 1998). As Soilworks cannot point to evidence establishing, let alone the clear and convincing evidence required, that Midwest acted in bad faith, Midwest is entitled to summary judgment as to Soilworks' Lanham Act claims. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

**3.      None of the Alleged Statements Made by Midwest were False.**

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). In the present case, the Polar Supply Letters were entirely accurate, as they correctly states that: (1) Midwest invented the category of Synthetic Organic Dust Control, commonly known to Midwest as EK35® and EnviroKleen®, for which it recently received the '266 Patent; (2) the '266 Patent allows Midwest to "pursue those who make, use, sell, offer for sale and/or import knock-off or imitators of EK35® or EnviroKleen®"; and (3) Midwest apprised Soilworks of the '266 Patent but has yet to receive a substantive response concerning potential infringement. (Statement of Facts ¶¶70, 72-73.) None of these statements is legally or factually inaccurate. Thus, Soilworks cannot establish an essential element of its false advertising claim—falsity.

**4.      Midwest Did Not Disseminate the Alleged Representations Sufficiently to Constitute "Advertising" or "Promotion."**

For representations to be commercial advertising or promotion under the Lanham Act, they must be "disseminated sufficiently to the relevant purchasing public to constitute

'advertising' or 'promotion' within that industry." *Coastal Abstract Serv. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999) (citations omitted); *see, also, Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1052 (9ᵗʰ Cir. 2008). "A handful of statements to customers does not trigger protection from the Lanham Act unless 'the potential purchasers in the market are relatively limited in number[.]'" *Walker v. Zanger, Inc. v. Paragon Indus., Inc.,* No. C-04-1946VRW, 2007 WL 1302980, at *12 (N. D. Cal. May 3, 2007) (citations omitted). Here, Soilworks bases its false advertising claim on the Polar Supply Letters and, therefore, cannot show that Midwest disseminated the alleged representations sufficiently to constitute "advertising" or "promotion." (Statement of Facts at ¶¶70-71.)

Accordingly, because Soilworks cannot establish the essential elements of its Lanham Act false advertising claim, the Court should enter summary judgment in favor of Midwest.

**G.    Soilworks' State Law Claims are Preempted by Federal Patent Law and, Even if They Were Not Preempted, Soilworks Lacks Evidence to Support These Claims.**

**1.    <u>In the Absence of Clear and Convincing Proof of Bad Faith, Federal Patent Law Preempts State Tort Claims Premised on a Patentee's Marketplace Statements about its Patent.</u>**

Federal patent law bars state law claims based on a patentee's publication of a patent in the marketplace unless the plaintiff alleges and proves that the patent holder acted in bad faith. *Zenith Elecs. Corp.*, 182 F.3d at 1353 (*quoting Hunter Douglas*, 153 F.3d at 1336) ("federal patent law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith.").[7] "[T]o avoid patent law preemption of such state law tort claims, bad

---

[7] The overwhelming majority, if not all, of courts addressing this preemption issue have recognized that Federal Circuit law governs whether a state claim is preempted by federal

14

faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.* at 1355. State law claims premised on statements by a patentee in the marketplace regarding its patent and the infringement thereof are preempted and cannot survive summary judgment in the absence of the requisite demonstration of bad faith. *See, e.g., Globetrotter Software, Inc.*, 362 F.3d at 1374; *Golan*, 310 F.3d at 1370.

As discussed in Section F above, there is no evidence in this case that Midwest acted in bad faith in the sending the Polar Supply Letters. Accordingly, the Court should grant judgment in favor of Midwest as to Soilworks' state law claims (Counts IV and VI).

### 2.  Midwest did not Tortiously Interfere with Soilworks' Business Relationships or Expectancy (Count IV).

In order to prove the tort of intentional interference with contractual relationship or business expectancy under Arizona law, a plaintiff must show:

> the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. . . . In addition, the interference must be improper as to motive or means before liability will attach.

*Neonatology Associates, Ltd. v. Phoenix Perinatal Associates Inc.*, 164 P.3d 691, 693 (Ariz. App. Aug. 21, 2007) (citations omitted). In this case, even if it were not preempted by federal patent law, Soilworks' tortious interference claim cannot survive summary judgment because Soilworks lacks any evidence to prove at least three of these essential elements.[8]

---

patent law. *Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999); *see, e.g., In re Netflix Antitrust Litig.*, 506 F. Supp.3d 308, 319 (N.D.Cal. 2007); *Int'l Elecs., Inc. v. Human Elecs., Inc.*, 320 F. Supp.2d 1085, 1089 (W.D. Wash. 2004).

