Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email: cmarvinney@brouse.com,
       jskeriotis@brouse.com,
       jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**DECLARATION OF ROBERT VITALE IN SUPPORT OF MIDWEST INDUSTRIAL SUPPLY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Dockets.Justia.com

I, Robert Vitale having personal knowledge of the facts stated herein, and being of legal age and sound mind and memory, do hereby declare as follows:

1. I am the Chief Executive Officer of Midwest Industrial Supply, Inc. ("Midwest"). The declarations set forth herein are true to the best of my knowledge and belief, and are based upon my personal knowledge and information known to me as the representative of Midwest.

2. This declaration is being given in support of Midwest's *Motion for Partial Summary Judgment* in this action.

3. Midwest manufactures, distributes, markets, and sells dust control, erosion control, soil stabilization, and anti-icing/de-icing products and related services for use to its customers in various industrials located throughout the United States and the world.

4. During the course of its more than thirty (30) years in business, Midwest has developed a substantial reputation and goodwill as a manufacturer and leading provider of chemical soil stabilization and dust control products.

5. Midwest was granted U.S. Patent Nos. 7,074,266 ("'266 Patent") and 7,081,270 ("'270 Patent") from the U.S. Patent and Trademark Office ("USPTO") for its innovative soil stabilization and dust control technology. Copies of Midwest's '266 Patent and '270 Patent are attached hereto as **Attachment 1** and **Attachment 2**, respectively.

6. Midwest owns and uses the following federally registered trademarks: Soil-Sement®, EnviroKleen®, EK35®, Road Oyl®, Road Pro NT®, Haul Road Dust Control®, Dustfyghter®, Diamond Dr®, Arena Rx®, Base-Bldr®, ROAD-BLDR®, and Synthetic Organic Dust Control® in connection with its soil stabilization and dust control products.

7. On August 10, 1982, Midwest received a registration on the Principal Register (Reg. No. 1,204,198) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust particles together and then cementing the bound surface layer to the road bed subbase[.]" A copy of Midwest's 1,204,198 Soil-Sement® trademark registration is attached as hereto as **Attachment 3**.

8. On February 9, 1999, Midwest received a registration on the Principal Register (Reg. No. 2,222,732) for the trademark Soil-Sement® for "chemical adhesive used in cementing surface dust and surface particles together and then cementing the bound surface layer to a subbase, including roadbase earth-work, bareground environments, clear cut or excavated areas, and subbase which is subject to wind, water, and vehicle erosion[.]" A copy of Midwest's 2,222,732 Soil-Sement® trademark registration is attached hereto as **Attachment 4**.

9. Midwest's Soil-Sement® trademark has been in continuous use for more than five consecutive years by Midwest subsequent to the date of its registrations.

10. On October 23, 2007, Midwest received a registration on the Principal Register (Reg. No. 3,318,243) for the trademark Synthetic Organic Dust Control® for "dust suppressant in the nature of aliphatic and cyclic organic dust suppressing compositions for use in controlling dust on roadways, shoulders, trails, helipads, stockpiles, heavy traffic roads, baseball diamonds, and horse-tracks[.]" A copy of Midwest's Synthetic Organic Dust Control® trademark registration is attached hereto as **Attachment 5**.

11. Midwest began using its Synthetic Organic Dust Control® mark in commerce since at least as early as July 1998 and had used the mark exclusively until Soilworks began using it no earlier than 2003.

12. Midwest has extensively marketed its soil stabilization and dust control products using the term "synthetic organic dust control" in its product literature, online, on the Internet, and at trade shows.

13. Midwest has invested considerable resources in developing goodwill in its Synthetic Organic Dust Control® trademark and in promoting its products throughout the United States. As a result, an appreciable number of consumers have come to associate the Synthetic Organic Dust Control® mark with Midwest.

14. Midwest markets its soil stabilization and dust control products, including EK35®, EnviroKleen®, Soil-Sement®, Diamond Dr®, and Arena Rx®, in product literature, on the Internet, and at tradeshows.

15. Soilworks is a competitor of Midwest in the areas of dust control and soil stabilization products. More specifically, Midwest's EK35®, EnviroKleen®, Diamond Dr® and Arena Rx® products compete with Soilworks' Durasoil® product, while Midwest's Soil-Sement® product competes with Soilworks' Soiltac® product.

