Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email: cmarvinney@brouse.com,
        jskeriotis@brouse.com,
        jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation, | NO.: 2:06-CV-2141-DGC |
| Plaintiff / Counterdefendant / Counterclaimant, | |
| v. | |
| MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona, | **MIDWEST INDUSTRIAL SUPPLY, INC.'S LOCAL RULE 56.1 RESPONSE TO SOILWORKS, LLC'S STATEMENT OF MATERIAL FACTS** |
| Defendant / Counterclaimant / Counterdefendant. | |

Pursuant to Local Rule 56.1 of the United States District Court for the District of Arizona, Midwest Industrial Supply, Inc. ("Midwest") submits the following responses to the statement of material facts submitted by Soilworks, LLC ("Soilworks") in support of its Motion for Partial Summary Judgment.

***Responsive Facts to Soilworks' Statement of Facts:***

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed.  This fact is irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims.

5.      Disputed.  Soilworks' Statement of Fact ¶5 misconstrues the cited portion of Mr. Vitale's deposition testimony.  *See* February 20, 2008 Deposition of Robert Vitale ("Vitale Dep. II") at 36:5-41:9, attached hereto as **Exhibit A**.  At Mr. Vitale's deposition, Midwest's counsel asserted work product protection and attorney client privilege as to the issue of whether or not Midwest undertook any testing of Soilworks' Durasoil® product for infringement purposes.  *See id.*  This subject matter is protected by, and not subject to disclosure, pursuant to work product protection and attorney client privilege.

Further, Midwest's preliminary evaluation of Soilworks' Durasoil product is irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims.  Also, as explained in Midwest's counsel's June 8, 2006 and August 8, 2006 letters to Soilworks' counsel, testing could not be performed to determine whether Soilworks' Durasoil product infringed the claims in Midwest's patents because of

2

Soilworks' refusal to Midwest with a list of its Durasoil product's ingredients. *See* Midwest's Statement of Facts (ECF #80) at ¶¶66-69, which are incorporated herein by reference.[1] Based on Midwest's evaluation of the publicly available information for Soilworks' Durasoil product, Midwest felt that the Durasoil product could infringe at least some of the claims in Midwest's two patent applications and sought more information from Soilworks, who then filed the instant suit. *See id.*

6. Disputed. Soilworks' Statement of Fact ¶6 misconstrues the cited portion of Mr. Vitale's deposition testimony. *See* Vitale Dep. II at 36:5-41:9 (Ex. A). Mr. Vitale's deposition, Midwest's counsel asserted work product protection and attorney client privilege as to the issue of whether or not Midwest undertook any testing of Soilworks' Durasoil product for infringement purposes. *See id.* This subject matter is protected by, and not subject to disclosure, pursuant to work product protection and attorney client privilege.

Further, Midwest's preliminary evaluation of Soilworks' Durasoil product is irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims. Also, as explained in Midwest's counsel's June 8, 2006 and August 8, 2006 letters to Soilworks' counsel, testing could not be performed to determine whether Soilworks' Durasoil product infringed the claims in Midwest's patents because of Soilworks' refusal to Midwest with a list of its Durasoil product's ingredients. *See* Midwest's Statement of Facts (ECF #80) at ¶¶66-69. Based on Midwest's evaluation of the publicly available information for Soilworks' Durasoil product, Midwest felt that the

---

[1] In accordance with Local Rule 7.1(d)(2), Midwest incorporates by reference the portions of its Statement of Facts (ECF #80) as cited herein.

product infringed at least some of the claims in Midwest's two patent applications. *See id.*

7.     Undisputed. This fact is irrelevant for purposes of Soilworks' Motion for Summary Judgment on Midwest's counterclaims. Midwest admits it sent a letter to a potential infringer of the Midwest Patents, the Polar Supply Company, Inc., pursuant to its rights under the Patent Laws of the United States, since it was selling the Durasoil product. *See,* 35 U.S.C. § 271(a).

8.     Disputed. Soilworks' Statement of Fact ¶8 misconstrues the cited portion of Mr. Vitale's deposition testimony. *See* Vitale Dep. II at 36:5-41:9 (Ex. A). At Mr. Vitale's deposition, Midwest's counsel asserted work product protection and attorney client privilege as to the issue of whether or not Midwest undertook any testing of Soilworks' Durasoil product for infringement purposes. *See id.* This subject matter is protected by, and not subject to disclosure, pursuant to work product protection and attorney client privilege.

In fact, Chad Falkenberg, President and creator of Durasoil, admits that Soilworks' Durasoil product may infringe the Midwest Patents based upon how the claims are construed. *See* Chad Falkenberg Dep. at (Ex. D) at 174:6-175:19, 175:20-25, 176:1-21, 177:15-179:12, 182:5-19, 255:11-256:3-17; *see also* Midwest's Responsive Statement of Facts at ¶¶46, 48, 50, 52 below.

