IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

SOILWORKS, LLC, an Arizona )
corporation, )
)
    Plaintiff/Counterdefendant, )
)
            vs. ) NO. 2:06-CV-02141-DGC
)
MIDWEST INDUSTRIAL SUPPLY, )
INC., an Ohio corporation )
authorized to do business )
in Arizona, )
)
    Defendant/Counterclaimant. )
_____ )

Phoenix, Arizona
April 10, 2008
9:00 a.m.

C O N F I D E N T I A L
DEPOSITION OF CHAD FALKENBERG
SOILWORKS, LLC 30(b)(6)
(VOLUME II, Pages 230 - 356)

LEA, SHERMAN & HABESKI
Registered Professional Reporters
834 North First Avenue
Phoenix, Arizona 85003
Phone: 602.257.8514 - Fax: 602.257.8582
Reported by: Linda Blackmon, RPR/RMR
Certified Reporter
Certificate No. 50320

**EXHIBIT**

D

Lea, Sherman & Habeski

Dockets.Justia.com

1                          I N D E X
2
3
4     EXAMINATION                                    PAGE
5
6     BY MR. SKERIOTIS ...............................  234
7
8
9
10    EXHIBITS                DESCRIPTION            PAGE
11
12    38  E-mail dated 11-15-07 from Steve Gordner
          to Steve Hickman Re Dust Contral ...........  242
13
      39  Job Specification for Santiago Canyon College  247
14
      40  Dust Abatement Handbook - U.S. Marine Corps
15        Systems Command ...........................  251
16    41  Dust Control Field Handbook for U.S. Army
          Engineer Research and Development Center ....  257
17
      42  Durasoil Product Information Packet .........  263
18
      43  Durasoil Material Safety Data Sheet .........  288
19
      44  Soilworks GSA Price Schedule ...............  292
20
      45  Copy of Durasoil's Web Page from 10-18-04     300
21
      46  Polar Supply Material Estimate dated 5-18-07   306
22
      47  Polar Supply Material Estimate dated 5-31-07   307
23
      48  Copy of Durasoil's Web page from 2-19-05 ....  308
24
      49  Copy of Durasoil's Web page from 4-2-05  ....  310
25

1                I N D E X (Continued)

2

3

4    EXHIBITS              DESCRIPTION                    PAGE

5

6    50   Soil-Sement Patent No. 1,204,198 ............   322

7    51   Soil-Sement Patent No. 2,222,732 ............   322

8    52   Google search results for soil sement .......   324

9    53   Google search results for soil sement .......   337

10   54   HTML Code for Soiltac Home Page ............   339

11   55   HTML Code for Soiltac Home Page  ...........   345

12   56   HTML Code for Soilworks dot com ............   346

13   57   HTML Code for Soilworks dot com ............   347

14

15

16

17

18

19

20

21

22

23

24

25

1           DEPOSITION OF CHAD FALKENBERG,
2   taken at 9:00 a.m., on April 10, 2008, at the law
3   offices of Jones, Skelton & Hochuli, 2901 North Central
4   Avenue, Suite 800, Phoenix, Arizona, before LINDA
5   BLACKMON, RPR/RMR, a Certified Reporter in the State of
6   Arizona.
7
8   APPEARANCES:
9           For the Plaintiff/Counterdefendant:
                Kutak Rock, LLP
10              BY E. SCOTT DOSEK, ESQ.
                8601 North Scottsdale Road
11              Scottsdale, Arizona  85253-2742
12          For the Defendant/Counterclaimant:
                Brouse McDowell
13              BY JOHN M. SKERIOTIS, ESQ.
                388 South Main Street, Suite 500
14              Akron, Ohio  44311-4407
                330-535-5711
15
16          Also Present:
                Robert Vitale
17
18
19
20
21
22
23
24
25

1                    CHAD FALKENBERG,

2    called as a witness herein, having been previously

3    sworn, was examined and testified as follows:

4

5                    EXAMINATION (Continued)

6    BY MR. SKERIOTIS:

7      Q.    Mr. Falkenberg, today is day two continuing

8    the 30(b)(6) deposition.  I will let you know that you

9    are still under oath from yesterday; do you understand

10   that?

11     A.    I understand that.

12     Q.    And we will pick up and continue on with the

13   deposition.  I believe we spoke yesterday about

14   Durasoil and at times it can be a blend, correct?

15     A.    Correct.

16     Q.    And we also spoke about that sometimes you

17   will do the blending and sometimes the manufacturers

18   will do the blending, correct?

19     A.    No.

20     Q.    So we only stated that you do the

21   blending?

22     A.    We are the ones that would be doing the

23   blending.

24     Q.    And I think we established that sometimes you

25   blend and sometimes you don't, correct?

1    **A.**    That is correct.

2    **Q.**    Do you have any knowledge of how much

3    blending, how often that blending occurs?

4    **A.**    No.

5    **Q.**    But if my understanding is correct, you take a

6    look at the specification or requirements that are

7    called for and then determine if a blending needs to

8    take place; is that accurate?

9    **A.**    It depends on our client's needs and their soil

10   types and based on that we would determine what is most

11   appropriate.

12   **Q.**    With respect to the bids that we took a look

13   at in Alaska yesterday, do you recall those?

14   **A.**    Yes.

15   **Q.**    Because I can bring back the exhibits.

16   **A.**    If we need to.

17   **Q.**    But you recall looking at those yesterday?

