Craig A. Marvinney, 0004951 (OH)
John M. Skeriotis, 0069263 (OH)
Jill A. Bautista, 0075560 (OH)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: 330-535-5711
Facsimile: 330-253-8601
Email: cmarvinney@brouse.com,
  jskeriotis@brouse.com,
  jbautista@brouse.com
*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant
Midwest Industrial Supply, Inc.*

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SOILWORKS, LLC, an Arizona corporation,<br><br>   Plaintiff / Counterdefendant / Counterclaimant,<br><br>v.<br><br>MIDWEST INDUSTRIAL SUPPLY, INC., an Ohio corporation authorized to do business in Arizona,<br><br>   Defendant / Counterclaimant / Counterdefendant. | NO.: 2:06-CV-2141-DGC<br><br>**MIDWEST INDUSTRIAL SUPPLY, INC.'S REPLY TO SOILWORKS, LLC'S OPPOSITION** |

A. **Soilworks' Use of Midwest's Trademark in Its Metatags Establishes Trademark Infringement As a Matter of Law.**

In Soilworks, LLC's Opposition to Midwest Industrial Supply's Motion for Partial Summary Judgment ("Opposition"), Soilworks concedes that it has used Midwest's Soil-Sement® trademark in Soilworks' metatags for its website and its keyword advertising on the internet search engine, Google™. See Soilworks' Responsive Statement of Facts ("RSOF") at ¶¶ 38-42. Soilworks attempts to survive summary judgment on this claim by asserting a legal argument that Midwest's argument on trademark infringement should fail because (1) Midwest supposedly applied the wrong test for trademark infringement and (2) Midwest cannot prove trademark infringement under the appropriate test.[1] In arguing that Midwest uses the wrong test, Soilworks mischaracterizes the Ninth Circuit's footnote in *Brookfield Communications, Inc. v. Westcoast Entertainment, Corp.*, 174 F.3d 1036,1062 (9th Cir. 1999), as stating that the *Sleekcraft* factors do not apply in the metatag context. The footnote actually states that the Court was not going to attempt to fit the doctrine of "initial interest confusion" into one of the *Sleekcraft* factors. *Id.*

Soilworks is correct in one respect: the appropriate test for trademark infringement in the area of internet metatags only requires the plaintiff to prove the defendant's use of its trademark as a metatag, a much less stringent test than the test for likelihood of confusion. In its summary judgment motion and statement of facts, Midwest not only proved that Soilworks used its registered trademark as a metatag for Soilworks' website as well as its keyword advertising on Google™, but Midwest also proved that Soilworks' use met the more

---

[1] Soilworks also argues that Midwest uses Soilworks' marks in its metatags. This is a red-herring. Midwest asserts that this subject is not part of this action and has no probative bearing on whether Soilworks is liable for trademark infringement. Soilworks should have asserted a cause of action against Midwest if it has evidence regarding this allegation.

stringent test of likelihood of confusion. See Midwest's Statement of Facts ("SOF") at ¶ 38-42. Soilworks has put forth no evidence to the contrary. Therefore, Midwest is entitled to summary judgment on its trademark infringement claim.

**1. Soilworks Admits Using Midwest's Soil-Sement® Mark as a Metatag, which Satisfies Trademark Infringement in the First Instance.**

According to the Ninth Circuit Court of Appeals, the mere use of another party's mark in the metatags for a website constitutes trademark infringement. *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003) ("Because Garcia admits to using Horphag's Pycnogenol trademark and *specifically admits* to using the Pycnogenol mark in the *meta-tags* for his websites, his use satisfies the terms of trademark infringement in the first instance." (Emphasis added)); *see also, Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004). The undisputed evidence demonstrates that Soilworks has admitted using Midwest's Soil-Sement® mark in the metatags for its websites, www.soiltac.com and www.soilworks.com and paid the search engine Google™ to use Midwest's Soil-Sement® mark as a "keyword." Midwest's SOF at ¶¶38-43 and Soilworks' RSOF at ¶¶38-43 ("Undisputed"). Based upon the above, Soilworks is liable for trademark infringement in the first instance.