[8] The law of Ohio (the state from which Midwest sent the Polar Supply Letter) and the law of Alaska (the state in which Polar Supply is located) impose these same essential elements for tortious interference with business relationship and expectancy claims. *See Fred Siegal Co.. L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (Ohio 1999); *Kinzel v. Discovery Drilling,*

15

First, Soilworks concedes that Polar Supply Company remained a distributor of Soilworks' products following the Polar Supply Letters and is still a distributor. (Statement of Facts at ¶¶75-78.) Dorian Falkenberg, the Vice President of Soilworks, confirmed in her deposition that she would be the person that would know if this business relationship had been interrupted, and she knew of no such interruption. (*Id.* at ¶76.) While Chad Falkenberg made unsupported speculations in his deposition that Soilworks' distribution relationship was disrupted for a period of time following the Polar Supply Letters, he could provide *no* factual support for this allegation and he admittedly does not know the details of Polar Supply Company's business in Alaska involving Soilworks' products. (*Id.* at ¶77.)

Second, Soilworks cannot articulate, let alone prove that, it suffered any alleged damages as a result of the Polar Supply Letters. When directly asked in their depositions what, if any, damages that Soilworks suffered as a result of the Polar Supply Letters, neither Chad nor Dorian Falkenberg was able to provide *any* factual support for Soilworks' mere allegations that it suffered damages as a result of Midwest's conduct, whether it be in the form of loss of customers, loss of sales, or otherwise. (*Id.* at ¶¶79-85.) Nor has Soilworks produced any documents or information during the course of discovery that evidence any damages suffered by Soilworks as a result of the Polar Supply Letters.

Third, Soilworks cannot demonstrate that Midwest acted improperly "as to motive or means" in sending the Polar Supply Letters. *See Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1043 (Ariz. 1985) (whether interference is improper requires

_____

*Inc,* 93 P.3d 427, 443 (Alaska 2004). Therefore, for purposes of this present partial summary judgment motion, it is unnecessary to resolve which state law governs Soilworks' tortious interference claim.

16

consideration of the nature of the actor's conduct and the actor's motivation); *Wells Fargo Bank v. Arizona Labors*, 38 P.3d 12, 32 (Ariz. 2002). Interference is not improper if the actor is asserting, in good faith, a legally protected interest by appropriate means and believes that his interest may otherwise be impaired or destroyed by the performance of the agreement at issue. *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 212 (Ariz. 1986) (citations omitted). [9] Soilworks cannot demonstrate that Midwest acted "improperly" by sending the Polar Supply Letters; the letters were sent for the purpose of asserting Midwest's good faith belief that its patent rights would be impaired by Polar Supply Company's continued sale and distribution of Soilworks' Durasoil® product. (*See* Statement of Facts ¶¶69-70.)

### 3. Midwest did not Unfairly Compete with Soilworks (Count VI).

Even if Count VI of Soilworks' Complaint was not preempted by federal patent law, Soilworks has no evidence to support that Midwest has in anyway unfairly competed with Soilworks under Arizona common law. *See Fairway Construction, Inc.*, 970 P.2d at 956. Soilworks cannot demonstrate that a patentee's notification of its intellectual property rights and intent to enforce them, such as the Polar Supply Letters, constitutes unfair competition.

### CONCLUSION

For all of the foregoing reasons, Midwest requests the Court to grant partial summary judgment in Midwest's favor as set forth in its *Motion for Partial Summary Judgment*.

---

[9] Ohio and Alaska likewise require that interference must be improper (*i.e.*, unjustified or unprivileged) in order to provide a basis for a viable tortious interference claim. *See, e.g., Norwell v. Cincinnati*, 729 N.E.2d 1223, 1237-38 (Ohio App. 1999); *Oaksmith v. Brusich*, 774 P.2d 191, 197-98 (Alaska 1989).

17

By:    <u>/s/ Jill Bautista</u>
        Craig A. Marvinney, 0004951 (OH)
        John M. Skeriotis, 0069263 (OH)
        Jill A. Bautista, 0075560 (OH)
        BROUSE MCDOWELL
        388 S. Main Street, Suite 500
        Akron, Ohio 44311-4407
        Telephone:  330-535-5711
        Facsimile: 330-253-8601
        Email:   jskeriotis@brouse.com,
                   cmarvinney@brouse.com,
                   jbautista@brouse.com
        *Admitted pro hac vice*

        Donald L. Myles, Jr., 007464 (AZ)
        JONES, SKELTON & HOCHULI, P.L.C.
        2901 N. Central Ave., Suite 800
        Phoenix, Arizona 85012
        Telephone:  602-263-1700
        Facsimile: 602-263-1784
        Email:   dmyles@jshfirm.com

        *Attorneys for Defendant/Counterclaimant*
        *Midwest Industrial Supply, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** has been electronically filed on this 9th day of May, 2008. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Jill Bautista</u>
Jill A. Bautista

Doc. No. 715296.1