16. Midwest has never consented to Soilworks' use of any of its trademarks, including its Soil-Sement® or Synthetic Organic Dust Control® trademarks.

17. "Oil-sheen free" is generally understood in the dust control and soil stabilization industry as meaning that the product has passed the Static Sheen Test of the United States Environmental Protection Agency. Passing this test indicates that, in the event

3

that the product reaches a water body, the product will not cause a sheen on the receiving water and necessitate a clean-up or other response.

18. It is Midwest's belief that, based upon certain materials listed by Soilworks on its Material Safety Data Sheet and Midwest's testing of those materials in relation to its own products, that Durasoil® is not "oil-sheen free."

19. Petroleum distillates are not considered "oil-sheen free" because they cause an oil sheen if they reach a water body.

20. The characteristics of "synthetic" and "oil-sheen free" are often considered important by customers and users when selecting a dust control or soil stabilization product. For example, the specifications for public projects often include express and/or implicit requirements that dust control and soil stabilization products must be synthetic and/or oil-sheen free. These specifications have been included in requests for bids for public projects for which both Midwest and Soilworks' distributors have submitted bids (or portions thereof) and have competed with one another to supply the requested synthetic and/or oil-sheen free product.

21. For example, the dust palliative specifications in the request for bids for an Alaska Department of Transportation ("ADOT") airport construction project issued in May 2006 included an express requirement that "the product shall be a high viscosity *synthetic* iso-alkane." The specifications also included an express requirement that "material shall *not* be a petroleum distillate." A copy of the dust palliative specifications for this project is attached hereto as **Attachment 6**.

22. As another example, the dust palliative specifications in the request for bids for bids for another ADOT airport construction project issued in June 2006 also included express requirements that "the product shall be a high viscosity *synthetic* iso-alkane" and the "material shall *not* be a petroleum distillate." A copy of the dust palliative specifications for this project is attached hereto as **Attachment 7**.

23. As yet another example, the dust palliative specifications in the request for bids for two ADOT highway-accessible projects issued in May 2007 included an express requirement that the product must have "no environmental constraints," including "no specialized response or clean-up requirements triggered or needed if an inadvertent spill occurs, whether to the ground or to a water body." A copy of the dust palliative specifications for this project is attached hereto as **Attachment 8**.

24. In 2006, Midwest became aware that Soilworks' Durasoil® product potentially infringed claims in Midwest's then-pending patent applications for Patent '266 and '270. Midwest's belief of this infringement by Soilworks was based on a review of the publicly available information regarding Soilworks' Durasoil® product, including (but not limited) to the product's Material Safety Data Sheet, by Midwest and Midwest's intellectual property attorney (John Skeriotis of Brouse McDowell LPA).

25. In July 2006, Midwest became aware that Polar Supply Company, a distributor of Soilworks' products located in Anchorage, Alaska, was attempting to submit a bid in response Notice of Intent to Award a Contract issued on July 10, 2006 by the Alaskan Department of Transportation ("ADOT") that expressly included a dust palliative specification for Midwest's EK35® product.

26. Based on Midwest's good faith belief that the sale or offer for sale of Soilworks' Durasoil® product constituted infringement of Midwest's then-issued Patent '266, I sent letters on July 27, 2006 to Polar Supply Company's President (Donald Dunavant) and Sales Manager (Dave Schooner) (the "Polar Supply Letters").

27. As stated in the Polar Supply Letters, my purpose in sending the Polar Supply Letters was to: (a) notify Polar Supply Company of the issuance of Patent '266, which I enclosed with the Polar Supply Letters; (b) advise Polar Supply Company that the issuance of Patent '266 allowed Midwest to legally pursue those who make, sell, offer for sale, and/or import knock-off or imitators of EK35® and EnviroKleen®; and (c) inform Polar Supply Letters that Midwest had apprised Soilworks of the issuance of Patent '266 and had not yet received a substantive response. The Polar Supply Letters are attached hereto as **Attachment 9** and **Attachment 10**, respectively.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of May, 2008.

Robert Vitale,
Chief Executive Officer of Midwest Industrial Supply, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **DECLARATION OF ROBERT VITALE IN SUPPORT OF MIDWEST INDUSTRIAL SUPPLY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** has been electronically filed on this 9th day of May, 2008. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jill Bautista
Jill A. Bautista

Doc. No. 715135.1