Further, Midwest's preliminary evaluation of Soilworks' Durasoil product is irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims. Also, as explained in Midwest's counsel's June 8, 2006 and August 8,

4

2006 letters to Soilworks' counsel, testing could not be performed to determine whether Soilworks' Durasoil product infringed the claims in Midwest's patents because of Soilworks' refusal to Midwest with a list of its Durasoil product's ingredients. *See* Midwest's Statement of Facts (ECF #80) at ¶¶66-69. Based on Midwest's evaluation of the publicly available information for Soilworks' Durasoil product, Midwest felt that the product infringed at least some of the claims in Midwest's two patent applications. *See id.*

9.      Undisputed. While the Polar Supply Letters are irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims, this is an accurate statement of U.S. Patent Laws and the rights of a patent holder. *See* 35 U.S.C. § 271(a).

10.     Disputed. Soilworks' statement that Midwest "specifically referred to Soilworks' allegedly infringing conduct" reflects a mischaracterization of the Polar Supply Letters. *See* Midwest's Statement of Facts at ¶71. Also, the Polar Supply Letters are irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims.

11.     Disputed. Soilworks' reference to "direct threats" and "general claims to the trade of Soilworks' infringement" reflects a mischaracterization of the cited "Marketing Materials" (as labeled by Soilworks). *See* Exhibit 7 to Soilworks' Statement of Facts. Also, the "Marketing Materials" are irrelevant for purposes of Soilworks' Motion for Summary Judgment on Midwest's counterclaims.

5

Further, Midwest's statement that "others claiming to offer products similar to EnviroKleen and EK35 are either not supplying Synthetic Organic Dust Control or are infringing Midwest Industrial Supply's patents" is a correct factual statement. At the time of the cited promotional materials, one of Soilworks' distributors (Polar Supply Company) had submitted a bid to supply Soilworks' Durasoil product for a project for which the express specifications were Midwest's EK35 and had submitted other bids (or quotes to general contractors be incorporated into bids) for projects for which the express specifications were for dust palliative products with ingredients covered by Midwest's Patents (e.g., a binder and a synthetic isoalkane). *See* May 8, 2008 Declaration of Robert Vitale, submitted in support of Midwest's Statement of Facts (ECF #80-4) and June 11, 2008 Declaration of Robert Vitale, attached hereto as **Exhibit F**; Deposition Testimony of Steve Hickman at 87:15-90:14, 100:5-101:6, 149:8-18, 153:9-154:9, 154:23-156:3, attached hereto as **Exhibit G**. Thus, in doing so, Polar Supply Company was either not supplying a Synthetic Organic Dust Control (which is covered by Midwest's patents) or it was infringing Midwest's patents.

12. Undisputed. The cited "Marketing Materials" are irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims.

13. Undisputed. The cited "Marketing Materials" are irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims.

14. Undisputed. The cited "Marketing Materials" are irrelevant for purposes of Soilworks' motion for summary judgment on Midwest's counterclaims. Further, Midwest's statement that "others claiming to offer products similar to EnviroKleen and

6

EK35 are either not supplying Synthetic Organic Dust Control or are infringing Midwest Industrial Supply's patents" is a correct factual statement. At the time of the cited promotional materials, one of Soilworks' distributors (Polar Supply Company) had submitted a bid to supply Soilworks' Durasoil product for a project for which the express specifications were Midwest's EK35 and had submitted other bids (or quotes to general contractors be incorporated into bids) for projects for which the express specifications were for dust palliative products with ingredients covered by Midwest's Patents (e.g., a binder and a synthetic isoalkane). *See* May 8, 2008 Declaration of Robert Vitale, submitted in support of Midwest's Statement of Facts (ECF #80-4) and June 11, 2008 Declaration of Robert Vitale, attached hereto as **Exhibit F**; Deposition Testimony of Steve Hickman at 87:15-90:14, 100:5-101:6, 149:8-18, 153:9-154:9, 154:23-156:3, attached hereto as **Exhibit G**. Thus, in doing so, Polar Supply Company was either not supplying a Synthetic Organic Dust Control (which is covered by Midwest's patents) or it was infringing Midwest's patents.

15. Disputed. Soilworks does not manufacture or blend Durasoil. *See* Deposition Testimony of Keven Hurst at 11:13-14:11, 20:5-7, attached hereto as **Exhibit C**; Deposition Testimony of Chad Falkenberg at 235:2-4, 238:9-23 and Exhibit 8 thereto, attached hereto as **Exhibit D**. In Soilworks' patent claim construction charts, which were prepared by Chad Falkenberg (President and creator of Durasoil), Soilworks states that "Durasoil is not a blend." *See* Exhibit 8 of Chad Falkenberg Depo. (Ex. D). Keven Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert,

Arizona facility, and that no blending has taken place in the two years since he has been employed at Soilworks. *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C). Then in Soilworks' 30(b)(6) deposition, Chad Falkenberg stated that Durasoil "can be a blend;" however, he could provide no information as to when or how often blending by Soilworks supposedly occurs. *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D). He also confirmed that Soilworks' suppliers do not blend products for Soilworks. Chad Falkenberg Depo. at 234:16-23, 237:25-238:8 (Ex. D). Soilworks has produced no documents during discovery supporting the claim that Soilworks blends or mixes ingredients together to make Durasoil at its Gilbert, Arizona facility. Soilworks altered its position as to blending of Durasoil only after the Midwest depositions regarding Midwest's testimony as to what is a "manufacturer."