18   **A.**    Yes.

19   **Q.**    Did you do any blending for those jobs in

20   Alaska for Polar Supply that you recall?

21   **A.**    I would have to check our records.

22   **Q.**    So it could be that you did do some blending

23   for that?

24   **A.**    It's very possible.

25   **Q.**    Do you recall if you blended anything for the

1   Kokhanok Airport in particular?

2       **A.**   I do not recall specifically.

3       **Q.**   How do you keep track of the blends and what

4   you ship?

5       **A.**   We normally have batch records of what has

6   gone out and that would normally indicate what went

7   into that.

8       **Q.**   So is that primarily how you track it, by the

9   batch number or the batch report?  Is that a good way

10  to say it?

11      **A.**   I think that's a good way to say how we track

12  things.

13      **Q.**   So you would go back, look inside some of your

14  documentation and take a look at the batch report, say

15  for example Kokhanok Airport, you'd pull that batch

16  report and it would tell you specifically what Durasoil

17  product and blend was sent there; is that correct?  Or

18  sent to Polar Supply; would that be a fair statement?

19      **A.**   I think we could track it by the batch number

20  to find out what was delivered to who.

21      **Q.**   What would be on this batch number?

22      **A.**   Just a number and it would reference what

23  materials are included in that.

24      **Q.**   You mean ingredients or just materials?

25      **A.**   For example, if we had a blend of materials we

1    would know from our raw materials that came in which

2    batches went into that, whether it was one batch or

3    whether it was two batches, we would know what we were

4    blending or if we weren't blending at all and it was

5    just a single raw material.

6        Q.    And you could tell all of that information

7    just from that batch sheet or batch number, correct?

8        A.    It correlates to what -- yes, we can track it.

9        Q.    In other words, if I were to ask you just for

10   the batch, what do I call it, batch report or batch

11   number?

12       A.    Batch number.

13       Q.    The batch number, what would be on that?

14   Would I be able to tell what you did or do I need some

15   other sheet, then, to supplement that?

16       A.    I would think you need something else to

17   supplement that.

18       Q.    And you have whatever it is that supplements

19   that?

20       A.    Yeah, it's my understanding that that is in

21   our bookkeeping system for tracking where we list the

22   batches, and then you would cross-reference that with

23   when those materials came in they were assigned

24   batches.

25       Q.    So again just to clear up my understanding, I

1  thought you had said that some blending occurs at the

2  manufacturer, chemical manufacturer?

3     **A.**    I don't believe I said that.

4     **Q.**    So I am wrong on that.  I just want to make

5  sure that the testimony is you do the blending and the

6  manufacturer does not do the blending, if any blending

7  occurs, correct?

8     **A.**    I think that's a good general statement.

9     **Q.**    Again, you don't know how much, you can't give

10  me an approximate percentage of how much blending

11  occurs, how often you blend?

12    **A.**    Not without looking at our data.

13    **Q.**    And you would do the blending, is that

14  accurate, you personally?

15    **A.**    Not necessarily.

16    **Q.**    You would direct someone, though, to do the

17  blending?

18    **A.**    More than likely.

19    **Q.**    But as you sit here today you don't know if

20  half the jobs you do for Durasoil are blended and half

21  are not?  You don't have any knowledge without looking?

22    **A.**    I really don't want to guess on it.  I think

23  it would be best if we look at the numbers.

24    **Q.**    Have you ever been to Alaska?

25    **A.**    Yeah.

1    Q.    It says Product Description and it says "blend

2    of isoalkanes that forms a reworkable binder in soil."

3    And then the next column has Vendor Information.  Do

4    you see the second one is Durasoil?

5    A.    I see it.

6    Q.    With your name?

7    A.    I see it.

8    Q.    And I believe that's your 1-800 number and

9    your E-mail; is that correct?

10   A.    Yes, it is.

11   Q.    Is Durasoil a blend of isoalkanes?

12   A.    What are "isoalkanes"?

13   Q.    My understanding of an isoalkane is you either

14   have it or you don't.  So if you don't know what it is,

15   just say you don't know.  As far as you know, you don't

16   know?

17   A.    I can't be sure.

18   Q.    So you don't know if you have an isoalkane or

19   not?

20   A.    Again, I am not a chemist and I am led to

21   believe that isoalkanes covers a very large spectrum of

22   chemistry and it needs to be much more well defined and

23   narrowed down so it doesn't cover the sky.

24   Q.    So is it fair to say as you sit here today you

25   don't know without a particular definition of what an

1    isoalkane is whether or not Durasoil has an isoalkane

2    or not?

3    **A.**    I am not sure.

4    **Q.**    Is Durasoil a blend of isoalkanes?

5    **A.**    I would have to give you the same answer.

6    **Q.**    Does Durasoil form a reworkable binder in

7    soil?

8    **A.**    The product is reworkable.

9    **Q.**    Does it form a reworkable binder in the soil?

10                **MR. DOSEK:**  Object to the form.

11   **A.**    I don't know what you mean by "reworkable

12   binder."

13   **Q.**  BY MR. SKERIOTIS:  Well, what I am trying to

14   get at is is this statement here on Page 4 a true

15   statement with respect to Durasoil?

16                **MR. DOSEK:**  Form and foundation.

17   **A.**    Let me be clear, I did not write this.

18   **Q.**  BY MR. SKERIOTIS:  I am not asking you if you

19   wrote it.  I understand you didn't write it.  I am

20   asking you, though, if the statement is correct?