**2. Soilworks' Intentional Use of Midwest's Soil-Sement® Mark Creates a Likelihood of Confusion.**

In *Brookfield*, the Ninth Circuit held that the eight likelihood of confusion factors apply to the use of trademarks in metatags as they do in the analysis of domain names. 174 F.3d at 1062; *see also, Storus Corp v. Aroa Marketing Inc.*, 2008 WL 449835 (N.D.Cal. 2008) (applying the same confusion factors for Google™ Adwords). As such, the controlling

troika are (1) similarity of the marks, (2) relatedness of the goods, and (3) simultaneous use of the Web as a marketing channel demonstrates a likelihood of confusion unless the other factors are shown to weigh strongly against such a likelihood. *See id.; Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002); *Perfumebay.com v. eBay, Inc.*, 506 F.3d 1165, 1174-75 (Fed. Cir. 2007).

With respect to the first factor, the undisputed evidence in this case demonstrates that Soilworks uses Midwest's identical Soil-Sement® mark as a metatag and a keyword. To the extent that Soilworks contends that the mark it actually uses in its metatags are "sement soil" and "soil" and "sement" in a non-conjoined manner, this argument is misplaced and of no relevance because:

> "[a] metatag is 'buried code' that is not visible to Internet users, which is referenced by domain name search engines or directories to determine whether a website corresponds to descriptive keywords entered into the search engine by a computer user. Those websites with metatags corresponding to the requested keywords appear on the computer screen as the search engine's response." *Brookfield*, 174 F.3d at 1061-62 n. 23.

Thus, when a third party searches for the terms "soil sement" on the search engine Google™, whether conjoined or not, the search engines will find Soilworks' Soiltac website; thereby causing initial interest confusion.

Most importantly, Soilworks admits that the reason for using the terms "soil" and "sement" is to cause confusion by having consumers who are looking for Soil-Sement® find Soilworks' website for their Soiltac product. Midwest's SOF at ¶ 39 and Soilworks' R SOF at ¶ 39 ("Undisputed").

> "[W]hen the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference

3

of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit."

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir.1963) *citing, American Chicle Co. v. Topps Chewing Gum*, 208 F.2d 560, 562 (2d Cir. 1953); *Miles Shoes, Inc. v. R. H. Macy & Co.*, 199 F.2d 602, 603 (2d Cir. 1952); *National Van Lines v. Dean*, 237 F.2d 688, 692 (9th Cir. 1956).

"As was said in the last cited case: 'If such an intent is shown, it raises a presumption that deception and confusion resulted.'" *Fleischmann Distilling Corp.*, 314 F.2d at 158. In fact, non-descriptive federally registered trademarks[2] that are used by competitors with directly competing goods in their metatags, whether conjoined or not, constitutes trademark infringement.[3]

With respect to the second factor, Soilworks does not dispute that its goods and Midwest's goods are related and compete with one another in the marketplace. Midwest's SOF at ¶¶ 28-29 and Soilworks RSOF at ¶¶ 28-29. With respect to the third factor, it is also undisputed that Soilworks and Midwest both utilize the Internet to market their products. Midwest's SOF at ¶¶ 30-31 and Soilworks' RSOF at ¶¶ 30-31. Finally, Soilworks has failed to argue that any of the remaining five *Sleekcraft* factors weigh in its favor and against a finding of a likelihood of confusion. Therefore, Midwest has demonstrated that Soilworks' use of Soil-Sement® creates a likelihood of confusion.

---

[2] Midwest's federally registered trademark, Soil-Sement, is incontestable according to 15 U.S.C. §1065, which means, *inter alia,* that the Soil-Sement mark is not descriptive and presumed strong. *See, Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985).
[3] *See, e.g., In re General Tire & Rubber Company*, 1982 WL 52017 (TTAB 1982) (FORMULA PLUS and PLUS FORMULA held confusingly similar); *In re Nationwide Industries, Inc.*, 1988 WL 252499 (TTAB 1988) (likelihood of confusion between BUST RUST penetrating oil and RUST BUSTER lubricant. "[T]he reversal in one mark of the essential elements of another mark may serve as a basis for a finding of no likelihood of confusion only if the transposed marks create distinctly different commercial impressions." Here the commercial impression and meaning are the same.)