16.    Disputed. Soilworks has no evidence whatsoever that Durasoil has ever been blended to mix ingredients to create varying levels of viscosities and mixture ratios. Soilworks does not manufacture or blend Durasoil. *See* Deposition Testimony of Kevin Hurst at 11:13-14:11, 20:5-7, attached hereto as **Exhibit C**; Deposition Testimony of Chad Falkenberg at 235:2-4, 238:9-23 and Exhibit 8 thereto, attached hereto as **Exhibit D**. In Soilworks' patent claim construction charts, which were prepared by Chad Falkenberg (President and creator of Durasoil), Soilworks states that "Durasoil is not a blend." *See* Exhibit 8 of Chad Falkenberg Depo. (Ex. D). Kevin Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert, Arizona facility, and that no blending has taken place in the two years since he has been employed at

Soilworks.  *See* Kevin Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C).  Then in Soilworks'

30(b)(6) deposition,  Chad Falkenberg stated that Durasoil "can be a blend;" however, he

could provide no information as to when or how often blending by Soilworks supposedly

occurs.  *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D).  He also confirmed

that Soilworks' suppliers do not blend products for Soilworks.  Chad Falkenberg Depo. at

237:25-238:8 (Ex. D).   Soilworks has produced no documents during discovery

supporting the claim that Soilworks blends or mixes ingredients together to make

Durasoil at its Gilbert, Arizona facility. Soilworks altered its position as to blending of

Durasoil only after the Midwest depositions regarding Midwest's testimony as to what is

a "manufacturer."

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    Undisputed.

21.    Undisputed.

22.    Undisputed.

23.    Disputed by Midwest.  *See* Midwest's Motion for Order, ECF Docket No.

67 and the Court's Order, ECF Docket No. 86.

24.    Undisputed.

25.    Disputed.  For purposes of its Lanham Act claim for false advertising by

Soilworks, Midwest also states that Soilworks falsely asserts that its Durasoil product

consists of "proprietary ingredients" and is a "revolutionary state-of-the-art innovation." *See* Midwest's Statement of Facts at ¶¶44-61.

26.     Disputed.   The record evidence establishes that Soilworks has used Midwest's Soil-Sement® mark in commerce.  *See* Midwest's Statement of Facts at ¶¶6-9, 30, 38-43.

27.     Disputed.  Soilworks mischaracterizes the cited portion of the record.  *See* February 19, 2008 Deposition Testimony of Robert Vitale ("Vitale Dep. I") at 79:11-24, attached hereto as **Exhibit B**; Vitale Dep. II at 64:7-67:8, 86:1-87:18, 120:1-12 (Ex. A). In his deposition, Mr. Vitale expressly confirmed that Midwest maintains that Soilworks' use of Midwest's Soil-Sement® mark for purposes of Soilworks' internet advertising practices, including its websites' metatags, constitutes trademark infringement. *See id.*

28.     Disputed.   Soilworks' Statement of Fact ¶28 that "[i]ndeed, it admits no confusion exists" is entirely ambiguous and argumentative, rather than factual.  Also, Soilworks mischaracterizes the cited portion of the record, which does not constitute an admission by Midwest that no confusion exists within the meaning of Midwest's Lanham Act claims for trademark infringement, false designation of origin, and unfair competition.  *See* Vitale Dep.  II at 66:10-23 (Ex. A).  In this passage of his deposition, Mr. Vitale only stated that consumers do not buy a product from Soilworks thinking that they are buying it from Midwest.  *See id.*

29.     Disputed.  One of Midwest's many false advertising claims is based on Soilworks' statement that it is a manufacturer, but Midwest's Lanham Act claim for false advertising encompasses other false advertisements by Soilworks, including Soilworks'

statements that its Durasoil product is "synthetic," "oil-sheen free," made of "proprietary ingredients," and a "revolutionary state-of-the-art innovation" and that Soilworks is an "innovator." *See* Midwest's Responsive Statement of Facts at ¶25 above and Statement of Facts at ¶¶44-61.