21                **MR. DOSEK:**  Same objection.

22   **A.**    I don't know how they are defining the terms.

23   **Q.**  BY MR. SKERIOTIS:  Did you ever tell either

24   Mr. Rushing or Mr. Tingle or anyone else associated

25   with the U.S. Army Engineer Research and Development

1   Center that Durasoil is a blend of isoalkanes?

2   **A.**   Not to my knowledge.

3   **Q.**   Did you tell anyone, same individuals, the

4   same entity, that Durasoil is a reworkable binder?

5   **A.**   I can't say for sure.

6   **Q.**   So you may have?

7   **A.**   I may have.

8          (Deposition Exhibit No. 41 was marked.)

9   **Q.**   BY MR. SKERIOTIS:  Mr. Falkenberg, you have

10  just been handed what has been marked as Exhibit 41; do

11  you recognize that document?

12  **A.**   This looks more familiar.

13  **Q.**   What is it?

14  **A.**   I could be wrong but I think it's almost

15  identical to the last one you just provided me but for

16  a different division of the Military.

17  **Q.**   What division for the Military is this one

18  for?

19  **A.**   I am not sure.

20  **Q.**   Is this what it says it is, a dust control

21  field handbook?

22          **MR. DOSEK:**  Object to the form,

23  foundation.

24  **A.**   I don't know, I didn't write it.

25  **Q.**   BY MR. SKERIOTIS:  Well, you have said you

# Dust Control Field Handbook

## Standard Practices for Mitigating Dust on Helipads, Lines of Communication, Airfields, and Base Camps





U.S. Army Corps
of Engineers®
Engineer Research and
Development Center

ERDC/GSL SR-16-7
October 2016

U.S. Army Engineer Research and Development Center

ERDC/GSL SR-06-7
October 2006

# Dust Control Field Handbook

Standard Practices for Mitigating Dust
on Helipads, Lines of Communication,
Airfields, and Base Camps

John F. Rushing and Jeb S. Tingle

*Geotechnical and Structures Laboratory*
*U.S. Army Engineer Research and Development Center*
*3909 Halls Ferry Road*
*Vicksburg, MS 39180-6199*

Final report

Approved for public release; distribution is unlimited

Prepared for    U.S. Marine Corps Systems Command
                Quantico, VA 22134

ABSTRACT: The U.S. Army Engineer Research and Development Center has evaluated potential chemical dust palliatives for mitigating fugitive dust in military operations. The products were compared in laboratory testing and several field trials. The results of these efforts are compiled in this document to provide assistance for selecting and applying chemical dust palliatives for use on helipads, roads, airfields, and base camps. This document summarizes recommendations and conclusions derived from individual research projects. The information is intended to serve as a guide for acceptable dust mitigation. Variations of the procedures documented may be necessary to meet specific requirements.

DISCLAIMER: The contents of this report are not to be used for advertising, publication, or promotional purposes. Citation of trade names does not constitute an official endorsement or approval of the use of such commercial products. All product names and trademarks cited are the property of their respective owners. The findings of this report are not to be construed as an official Department of the Army position unless so designated by other authorized documents.

DESTROY THIS REPORT WHEN NO LONGER NEEDED. DO NOT RETURN IT TO THE ORIGINATOR.

# CONTENTS

Preface ................................................................................................ v
Procedure for Using Dust Control Field Handbook .................................... vi

**Recommended Applications**

Recommended Product Applications – Table 1 ....................................... 1

**Dust Palliatives**

Detailed Dust Palliative Descriptions ..................................................... 2
    Chloride Salts .................................................................................. 2
    Lignosulfonates .............................................................................. 2
    Petroleum Products ........................................................................ 3
    Polyacrylamides ............................................................................ 4
    Polymer Emulsions ........................................................................ 5
    Polysaccharides ............................................................................. 6
    Powdered Polymer ......................................................................... 7
    Synthetic Fluids ............................................................................. 8
     ..................................................................................................... 9

**Vendors**

Product and Vendor Information – Table 2 ........................................... 10

**Application Techniques**

Application Techniques ........................................................................ 11
    Soil Type ....................................................................................... 11
    Intended Use .................................................................................. 11
    Application Rates ........................................................................... 11
    Dilution Ratios ............................................................................... 12
    Topical Method .............................................................................. 12

iii

**Table of Contents**

Admix Method.................................................................. 13

**Equipment**      Distribution Equipment and Vendor Information – Table 3 ............ 14

**Helipads**       Mitigating Dust on Helipads – CH-53 and CH-46................... 15
                   Mitigating Dust on Helipads – UH-1 and AH-1 .................. 16
                   Alternative Method for Helipads – CH-53 and CH-46 ............ 18
                   Alternative Method for Helipads – UH-1 and AH-1 .............. 19

**Roads**          Mitigating Dust on Lines-of-Communication
                     and Maneuver Supply Routes .................................. 21
                   Alternative Method for Lines-of-Communication ............... 24

**Base Camps**     Mitigating Dust in Base Camps and Non-Traffic Areas .......... 26

**Easy Lawn®**     Easy Lawn® Hydroseeder Operation............................. 27
**Hydroseeder**

**Finn®**          Finn® Hydroseeder Operation.................................. 37
**Hydroseeder**

**Tips**           Tips for Selecting Dust Palliatives .......................... 52
                   Tips for Selecting Application Equipment ..................... 54
                   Tips for Applying Dust Palliatives............................ 55

**References**     Literature Citations.......................................... 62

                   Report Documentation Page

iv

# PREFACE

This handbook was developed as part of a dust control program funded by the U.S. Marine Corps Systems Command, Quantico, VA. The information presented herein is for use in selecting, procuring, and applying dust palliatives for helipads, lines of communication, airfields, and base camps. Recommendations are based upon field testing conducted at Yuma, AZ, Douglas, AZ, and Fort Leonard Wood, MO, during the period 2003 to 2005.