4

### 3. Soilworks uses Midwest's Mark to Divert Consumers to Soilworks' Products, which is Deceptive as a Matter of Law.

In its Opposition, Soilworks makes the unsupported argument that Midwest was required to and failed to prove that Soilworks' use of Midwest's Soil-Sement® mark was deceptive. Deception has occurred and has been proven by Midwest in this case. The Ninth Circuit has repeatedly recognized that a sale does not need to be consummated in order for "initial interest confusion" and actionable deception to occur. *Brookfield*, 174 F.3d at 1062. As Soilworks itself recognizes in the first footnote of its Opposition, initial interest confusion is a bait and switch scheme in which deception is used to lure consumers away from the trademark holder's products. This is exactly the type of actionable bait and switch scheme that is used by Soilworks: Soilworks deceptively lures consumers away from Midwest's product by using Midwest's trademark in its metatags and keyword advertising on Google™.

Further, Soilworks' reliance on *Designer Skin, LLC v. S&L Vitamins, Inc.*, 2008 WL 2116646 (D. Ariz. May 20, 2008), in support of its argument is entirely misplaced. It is true that the *Designer Skin* court found, as a factual matter, the defendant's use of the plaintiff's trademarks in that case was not deceptive. However, the court reached this conclusion because the defendant was using the plaintiff's trademarks to refer to and sell the plaintiff's own products. *Id.* at * 4. The court accordingly held that:

> In this Court's view, there is a meaningful distinction between (1) using a mark to attract potential customers to a website that only offers products of the mark holder's competitors and (2) using a mark to attract potential customers to a website that offers the **mark holder's genuine products** as well as the products of competitors. As discussed above, in the latter situation no "bait and switch" occurs.

*Id.* at *5. (emphasis added).

This case presents a direct contrast to the facts addressed by the *Designer Skin* court: Soilworks is not using Midwest's Soil-Sement® mark to resell Midwest's Soil-Sement product. Soilworks is using Midwest's Soil-Sement® mark only to sell its own product, Soiltac, which directly competes with Midwest's Soil-Sement product. Therefore, Soilworks' use of Soil-Sement®, as well as "sement soil," constitutes a "bait and switch" scheme and is deceptive as a matter of law.

**B. Midwest is Entitled to Summary Judgment on its False Designation of Origin and Unfair Competition Claims.**

Soilworks concedes that Midwest is entitled to summary judgment on these claims if Midwest demonstrates a likelihood of confusion. As shown above, Midwest is entitled to summary judgment on these claims.

**C. Soilworks has Falsely Stated that Its Products are "Synthetic" and "Oil-Sheen Free," Establishing Midwest's False Advertising Claim.**

In its Opposition, Soilworks argues that its has not falsely advertised that its products are "synthetic" or "oil-sheen free" because (1) the alleged "blending" of Durasoil makes it "synthetic" and (2) it has tested and proven that Durasoil is "oil-sheen free." Soilworks also argued that Midwest failed to prove Soilworks' false advertisements influence relevant consumers' purchasing decisions or has injured Midwest.

Soilworks' arguments must fail because (1) Soilworks' self-serving declaration cannot be used to contradict its prior admissions in deposition testimony that its product is not "oil-sheen free"; (2) Soilworks cannot, for the first time, rely on the dictionary definition of "synthetic"; and (3) the undisputed facts establish that customers require the products they

6

purchase to be synthetic and/or oil-sheen free and Midwest has consequently been injured by Soilworks' false advertisements that its products possess these attributes.

### 1. Soilworks' Declaration is Contradicted by Prior Deposition Testimony.

According to the Ninth Circuit, a party cannot create an issue of material fact to avoid summary judgment by submitting a declaration that contradicts prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "'[I]f a party who has been examined at length on deposition could raised an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (*quoting Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir. 1985)).

With respect to Soilworks' false advertisement that its Durasoil product is "oil-sheen free," Soilworks' president, Chad Falkenberg, stated in his deposition that Soilworks has never performed the requisite testing to verify whether Durasoil is "oil-sheen free." *See* Midwest's SOF at ¶ 52. In its Opposition, Soilworks tries undo this admission and create an issue of material fact on this matter by submitting Mr. Falkenberg's declaration, which states that visual inspections of Soilworks' Durasoil product show it to be "oil-sheen free." Soilworks cannot rely on this newly created, contradictory statement to create an issue of material fact.