30. Disputed. Midwest's claim that Soilworks is not a manufacturer is based on Soilworks' failure to put forth any evidence that it manufactures its Durasoil product. Soilworks does not manufacture or blend Durasoil. *See* Deposition Testimony of Kevin Hurst at 11:13-14:11, 20:5-7, attached hereto as **Exhibit C**; Deposition Testimony of Chad Falkenberg at 235:2-4, 238:9-23 and Exhibit 8 thereto, attached hereto as **Exhibit D**. In Soilworks' patent claim construction charts, which were prepared by Chad Falkenberg (President and creator of Durasoil), Soilworks states that "Durasoil is not a blend." *See* Exhibit 8 of Chad Falkenberg Depo. (Ex. D). Kevin Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert, Arizona facility, and that no blending has taken place in the two years since he has been employed at Soilworks. *See* Kevin Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C). Then in Soilworks' 30(b)(6) deposition, Chad Falkenberg stated that Durasoil "can be a blend;" however, he could provide no information as to when or how often blending by Soilworks supposedly occurs. *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D). He also confirmed that Soilworks' suppliers do not blend products for Soilworks. Chad Falkenberg Depo. at 234:16-23, 237:25-238:8 (Ex. D). Soilworks altered its position as to blending of Durasoil only after the Midwest depositions regarding Midwest's testimony as to what is

a "manufacturer."  Soilworks has produced no documents during discovery that indicate that Soilworks blends or mixes ingredients together to make Durasoil at its Gilbert, Arizona facility, or that its suppliers blend or mix ingredients together to make Durasoil for Soilworks pursuant to the formula or specifications provided to the supplier by Soilworks.

31.    Disputed.  The self-serving statement by Mr. Falkenberg that he "believes" Soilworks to be a manufacturer does not establish that Soilworks is, in fact a manufacturer.  *See* Soilworks' Statement of Facts at ¶31.  Further, to the extent that Soilworks claims to be a manufacturer because it allegedly "blends" its Durasoil product, the record evidence does not demonstrate that Soilworks is a manufacturer based on its assertion that it "blends" its Durasoil product.  *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C); Chad Falkenberg Testimony at 235:2-4, 238:9-23 and Ex. 8 thereto (Ex. D).  In its patent claims chart, Soilworks states that "Durasoil is not a blend."  *See* Exhibit 8 of Chad Falkenberg Depo. (Ex. D).  Keven Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert, Arizona facility, and that no blending has taken place in the two years since he has been employed at Soilworks.  *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C).  While Chad Falkenberg stated in his deposition that Durasoil "can be a blend," he could provide no information during his deposition as to when or how often blending by Soilworks supposedly occurs.  *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D).  He also confirmed that Soilworks' suppliers do not blend products for Soilworks.  Chad Falkenberg Depo. at 234:16-23,

12

237:25-238:8 (Ex. D). Soilworks has produced no documents during discovery that indicate that Soilworks blends or mixes ingredients together to make Durasoil at its Gilbert, Arizona facility, or that its suppliers blend or mix ingredients together to make Durasoil for Soilworks pursuant to the formula or specifications provided to the supplier by Soilworks.

32. Disputed. First, Soilworks cites no portion of the record to support its assertion in ¶32 of its Statement of Facts that "by Midwest's own definition of 'manufacture,' Soilworks manufacturers the Durasoil, Surtac, Soiltac and Gorilla-Snot products. Second, the record evidence does not demonstrate that Soilworks blends or mixes ingredients together pursuant to a formula to make its Durasoil, Surtac, Soiltac, or Gorilla-Snot product. *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C); Chad Falkenberg Testimony at 235:2-4, 238:9-23 and Ex. 8 thereto (Ex. D). In its patent claims chart, Soilworks states that "Durasoil is not a blend." *See* Exhibit 8 of Chad Falkenberg Depo. (Ex. D). Keven Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert, Arizona facility, and that no blending has taken place in the two years since he has been employed at Soilworks. *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C). While Chad Falkenberg stated in his deposition that Durasoil "can be a blend," he could provide no information during his deposition as to when or how often blending by Soilworks supposedly occurs. *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D). He also confirmed that Soilworks' suppliers do not blend products for Soilworks. Chad Falkenberg Depo. at 234:16-23,

237:25-238:8 (Ex. D). Soilworks has produced no documents during discovery that indicate that Soilworks blends or mixes ingredients together to make Durasoil at its Gilbert, Arizona facility, or that its suppliers blend or mix ingredients together to make Durasoil for Soilworks pursuant to the formula or specifications provided to the supplier by Soilworks.

33.     Undisputed.

34.     Disputed.  Soilworks mischaracterizes the cited portion of the record.  *See* Vitale Depo. II at 69:20-70:5 (Ex. A).   In his deposition, Mr. Vitale stated that if a company provides a supplier with a product specification and the supplier toll blends ingredients to together to a specific formula in order to meet the product specification, the company providing the specifications could be considered a manufacturer.  *See id.*  He also said that, if the product provided by the supplier is a product that the supplier has off-the-shelf or sells for other purposes and product is just being relabeled and shipped to the company, the company providing the specifications could not be considered a manufacturer.  *See id.*

35.     Disputed.  Soilworks mischaracterizes the cited portion of the record.  *See* Midwest's Responsive Statement of Fact at ¶35 above and Vitale Depo. II at 69:4-70:5 (Ex. A).