The report was prepared by John F. Rushing and Jeb S. Tingle of the Airfields and Pavements Branch (APB) of the U.S. Army Engineer Research and Development Center (ERDC), Vicksburg, MS.

Work was conducted under the general supervision of Don R. Alexander, Chief, APB; Dr. Albert J. Bush III, Chief, Engineering Systems and Materials Division; Dr. William P. Grogan, Deputy Director, Geotechnical and Structures Laboratory (GSL); and Dr. David W. Pittman, Director, GSL.

COL Richard B. Jenkins was Commander and Executive Director of ERDC. Dr. James R. Houston was Director.

v

# PROCEDURE FOR USING DUST CONTROL FIELD HANDBOOK

(1) Use Table 1 (at tab *Recommended Applications*) to select recommended product category for military applications.

(2) Review **Detailed Dust Palliative Descriptions** (tab *Dust Palliatives*).

(3) Select product from recommended product category (Table 2, tab *Vendors*).

(4) Review recommended product application equipment (Table 3 at tab *Equipment* and tabs *Easy Lawn® Hydroseeder* and *Finn® Hydroseeder*).

(5) Review product application guidance (tabs *Application Techniques* and *Helipads, Roads,* and *Base Camps*).

# Table 1
## Recommended Product Applications

| Application | Primary Solution | | | | Secondary Solution(s) | | | |
|---|---|---|---|---|---|---|---|---|
| | Product Category | Application Rate | Dilution Ratio | Application Type | Product Category | Application Rate | Dilution Ratio | Application Type |
| Airfields | Synthetic fluid | 0.4 gsy | n/a | Topical | Polymer emulsion | 1.2 gsy | 3:1 | Admix[#] |
| Lines of Communication | Polymer emulsion | 0.8 gsy | 3:1 | Admix | Synthetic fluid | 0.6 gsy | n/a | Topical |
| | | | | | Chloride salt* | 0.8 gsy | n/a | Topical |
| Helipads | Synthetic fluid | 0.4 gsy | n/a | Topical | Polymer emulsion | 1.2 gsy | 3:1 | Topical |
| | | | | | Powdered polymer | 1.2 gsy | 1.3 lb/gal | Topical |
| Base Camps | Synthetic fluid | 0.4 gsy | n/a | Topical | Polymer emulsion | 0.6 gsy | 3:1 | Topical |
| | | | | | Powdered polymer | 0.6 gsy | 1.3 lb/gal | Topical |
| | | | | | Polysaccharide | 0.6 gsy | 3:1 | Topical |

* Should not be used in excessively dry or excessively wet conditions.
# Depth of mixing should be minimum 4 in.

Recommended
Applications

1

# Synthetic Fluids

Synthetic organic fluids are applied to a soil "as received." These fluids are not miscible with water and therefore are unable to be diluted. They consist of isoalkanes that do not dry or cure with time. The reworkable binder is ready for immediate use upon application and maintains effectiveness over extended periods of time.

## Synthetic Fluid

| Product Description | Vendor Information | Effective Uses | Limitations | Shipping |
|---|---|---|---|---|
| Blend of isoalkanes that forms a reworkable binder in soil. Will not mix with water. Effective for long-term use. | *Envirokleen*<br>Midwest Industrial Supply<br>Todd Hawkins<br>1-800-321-0699<br>todd@midwestind.com | Helipads<br><br>Lines of communication<br><br>Base camps | More expensive than most products | 275-gal containers (2,000 lb) |
| | *Durasoil*<br>Soilworks, Inc.<br>Chad Falkenberg<br>1-800-545-5420<br>chad@soilworks.com | Airfields | . | |

9

**Table 2**

Product and Vendor Information

| Product Category | Dust Palliative | Vendor | POC | Telephone | Email |
|---|---|---|---|---|---|
| Chloride salt | Dust Fyghter | Midwest Industrial Supply | Todd Hawkins | 1-800-321-0699 | todd@midwestind.com |
| Lignosulfonate | Road Oyl | Midwest Industrial Supply | Todd Hawkins | 1-800-321-0699 | todd@midwestind.com |
| | Dustac | Dust Pro | Lou Snow | (602) 251-3878 | nodust@dustpro.com |
| Petroleum product | CSS Asphalt Emulsion | Western Emulsions | Sales Representative | (520) 662-7203 | western@westernemulsions.com |
| Polyacrylamide | PolyPlus | Polymers Plus | Jean Whitish | (608) 836-0805 | jwhitish@polymersplusllc.com |
| Polymer emulsion | Envirotac II | Environmental Products and Applications | John Vermillion | (760) 779-1814 | dustcontrolman@aol.com |
| | Soiltac | Soilworks | Chad Falkenberg | 1-800-545-5420 | chad@soilworks.com |
| | Soil-Sement | Midwest Industrial Supply | Todd Hawkins | 1-800-321-0699 | todd@midwestind.com |
| | DC 100 | Environmental and Fire Technology | Cal Blystra | (616) 784-0770 | c.blystra@worldnet.att.net |
| | Liquid Dust Control | Enviroseal Corporation | Andy Stevens | (772) 335-8225 | andy@enviroseal.com |
| Polysaccharide | Surtac | Soilworks | Chad Falkenberg | 1-800-545-5420 | chad@soilworks.com |
| Powdered polymer | Powdered Surtac | Soilworks | Chad Falkenberg | 1-800-545-5420 | chad@soilworks.com |
| | Durasoil | Soilworks | Chad Falkenberg | 1-800-545-5420 | chad@soilworks.com |
| Synthetic fluid | Envirokleen | Midwest Industrial Supply | Todd Hawkins | 1-800-321-0699 | todd@midwestind.com |
| | EK-35 | Midwest Industrial Supply | Todd Hawkins | 1-800-321-0699 | todd@midwestind.com |