### 2. Soilworks Falsely Advertises that Durasoil is Synthetic.

With respect to Soilworks' false advertisement that its Durasoil product is "synthetic," Mr. Falkenberg admitted that Durasoil's manufacturer does not consider it to be synthetic. Midwest's SOF at ¶ 48. and Soilworks RSOF at ¶ 48. In its Opposition, Soilworks now

attempts to create a genuine issue of material fact on this matter by relying on the dictionary definition of "synthetic" to prove that Durasoil is "synthetic" because it is allegedly "blended." This definition of synthetic has never come up in discovery requests or in the deposition. Thus it is not proper record evidence for purposes of evaluating and ruling on Midwest's summary judgment motion and Midwest formally moves to strike this dictionary definition. Moreover, even under Soilworks' newly asserted definition of "synthetic," the evidence in the record demonstrates that Soilworks' Durasoil product does not meet this definition. Soilworks' patent claims chart, drafted by Mr. Falkenberg, state that "Durasoil is not a blend." Midwest's RSOF at ¶¶ 15, 29-37. Also, Soilworks' general foreman and field technician, who testified in his deposition that he would have first-hand knowledge of any alleged blending, testified that no blending has taken place during the past two years he has been employed at Soilworks. Id. Therefore, even if the Court were to find that a genuine issue of material fact exists as to whether Soilworks falsely advertises that its Durasoil product is synthetic based on Soilworks' new definition, the Court should find that Soilworks falsely advertises that its Durasoil product is "synthetic" as a matter of law whenever the product that it advertises and provides to a consumer has not been blended by Soilworks.

**3. Midwest Asserts Undisputed Facts Which Demonstrate "Synthetic" and "Oil-Sheen Free" Are Important Distinctions to Consumers and Midwest has been Injured by Soilworks' False Advertising.**

Many relevant customers require dust-control products that are specifically "synthetic" and/or "oil-sheen free." For example, the Army Corps of Engineers' Dust Control Handbook states that "synthetic organic fluid" should be used as the dust control product and lists both Midwest and Soilworks as vendors that offer "synthetic organic fluid." See Midwest's RSOF

at ¶¶ 59-64. If Soilworks had not advertised its product as "synthetic," Midwest would be the only vendor listed in the Handbook and it would secure all government jobs for a synthetic fluid. Id. Because Soilworks falsely represented that its Durasoil is "synthetic" and "oil-sheen free," Midwest has lost business opportunities to Soilworks. These lost opportunities include at least the Kokhanok airport project, which also specifically required a "synthetic" and "oil-sheen free" product. Id. at ¶¶ 39, 60, 65-67. Therefore, Midwest is entitled to summary judgment on its false advertising claim.

### D. Because of Soilworks' Failure to Address It, Midwest is Entitled to Summary Judgment on its Unfair Competition Claim.

Soilworks has failed entirely to address the merits of this claim. Therefore, Soilworks has failed to satisfy its burden and Midwest is entitled to summary judgment on this claim as a matter of law.

### E. Because Midwest did not Act in Bad Faith, Soilworks Cannot Prove Its False Advertising Claim.

In its Opposition, Soilworks conceded that it must demonstrate that Midwest's statements regarding Soilworks' infringement were both objectively and subjectively made in bad faith. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). Further, a patent holder can be wrong and it can turn out that the patent is not infringed, but so long as its accusations were not made in bad faith, they are not actionable. *Id.*

Soilworks has failed to demonstrate subjective or objective bad faith on the part of Midwest. During its deposition, Soilworks stated that its false advertising claims were based on the Polar Supply Company letters. Midwest's SOF at ¶ 72. Midwest sent the letters to protect its patents and prevent potential infringement. When Midwest learned that the Polar

Supply Company ("Polar Supply") was bidding on projects that, if fulfilled by Soilworks, would infringe the Midwest's patents, Midwest responded to protect its intellectual property rights. Id. at ¶ 70. Midwest placed Soilworks' on notice that its Durasoil product may infringe the Midwest Patents. Id. at ¶¶ 66-69. Soilworks' attorney failed to provide any substantive response to Midwest's concerns. Id. Thus, Midwest advised Polar Supply about its concerns. Id. at ¶ 71. Soilworks even concedes that Midwest sent the Polar Supply letters because Midwest thought that Soilworks' Durasoil product infringed its patents. Id. at ¶ 74 and Soilworks' RSOF ¶ 74 ("Undisputed"). Therefore, the undisputed evidence establishes that Midwest acted in good faith.