36.     Disputed.  Soilworks does not mix and blend its Durasoil, Surtac, Soiltac and Gorilla-Snot products.  *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C); Chad Falkenberg Depo. at 235:2-4, 238:9-23 and Ex. 8 thereto (Ex. D).  In its patent claim construction charts, Soilworks states that "Durasoil is not a blend."  *See* Exhibit 8 of

Chad Falkenberg Depo. (Ex. D). Keven Hurst, Soilworks' general foreman and field technician testified during his deposition that he would be the person in charge of blending if it were conducted at Soilworks' Gilbert, Arizona facility, and that no blending has taken place in the two years since he has been employed at Soilworks. *See* Keven Hurst Depo. at 11:13-14:11, 20:5-7 (Ex. C). Chad Falkenberg stated in his deposition that Durasoil "can be a blend," he could provide no information during his deposition as to when or how often blending by Soilworks supposedly occurs. *See* Chad Falkenberg Depo. at 235:2-4, 238:9-23 (Ex. D). Soilworks has produced no documents during discovery supporting the claim that Soilworks blends or mixes ingredients together to make the cited products at its Gilbert, Arizona facility.

37. Disputed. Soilworks has produced no evidence of any product specifications that it provides to its suppliers. *See* Deposition Testimony of Dorian Falkenberg at 31:12-32:24, attached as Ex. 13 to Soilworks' Statement of Facts. Also, Chad Falkenberg confirmed during his deposition that Soilworks' suppliers do not blend products for Soilworks. Chad Falkenberg Depo. at 234:16-23, 237:25-238:8 (Ex. D)

38. Disputed. Soilworks' Statement of Fact ¶38 that "Midwest admits no deception has occurred" is entirely ambiguous and argumentative, rather than factual. Also, Soilworks mischaracterizes the cited portion of the record, which does not constitute an admission by Midwest that no deception exists within the meaning of Midwest's Lanham Act claims for false advertising. *See* Vitale Dep. II at 66:10-23 (Ex. A). In this passage of his deposition, Mr. Vitale only stated that consumers do not buy a product from Soilworks thinking that they are buying it from Midwest. *See id.*

39. Disputed. Soilworks' Statement of Fact ¶29 that "Midwest makes only conclusory and unsupported allegations . . ." is entirely ambiguous and argumentative, rather than factual. Also, Soilworks mischaracterizes the cited portion of the record, in which Mr. Vitale stated that Soilworks' conduct has, among other injuries, caused Midwest to lose customers and potential sales, including projects for the Alaskan Department of Transportation and purchase orders for the U.S. military. *See* Vitale Depo. II at 60:21-61:18 (Ex. A); *see also* Midwest's Statement of Additional Responsive Facts at ¶¶54-67 below.

40. Undisputed.

41. Undisputed.

42. Undisputed.

43. Undisputed. *See also* Midwest's Statement of Additional Responsive Facts at ¶¶54-67 below.

44. Disputed, with respect to the statement that "Midwest has not presented any evidence of a likelihood of confusion" and undisputed with respect to the statement that "Midwest makes no claims of ownership to the terms "oil-sheen free." With respect to Soilworks' statement regarding likelihood of confusion, this statement is a legal conclusion, not a factual statement, and Soilworks cites to no portion of the record that supports this assertion. A likelihood of confusion is created as a result of Soilworks' infringement of Midwest's Soil-Sement® mark. *See* Midwest's Statement of Facts at ¶¶6-9, 30, 38-43. Likelihood of confusion is not an element of Midwest's Lanham Act claim for false advertising. *See* 15 U.S.C. 1125(a)(1)(B). With respect to Soilworks' statement

regarding the term "oil-sheen free," ownership of the term "oil-sheen free" is also irrelevant to Midwest's Lanham Act claim for false advertising. *See id.*

45.     Disputed.   Midwest's Patents require a compound with a composition consisting of: (a) a binder consisting of a carboxylic acid, an ester, **_or_** a thermoplastic polyolefin and (b) a synthetic isoalkane. *See* Midwest's '266 and '270 Patents, which were submitted to the Court as Attachments 1 and 2 to Robert Vitale's May 8, 2008 Declaration (ECF #80-4); Ex. 8 of Chad Falkenberg Depo. (Ex. D).

**Midwest's Motion to Strike Funk Report:**[2]     The sole evidentiary support offered by Soilworks in support of Statement of Facts ¶¶42-53 is a two-page letter report prepared by Soilworks' expert, Edward Funk, *dated May 7, 2008.* This report is entirely untimely, and it was filed by Soilworks in violation of Federal Rule of Civil Procedure 26(A)(2)(B) and this Court's May 7, 2007 Case Management Order (ECF #28). Mr. Funk's report should be stricken from the record and disregarded by the Court.

Pursuant to the Case Management Ordered, both parties were required to provide full and complete expert disclosures with respect to any issue on which the party bears the burden of proof at trial no later than ***December 14, 2007***. *See* CMO at ¶5(a). The CMO further provided that rebuttal expert disclosures were required to be made no later than February 29, 2008 and all expert depositions were to commence no later than April 28, 2008. *See* CMO at ¶5(b-c).