Vendors

1  E. SCOTT DOSEK #012114
   JOHN P. PASSARELLI #16018
2  KUTAK ROCK LLP
   Suite 300
3  8601 North Scottsdale Road
   Scottsdale, AZ 85253-2742
4  (480) 429-5000
   Facsimile: (480) 429-5001
5

6  *Attorneys for Plaintiff*
   *SOILWORKS, LLC, an Arizona corporation*

7

8                 UNITED STATES DISTRICT COURT

9              IN AND FOR THE DISTRICT OF ARIZONA

10

11  SOILWORKS, LLC, an Arizona            NO.: 2:06-CV-2141-DGC
    corporation,
12                                        SOILWORKS, LLC'S RESPONSES TO
          Plaintiff / Counterdefendant /  MIDWEST INDUSTRIAL SUPPLY,
13        Counterclaimant,                INC.'S FIRST REQUEST FOR
                                          PRODUCTION OF DOCUMENTS
14  v.                                    AND THINGS

15  MIDWEST INDUSTRIAL SUPPLY, INC.,
    an Ohio corporation authorized to do
16  business in Arizona,                  EXHIBIT ___ DATE 4-8-08

17        Defendant / Counterclaimant /   JENNIFER HANSSEN, RPR
          Counterdefendant.
18                                        CERTIFIED REPORTER #50165
                                          DEPO OF D. Falkenberg

19

20        Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff,

21  Soilworks, LLC ("Soilworks") hereby responds to Defendant Midwest Industrial Supply,

22  Inc.'s ("Midwest") First Request for Production of Documents and Things, dated May 22,

23  2007.

                            GENERAL STATEMENTS

24        1.    Soilworks incorporates by reference each and every general objection set forth

25  below into each and every specific response.  From time to time a specific response may

26  repeat a general objection for emphasis or some other reason.  The failure to include any

27  general objection in any specific response shall not be interpreted as a waiver of any general

28

4848-8655-9489.1

1    objection to that response.

2       2.    Soilworks' responses to Defendant's Interrogatories and Document Requests
3    are made to the best of Soilworks' present knowledge, information and belief.  Soilworks
4    reserves the right to supplement and amend these responses should future investigation
5    indicate that such supplementation or amendment is necessary. The following responses and
6    objections are given without prejudice to Soilworks' right to revise its responses based upon
7    any subsequent investigation.

8       3.    By responding to Midwest's Interrogatories and Document Requests,
9    Soilworks does not waive any objection that may be applicable to: (a) the use, for any
10   purpose, by Midwest of any information or documents given in this response to Midwest's
11   Interrogatories and Document Requests; or (b) the admissibility, relevancy or materiality of
12   any of the information or documents at issue in this case.

13                              **GENERAL OBJECTIONS**

14      1.    Soilworks objects to the noticed date for the production.  Due to the length and
15   number of discovery requests and the volume of requested materials, Soilworks cannot
16   possibly produce everything within 30 days.  Soilworks will produce responsive materials on
17   a rolling basis.

18      2.    Soilworks objects to each and every Interrogatory and Document Request to
19   the extent that it is inconsistent or seeks to impose duties or obligations on Soilworks beyond
20   those imposed by the Federal Rules of Civil Procedure, the Local Rules for this District, or
21   the Individual Rules of the Judge hearing this matter.

22      3.    Soilworks objects to each and every Interrogatory and Document Request
23   insofar it is vague, ambiguous, indefinite, overly broad, unduly burdensome, duplicative,
24   cumulative, unintelligible or otherwise unclear as to the precise information sought.
25   Soilworks objects on this basis particularly when the Interrogatory or Document Request is
26   unduly burdensome in view of the cost necessary to investigate weighed against Midwest's
27   need for the information.

28      4.    Soilworks objects to each and every Interrogatory and Document Request to

the extent that it seeks information that is neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

5. Soilworks objects to each and every Interrogatory and Document Request as overly broad and unduly burdensome to the extent that it seeks information about Soilworks products that are not accused of infringement. Soilworks will only provide materials and information on its products and services that are actually accused of infringing the two Midwest Patents identified in the Counterclaims.

6. Soilworks objects to each and every Interrogatory and Document Request as overbroad in geographic scope to the extent that it seeks discovery on activities outside the United States. Unless otherwise stated, Soilworks will interpret each Interrogatory and Document Request to be limited to activities in the United States.