**F. Soilworks has Failed to Submit any Evidence of Business Interruption, Damages, or Midwest's Improper Motive or Means and, Thus, Cannot Prove Tortious Interference with any Business Relationship, Which is Fatal to Its Claim.**

Soilworks has failed to come forth with any evidence to establish the elements of tortious interference with business relationships, including: (1) a business interruption; (2) damages; and (3) improper motive or means.

The undisputed evidence demonstrates that Soilworks has failed to prove both a business interruption and damages. Dorian Falkenberg admitted that, if there was an interruption of Soilworks' business with Polar Supply, she would know about it and there was no business interruption. Midwest SOF at ¶ 77. Mr. Falkenberg states in both his declaration and his deposition that he does not know what Polar Supply does in terms of its sales. See Midwest SOF at ¶ 78 and C. Falkenberg Decl. at ¶ 4. Mr. Falkenberg could identify no loss of sales in his deposition. Midwest SOF at ¶ 78. The only job that Mr. Falkenberg speculated Polar Supply lost during this time period was one project that expressly required Midwest's EK35

10

synthetic product. See Midwest's RSOF at ¶ 70. Soilworks has not pointed to any specific or identifiable facts that create a genuine issue of fact on these elements. The record demonstrates that there was no business interruption or damages resulting from Midwest's Polar Supply letters.

Regarding improper motive or means, Soilworks failed to address this element entirely. Therefore, Midwest is entitled to summary judgment on this claim.

### G. Soilworks Has Not Met Its Burden of Clear and Convincing Evidence and, as such, Midwest's Patents are Not Invalid as a Matter of Law.

Soilworks concludes that the Midwest Patents are invalid. Soilworks was obligated to come forth with *evidence* that Midwest's patents are invalid since "[a] patent is presumed valid and the burden of establishing invalidity rests on the party asserting such invalidity. . . .this presumption may be rebutted only by clear and convincing evidence." *Uniroyal, Inc. v Rudkin-Wiley Corp.*, 837 F.2d 1044 (Fed. Cir. 1988). "The decision maker is thus required to begin by accepting the proposition that the patent is valid and now look to the challenger for proof to the contrary." *Lear Siegler v Arrowquip, Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984). Since the Midwest Patents carry a presumption of validity, where the required proof of facts supporting invalidity does not rise to the level of clear and convincing evidence, Midwest (*i.e., the patentee)* need not present any factual evidence. *See Massey v Dell Labs., Inc.*, 118 F.3d 1568 (Fed. Cir. 1997). There is no genuine issue of material fact here. The Midwest Patents are valid as a matter of law.

**CONCLUSION**

For all of the foregoing reasons, Midwest requests that the Court GRANT Midwest's motion for partial summary judgment in its entirety.

11

| | | |
|---|---|---|
| 1 | By: | /s/ John M. Skeriotis |
| 2 | | Craig A. Marvinney, 0004951 (OH) |
| | | John M. Skeriotis, 0069263 (OH) |
| 3 | | Jill A. Bautista, 0075560 (OH) |
| | | BROUSE MCDOWELL |
| 4 | | 388 S. Main Street, Suite 500 |
| 5 | | Akron, Ohio 44311-4407 |
| | | Telephone: 330-535-5711 |
| 6 | | Facsimile: 330-253-8601 |
| | | Email: cmarvinney@brouse.com, |
| 7 | | jskeriotis@brouse.com, |
| 8 | | jbautista@brouse.com |

*Admitted pro hac vice*

Donald L. Myles, Jr., 007464 (AZ)
JONES, SKELTON & HOCHULI, P.L.C.
2901 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Telephone: 602-263-1700
Facsimile: 602-263-1784
Email: dmyles@jshfirm.com

*Attorneys for Defendant/Counterclaimant Midwest Industrial Supply, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **MIDWEST INDUSTRIAL SUPPLY, INC.'S REPLY TO SOILWORKS, LLC'S OPPOSITION** has been electronically filed on this 30th day of June, 2008. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John M. Skeriotis
John Skeriotis

719926