---

[2] In accordance with Local Rule 7.2(m), Midwest has explained herein the multiple reasons why the cited report of Soilworks' expert, Mr. Edward Funk, must be stricken and disregarded by the Court, as opposed to filing a separate motion to strike.

On March 7, 2008, Soilworks identified Edward Funk as its expert witness in this case. *See* Soilworks' Rule 26 Expert Disclosures, attached hereto as **Exhibit E**. Soilworks stated in its "disclosure" that that Mr. Funk was expected to testify that Midwest's '266 and '270 Patents were not validly issued based on prior art in the filed and in the industry. Soilworks ***did not*** provide any indication that Mr. Funk was expected to opine that Soilworks' Durasoil product did not infringe Midwest's patents. Further, Soilworks' "disclosure" of Mr. Funk was not accompanied by an expert report prepared and signed by Mr. Funk, as required by Rule 26(A)(2)(B).

Mr. Funk's 2-page letter report of May 7, 2008 opines Durasoil product lacks essential elements covered by Midwest's Patents. Soilworks did not obtain the leave of the Court to either amend the scope of Mr. Funk's opinions in this case or to disclose Mr. Funk's expert report beyond the expert disclosure deadlines in this case. Soilworks never delivered a copy of Mr. Funk's letter to Midwest in advance of Soilworks' filing of the letter in support of its summary judgment motion. Soilworks never amended its March 7, 2008 disclosure of Mr. Funk's opinions, nor did it otherwise inform Midwest that Mr. Funk would offer an opinion as to whether Durasoil infringed the claims in Midwest's Patents.

Because Mr. Funk's current opinions of non-infringement and his expert report were never timely disclosed to Midwest, Midwest had no opportunity within the discovery period to depose Mr. Funk and obtain an expert to provide a rebuttal report and testimony on the issue of non-infringement. Soilworks' act of filing the Funk report in support of its summary judgment motion amounts to improper and unfair tactics of

surface and ambush. Permitting Soilworks to utilize Mr. Funk's non-compliant expert report in these summary judgment proceedings would permit Soilworks to violate Rule 26(A)(2)(B) and the Court's CMO.

For all of these reasons, the Court must strike Mr. Funk's expert report and exclude Mr. Funk from testifying on behalf of Soilworks at trial. If the Court does not strike this improper report and preclude Mr. Funk from testifying at trial, Court should expressly authorize Midwest to depose Mr. Funk and retain an expert to provide rebuttal testimony on the issue of patent infringement before resolving the parties' claims related to patent infringement.

46. Disputed. The sole evidentiary support offered by Soilworks in support of this allegation is Mr. Funk's May 7, 2008 letter report, which must be stricken and disregarded by the Court. *See* Midwest's Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference. Further, Soilworks' own testimony confirms that Soilworks does not know whether or not its Durasoil product contains a carboxylic acid. *See* Chad Falkenberg Depo. at 174:6-175:19 (Ex. D).

47. Disputed. The sole evidentiary support offered by Soilworks in support of this allegation is Mr. Funk's May 7, 2008 letter report, which must be stricken and disregarded by the Court. *See* Midwest's Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference. Furthermore, claims 1-8 and 10-16 of the '270 Patent do not include an "emulsifier." ('270 Patent, col. 9, ll. 33 – col. 10, ll. 51, which was submitted to the Court as Attachment 2 to Robert Vitale's May 8, 2008 Declaration (ECF #80-4).) Only claim 9 requires an "emulsifier." (*Id*., at col. 10, l. 11.) Claims 1-5,

7-13 and 15 do not include an "emulsifier." ('266 Patent, col. 9, ll. 32 – col. 10, ll. 34, which was submitted to the Court as Attachment 1 to Robert Vitale's May 8, 2008 Declaration (ECF #80-4).)  Only claims 6 and 14 require an "emulsifier."  (*Id*., at col. 10, ll. 9-10; col. 10, ll. 31-32.)

48.    Disputed.  The sole evidentiary support offered by Soilworks in support of this allegation is Mr. Funk's May 7, 2008 letter report, which must be stricken and disregarded by the Court.  *See* Midwest's Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference.  Further, nothing in the record establishes Soilworks' claim that its Durasoil product does not contain an emulsifier.

49.    Undisputed.

50.    Disputed.  The sole evidentiary support offered by Soilworks in support of this allegation is Mr. Funk's May 7, 2008 letter report, which must be stricken and disregarded by the Court.  *See* Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference.  Further, Soilworks' own testimony confirms that Soilworks does not know whether or not its Durasoil product contains a synthetic isoalkane.  *See* Chad Falkenberg Depo. at 176:11-21, 177:15-179:12, and 255:11-256:3 (Ex. D).