7. Soilworks objects to each and every Interrogatory and Document Request to the extent that it seeks information or documents protected by the attorney-client privilege, work product doctrine, joint-defense privilege, common-interest privilege, or any other applicable law, privilege, protection, or doctrine (collectively "privileged information"). The production of any privileged information or document by Soilworks (beyond production of opinions relied upon) is unintentional, and Soilworks does not intend to waive any applicable objection or privilege as a result of such production. The scope of any waiver of privilege related to production of opinions of counsel shall be as narrow as permitted by law.

8. Soilworks objects to each and every Interrogatory and Document Request to the extent it requires Soilworks to search for and reveal privileged information from its and its attorneys' litigation files pertaining to this lawsuit. Soilworks will not schedule on its privilege log any attorney-client privileged materials or materials protected by the attorney work product doctrine created during the course of any ongoing Soilworks/Midwest litigation.

9. Soilworks objects to each and every Interrogatory and Document Request as unduly burdensome and oppressive to the extent that it purports to require Soilworks to search its facilities and inquire of Soilworks' employees other than those facilities and

employees that would reasonably be expected to have responsive information. Soilworks' responses are based upon (1) a reasonable search, given the time allotted to Soilworks to respond to the interrogatories, of facilities and files that could reasonably be expected to contain responsive information, and (2) inquiries of Soilworks employees and/or representatives who could reasonably be expected to possess responsive information.

10.    Soilworks objects to each and every Interrogatory and Document Request to the extent that it seeks information or documents already in the possession of Midwest or in the public domain and as readily available to Midwest as they are to Soilworks. Accordingly, information or documents that are otherwise responsive to these Interrogatories and Document Requests, but that are already in the possession of Midwest, or are equally available or more available to Midwest, will not be produced in response to these Interrogatories and Document Requests.

11.    Soilworks objects to each and every Interrogatory and Document Request to the extent it calls for information or documents not within the possession, custody or control of Soilworks. The responses given herein are based upon information and documents within Soilworks' possession, custody or control.

12.    Soilworks objects to each and every Interrogatory and Document Request as overbroad and unduly burdensome to the extent that it is unlimited in temporal scope or otherwise not limited to a time frame relevant to this litigation and the patent-in-suit.

13.    Soilworks objects to each and every Interrogatory and Document Request to the extent that it calls for information or documents which are confidential or proprietary to, or the trade secrets of, a third party. Soilworks will not produce such documents until it has notified the relevant third parties of Midwest's requests and, to the extent necessary, obtained their consent to such production.

14.    Soilworks objects to each and every Interrogatory and Document Request to the extent it seeks confidential, trade secret, or proprietary business, technical, marketing, or financial information. Soilworks will not provide such information until a suitable protective order has been agreed upon by the parties and entered by the Court.

15.     Soilworks objects to each and every Interrogatory and Document Request to the extent that it seeks information or documents regarding Soilworks' proprietary development activities for products not yet manufactured or available to the public, because the relevance, if any, of such highly confidential information is substantially outweighed by the prejudice that Soilworks would suffer if the information were disclosed or made available to Soilworks' competitors.

16.     Soilworks objects to each and every Interrogatory and Document Request to the extent that it seeks discovery that is the province of expert testimony, prior to the period that expert disclosures and discovery are scheduled to occur.

17.     Soilworks objects that the Interrogatories and Document Requests are premature. This case is still in its early stages. Soilworks is still investigating its claims, and needs critical discovery from Midwest. Midwest has yet to identify its claim construction position, or state in detail the basis for its infringement contentions.

18.     The information set forth herein is provided without waiving (1) the right to object to the use of such information for any purpose, if a basis for objecting exists; (2) the right to object to any request involving or relating to the subject matter of information contained in this disclosure statement; or (3) the right to revise, correct, supplement or clarify any of the information set forth below.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Soilworks objects to the definitions of Midwest as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The terms are defined so broadly as to render many of the Interrogatories and Document Requests incomprehensible.

2.     Soilworks objects to the definitions of "document" and "documents" as overbroad, vague, and ambiguous. Soilworks will construe both terms consistently with the Federal and Local Rules,

3.     Soilworks objects to Midwest's instructions as overly broad. Except as set forth below, Soilworks will not separately, specifically identify the document,

communication or item for which it claims privilege. Rather, when necessary, Soilworks will identify its privileged documents in the form of a privilege log. However, Soilworks will not disclose, produce or include on a privilege log any documents or things created or dated after the filing of the Complaint in this action.

SPECIFIC RESPONSES

1. All documents, things, and electronically stored information that Plaintiff reviewed or relied upon in answering Defendant's First Set of Interrogatories to Plaintiff Soilworks LLC.

RESPONSE: Objection. This interrogatory is premature. This case is still in its early stages. Soilworks is still investigating its claims, and needs critical discovery from Midwest. Midwest has yet to identify its claim construction position, or state in detail the basis for its infringement contentions. Furthermore, some documents reviewed or relied upon to answer Defendant's interrogatories may be subject to the attorney client and/or work product privilege. Without waiving the foregoing objections, once the Court has entered a Protective Order which is mutually agreeable to all parties, Soilworks will make responsive documents available. Further, without waiving the foregoing objections, on the basis of the allegations made to date, Soilworks produces herewith its preliminary claims chart. It is important to note that the claims chart is preliminary only and was produced in the absence of Midwest's claim construction / interpretation position and claims chart regarding its patent(s).

2. All documents, things and electronically stored information identified by Plaintiff in §B of its Rule 26 disclosures, (entitled "<u>Documents, Data Compilations and Tangible Things,</u>"). Nos. 1-7.