Also, at least one of Soilworks' distributors (Polar Supply Company) has submitted several bids (or portions thereof) to supply Soilworks' Durasoil product for public projects for which the project specifications expressly required a dust control product that had a "synthetic isoalkane."  *See* May 8, 2008 Declaration of Robert Vitale, submitted in support of Midwest's Statement of Facts (ECF #80-4) and June 11, 2008

Declaration of Robert Vitale (Ex. F). Representatives of Polar Supply Company confirmed that Polar Supply Company submitted bids in response to these specifications. *See* Steve Hickman Deposition Testimony at 87:15-25, 100:5-101:6, 149:8-18, 153:9-154:9, 154:23-156:3 (Ex. G). They also confirmed that, if Polar Supply Company had any questions as to whether Durasoil could meet the specifications for the project, Polar Supply Company's practice would have been to confirm with Chad Falkenberg of Soilworks that Durasoil could meet the specification before submitting the bid. *See* Hickman Dep. at 39:10-16, 154:23-155:12 (Ex. G); Deposition Testimony of Steve Gordner at 49:5-50:5, 54:14-55:6, 55:23-25, attached hereto as **Exhibit H**.

51.  Disputed. The sole evidentiary support offered by Soilworks in support of this allegation is Mr. Funk's May 7, 2008 letter report, which must be stricken and disregarded by the Court. *See* Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference. Further, Midwest's Patents require a compound with a composition consisting of: (a) a binder consisting of a carboxylic acid, an ester, **_or_** a thermoplastic polyolefin and (b) a synthetic isoalkane. (*See* Ex. 8 of Chad Falkenberg Depo. (Ex. D). In fact, only claims 10, 11 of the '266 Patent require a "polyolefin." ('266 Patent, col. 10, ll. 20-24.) Only claims 4 and 5 of the '270 Patent require a "polyolefin." ('270 Patent, col. 9, ll. 45-49.)

52.  Disputed. Mr. Funk's May 7, 2008 letter report must be stricken and disregarded by the Court. *See* Responsive Statement of Facts at ¶45 above, which is incorporated herein by reference. Further, Soilworks' own testimony confirms that Soilworks does not know whether or not its Durasoil product contains a polyolefin or

binder.  *See* Chad Falkenberg Depo. at 175:20-25, 176:1-10, 182:5-19, and 256:3-17 (Ex. D).

Also, at least one of Soilworks' distributors (Polar Supply Company) has submitted several bids (or portions thereof) to supply Soilworks' Durasoil product for public projects for which the project specifications expressly required a dust control product that had a "reworkable binder."  *See* May 8, 2008 Declaration of Robert Vitale, submitted in support of Midwest's Statement of Facts (ECF #80-4) and June 11, 2008 Declaration of Robert Vitale (Ex. F).  Representatives of Polar Supply Company confirmed that Polar Supply Company submitted bids in response to these specifications. *See* Steve Hickman Depo. at 87:15-25, 100:5-101:6, 149:8-17, 153:9-154:9, 154:23-156:3 (Ex. G).  They also confirmed that, if Polar Supply Company had any questions as to whether Durasoil could meet the specifications for the project, Polar Supply Company's practice would have been to confirm with Chad Falkenberg of Soilworks that Durasoil could meet the specifications before submitting the bid.  *See* Steve Hickman Dep. at 39:10-16, 154:23-155:12 (Ex. G); Steve Gordner Testimony at 49:5-50:5, 54:14-55:6, 55:23-25 (Ex. H).

53.    Disputed.  *See* Midwest's Responsive Statement of Facts at ¶¶45-52 above and ¶¶62-64 below.

***Additional Material Facts:***

Pursuant to Local Rule 56.1, Midwest submits the following additional facts that are material to the issues raised in Soilworks' summary judgment motion and associated statement of facts:

54.     The dust control and soil stabilization industry is an industry in which there are a very limited number of entities competing to provide their products to potential consumers and distributors.  *See* June 11, 2008 Declaration of Robert Vitale (Ex. F).

55.     Internet advertising and marketing/promotional materials are heavily used and relied upon by both consumers and distributors in selecting the dust control and/or soil stabilization products for their projects and making purchasing decisions.  *See* June 11, 2008 Declaration of Robert Vitale (Ex. F); Steve Hickman Depo. at 45:24-46:23, 67:25-70:11, 79:1-80:19, 96:6-25 (Ex. G).  Consumers and distributors rely on internet advertisements and marketing/promotional materials to, among other purposes, determination of various products' claims regards environmental impact, product chemistry, and performance, which claims are used in making purchasing decisions.  *See* June 11, 2008 Declaration of Robert Vitale (Ex. F).

56.     For example, in his deposition, Mr. Hickman confirmed that Polar Supply Company (a distributor of Soilworks' products) relies upon the brochures and other literature, as well as the information on Soilworks' website, for information regarding the Soilworks' products that Polar Supply Company sells and promotes.  *See* Steve Hickman Depo. at 45:24-46:23, 67:25-70:11, 79:1-80:19, 96:6-25 (Ex. G).  This information includes Soilworks' representations that its products are "synthetic" and "oil-sheen free." *See id.*

57.     Distributors like Polar Supply Company pass along this product information and materials to their existing and potential customers.  *See id.*

58.     In many cases, Midwest and Soilworks' distributors, such as Polar Supply Company, are the only entities competing with one another to provide and sell their respective dust control products to a particular potential consumer.  *See* June 11, 2008 Declaration of Robert Vitale (Ex. F).