RESPONSE: Objection. This interrogatory is premature. This case is still in its early stages. Soilworks is still investigating its claims, and needs critical discovery from Midwest. Midwest has yet to identify its claim construction position, or state in detail the basis for its infringement contentions. Furthermore, this request is overly intrusive, broad and unduly burdensome. Without waiving the foregoing objections, once the

KUTAK ROCK LLP

By _____ /s/ _____
E. Scott Dosek
John P. Passarelli
Suite 300
8601 North Scottsdale road
Scottsdale, AZ 85253-2742

*Attorneys for Plaintiff*

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 23rd, 2007, the foregoing Soilworks, LLC's Responses to Midwest Industrial Supply, Inc.'s First Request for Production of Documents and Things was served electronically upon the following:

JOHN M. SKERIOTIS  #0069263 (OH)
JILL A. GRINHAM  #075560 (OH)
BROUSE MCDOWELL
388 S. Main Street
Suite 500
Akron, OH 44311-4407

Jill Anne Grinham jgrinham@brouse.com
John M Skeriotis jms@brouse.com

*Attorneys for Defendant Midwest Industrial Supply, Inc.*


_____
/s/
Amy S. Fletcher

| Patent 7,081,270 | Soilworks' Durasoil® |
|---|---|
| 1. A method for providing at least one of stabilization and dust control to a particulate surface soil, the method comprising: applying to and allowing to penetrate the surface soil a composition consisting essentially of: (a) a binder consisting essentially of a carboxylic acid, an ester, or a thermoplastic polyolefin; and, (b) a synthetic isoalkane. | Durasoil does not provide stabilization through the use of a binder (like an adhesive). Durasoil is a compaction agent and helps achieve higher soil/aggregate densities and therefore a more stabilized soil. Durasoil provides dust control. Durasoil does not have any carboxylic acid. Durasoil contains esters. Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). |
| 2. The method of claim 1, where the composition is devoid of electrolytes. | Unknown. |
| 3. The method of claim 1, where said composition is applied neat to the surface soil. | Durasoil is applied neat to the surface soil. |
| 4. The method of claim 1, where the binder is a thermoplastic polyolefin. | Durasoil does not contain thermoplastic polyolefins (this term needs better defining). |
| 5. The method of claim 4, where the composition comprises from 2 to 90% by weight of the thermoplastic polyolefin. | Durasoil does not contain thermoplastic polyolefins (this term needs better defining). |
| 6. The method of claim 1, where the binder is a carboxylic acid. | Durasoil does not contain carboxylic acids. |
| 7. The method of claim 6, where the carboxylic acid is a fatty acid. | Durasoil does not contain carboxylic acids or fatty acids. |
| 8. The method of claim 6, where the composition comprises from 5 to 70% by weight of the carboxylic acid. | Durasoil does not contain carboxylic acids. |
| 9. A method for providing at least one of stabilization and dust control to a particulate surface soil, the method comprising the step of: applying to and allowing to penetrate the surface soil a composition consisting essentially of: (a) a binder consisting essentially of a carboxylic acid, an ester, or a thermoplastic polyolefin; (b) a synthetic isoalkane; and, (c) an emulsifier. | Durasoil does not provide stabilization through the use of a binder (like an adhesive). Durasoil is a compaction agent and helps achieve higher soil/aggregate densities and therefore a more stabilized soil. Durasoil provides dust control. Durasoil does not contain any carboxylic acids. Durasoil contains esters. Durasoil does not contain thermoplastic polyolefins (this term needs better defining). Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). Durasoil does not contain any emulsifiers. |
| 10. A process for at least one of reducing erosion and controlling dust in surface soil, the process comprising: (a) applying to said surface soil a composition comprising two organic materials and allowing the composition to penetrate and weight discrete portions of the surface soil, where the composition consists essentially of (a) a binder consisting essentially of a carboxylic acid, an ester, or a thermoplastic polyolefin and (b) a plasticizer consisting essentially of a synthetic isoalkane; and allowing at least one material in the composition to form a binder in which portions of the surface soil are associated, so as to provide a treated surface soil. | Durasoil does not reduce erosion. Durasoil provides dust control in surface soil. Durasoil is applied to the surface soil. Durasoil is not comprised of two organic materials. Durasoil's composition will penetrate and weight discrete portions of the surface soil. Durasoil does not have any carboxylic acid. Durasoil contains esters. Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). |
| 11. The process of claim 10, where said surface soil comprises at least one of dirt, slag, sand, gravel, mineral and aggregate. | Durasoil can be used with any dirt, slag, sand, gravel, mineral and aggregate. |
| 12. The process of claim 10, where said weighting is achieved by at least one of adsorption and absorption of said blend to said discrete portions of said surface soil. | Durasoil weighting is achieved by adsorption and/or absorption of the surface soil. Durasoil is not a blend. |
| 13. The process of claim 10, where said surface soil exhibits at least a 100% increase in stiffness and Young's modulus after being treated. | Unknown |
| 14. The process of claim 10, where the composition comprises 2 to 90% by weight of the polyolefin. | Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). Durasoil is not a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). |
| 15. A process for at least one of reducing erosion and controlling dust in surface soil, the process comprising: (a) applying to said surface soil a composition and allowing the composition to penetrate and weight discrete portions of the surface soil, where the composition consists essentially of (a) a carboxylic acid, an ester, or a thermoplastic polyolefin (b) a plasticizer consisting essentially of a synthetic isoalkane and (c) a long chain carboxylic acid or ester; and, (b) allowing at least one material in the composition to form a binder in which portions of the surface soil are associated, so as to provide a treated surface soil. | Durasoil does not reduce erosion. Durasoil provides dust control in surface soil. Durasoil is applied to the surface soil. Durasoil's composition will penetrate and weight discrete portions of the surface soil. Durasoil does not have any carboxylic acid. Durasoil contains esters. Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). Durasoil's composition does not contain any binders. |
| 16. The process of claim 15, where the composition comprises from 5 to 70% by weight of the carboxylic acid or ester. | Durasoil does not contain any carboxylic acid. Durasoil contains esters. |