59.     For example, the Army Corps of Engineers' Dust Control Field Handbook indicates that a "synthetic organic fluid" should be used as the dust control product for various military applications.  *See id.*  In this handbook, the Corp expressly recognizes that Midwest and Soilworks are the two vendors that offer synthetic organic fluids.  *See id.*  The handbook states that the procedure for selecting an appropriate product for military dust control applications is to identify the recommended product category and then select a product and its vendor from the list provided for that recommended product category.  *See id.*

60.     When a military project calls for the application of "synthetic organic fluid" for dust control purposes, the Corps' handbook directs that military to select either Soilworks or Midwest to be the vendor.  *See id.*  If Soilworks did not represent that its Durasoil product was a "synthetic organic fluid," Midwest would be the only recommended vendor identified in the handbook for these applications.  *See id.*

61.     Other examples of Midwest's direct competition with Soilworks (or its distributors) for sales of dust control products include the public projects for which the bid requests that were discussed in Paragraphs 21-23 of the May 8, 2008 Robert Vitale Declaration (ECF #80-4).   These bid requests included express specifications for synthetic and/or non-petroleum distillate (*i.e.*, oil-sheen free) dust control products.  *See*

Paragraphs of 21-23 of May 8, 2008 Vitale Dec. and June 11, 2008 Declaration of Robert Vitale (Ex. F).

62. In response to these bid requests, Midwest and Soilworks' distributor submitted bids (or quotes to general contractors for their bid submissions) and competed with one another to supply the consumer with the dust control product for the project. *See* Paragraphs of 21-23 of May 8, 2008 Vitale Dec. and June 11, 2008 Declaration of Robert Vitale (Ex. F).

63. For example, in 2006, Midwest competed with Soilworks' distributor, Polar Supply Company, to supply Midwest's and Soilworks' respective dust control products for an airport construction project for the Alaskan Department of Transportation with dust palliative specifications that included express requirements that "the product shall be a high viscosity *synthetic* isoalkane," have a binder, and the "material shall *not* be a petroleum distillate" (the "Chevak airport project"). *See* Paragraph 21 of May 8, 2008 Vitale Dec. and Attachment 6 thereto; June 11, 2008 Declaration of Robert Vitale (Ex. F).

64. As another example, in 2006, Midwest competed with Polar Supply Company to supply Midwest's and Soilworks' respective dust control products for another airport construction project for the Alaskan Department of Transportation with dust palliative specifications that included express requirements that "the product shall be a high viscosity *synthetic* isoalkane," have a binder, and the "material shall *not* be a petroleum distillate" (the "Kokhanok airport project"). *See* Paragraph 22 of May 8, 2008

Vitale Dec. and Attachment 7 thereto; June 11, 2008 Declaration of Robert Vitale (Ex. F).

66. In some of these instances, Soilworks' distributors' bids have obtained the contracts to supply Soilworks' dust control product for the projects based upon Soilworks' representations that its Durasoil project is synthetic and not a petroleum distillate (oil-sheen free), thereby causing Midwest to lose the project and the associated sale of Midwest's dust control product. June 11, 2008 Declaration of Robert Vitale (Ex. F). This situation occurred in the case of the Kokhanok airport project. *See id.* The general contractor was awarded the contract for the project and selected Polar Supply Company's quote for Soilworks' Durasoil product in order to fulfill the ADOT dust palliative requirement for the Kokhanok airport project, and the contractor purchased the required dust palliative for the project from Polar Supply Company instead of Midwest. *See id.*; Hickman Dep. at 87:15-25, 100:5-101:6, 149:8-17, 153:9-154:9, 154:23-156:3 (Ex. G).

66. Because Midwest and Polar Supply Company were the only two entities competing to supply the needed dust control palliative for the Kokhanok airport project, Midwest would have obtained the contract for the project (*i.e.*, the sale of the dust control product for the project) if it were not for Soilworks' representations that its Durasoil product is a synthetic isoalkane and not a petroleum distillate. *See id.*

67. Mr. Hickman of Polar Supply Company confirmed that when asked why certain specifications for dust control products are included in the specifications as opposed to other specifications, the Alaskan Department of Transportation informed him

26

that it is because the Department has "used it before and it works." *See* Steve Hickman Depo. at 108:2-10 (Ex. G).

By: /s/ John M. Skeriotis
Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email: cmarvinney@brouse.com,
jskeriotis@brouse.com,
jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI,
P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for*
*Defendant/Counterclaimant*
*Midwest Industrial Supply, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S RESPONSE TO SOILWORK'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** has been electronically filed on this 11th day of June, 2008.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ John M. Skeriotis
John Skeriotis

Doc. No. 717917.5