| Patent 7,074,266 | Soilworks' Durasoil® |
|---|---|
| 1. A compound for chemical soil stabilization and dust control, the compound consisting essentially of: a binder consisting essentially of a carboxylic acid, an ester, or a thermoplastic polyolefin; and, a synthetic isoalkane. | Durasoil does not provide stabilization through the use of a binder (like an adhesive). Durasoil is a compaction agent and helps achieve higher soil/aggregate densities and therefore a more stabilized soil. Durasoil provides dust control. Durasoil does not contain any carboxylic acid. Durasoil contains esters. Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). |
| 2. The compound of claim 1, wherein the binder is a carboxylic acid. | Durasoil does not contain any binders or any carboxylic acid |
| 3. The compound of claim 2, wherein the carboxylic acid is a fatty acid. | Durasoil does not contain any carboxylic acid or fatty acid. |
| 4. The compound of claim 2, wherein the compound is devoid of electrolytes. | Unknown. |
| 5. The compound of claim 2 wherein the compound comprises from 1 to 99% by weight of the carboxylic acid. | Durasoil does not contain any carboxylic acid |
| 6. The compound of claim 2, wherein the compound further comprises an emulsifier. | Durasoil does not contain any emulsifiers. |
| 7. The compound of claim 2, wherein the synthetic isoalkane is selected from a group comprising: synthetic or semisynthetic hydrocarbons. | Durasoil does not contain a synthetic isoalkane because it is not manufactured molecule by molecule (like a group 4 PAO base oil). The terms synthetic or semisynthetic hydrocarbons needs better defining. If synthetic is defined as molecules that are manufactured/built molecule by molecule (like a group 4 PAO base oil) rather than being broken down (like group 1,2 or 3 base oils) from larger molecules, then Durasoil is not synthetic. If semisynthetic is defined as molecules created from larger molecules, then Durasoil is semisynthetic. |
| 8. The compound of claim 7 wherein the synthetic hydrocarbons are selected from a group produced from hydrotreating, hydrocracking, or hydroisomerization. | Durasoil is produced from hydrotreating, hydrocracking or hydroisomerization (which defines group 1,2 and 3 base oils). |
| 9. The compound of claim 7, wherein the synthetic isoalkane is selected from chemical group comprising: isoalkanes or branched iso-paraffins. | Isoalkanes needs to be better defined (unknown). Durasoil is based on paraffin. The term branched iso-paraffins need to be better defined. |
| 10. The compound of claim 1, wherein the binder is a thermoplastic polyolefin. | Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). |
| 11. The compound of claim 10, wherein the compound comprises from 1 to 99% by weight of the thermoplastic polyolefin. | Durasoil does not contain any thermoplastic polyolefins (this term needs better defining). |
| 12. The compound of claim 1 wherein the isoalkane has a viscosity of at least about 19 centistokes @20.degree. C. and a flame point greater than 130.degree. C. | Isoalkanes needs to be better defined (unknown). Durasoil's viscosity is at least about 19 centistokes @20 degree C and has a flame point greater than 130 degree C. |
| 13. The compound of claim 12 wherein the synthetic isoalkane is selected from chemical group comprising: isoalkanes or branched iso-paraffins. | Isoalkanes needs to be better defined (unknown). Durasoil is based on paraffin. The term branched iso-paraffins need to be better defined. |
| 14. The compound of claim 1, wherein the compound further comprises an emulsifier. | Durasoil does not contain any emulsifiers. |
| 15. The compound of claim 14, wherein the synthetic isoalkane as a flash point of 177.degree. C. | Durasoil does not have a flash point of 177 degree C (+/- 20 C) |

```
 1  STATE OF ARIZONA        )
                            )  ss.
 2  COUNTY OF MARICOPA      )

 3

 4          BE IT KNOWN that the foregoing confidential

 5  deposition was taken before me, JENNIFER HANSSEN, a

 6  Certified Reporter in the State of Arizona; that the

 7  witness before testifying was duly sworn by me to

 8  testify to the whole truth; that the questions

 9  propounded to the witness and the answers of the witness

10  thereto were taken down by me in shorthand and

11  thereafter reduced to print by computer-aided

12  transcription under my direction; that the confidential

13  deposition was submitted to the witness to read and

14  sign; that the foregoing 180 pages are a true and

15  correct transcript of all proceedings had upon the

16  taking of said confidential deposition, all done to the

17  best of my skill and ability.

18          I FURTHER CERTIFY that I am in no way related

19  to any of the parties hereto nor am I in any way

20  interested in the outcome hereof.

21          DATED at Phoenix, Arizona, this 9th day of

22  April, 2008.

23                              _____
                                    Certified Reporter
24                                  Certificate No. 50165

25
```