# Exhibit 4

# COURT REPORTERS
## OF AKRON CANTON AND CLEVELAND

Transcript of the Testimony of
# Cheryl L. Detloff

**Taken On:** April 21, 2008
**Case Number:** 2:06-CV-2141-DGC

**Case:** Soilworks, LLC, vs. Midwest Industrial Supply, Inc.,

Court Reporters of Akron Canton and Cleveland
Phone: 800-804-7787
Fax: 330-666-9833
Email: reporters@compuserve.com
Internet: www.courtreportersinc.com

**Page 1**

```
         UNITED STATES DISTRICT COURT
       IN AND FOR THE DISTRICT OF ARIZONA
                     - - -
SOILWORKS, LLC, an Arizona )
corporation,               )
          Plaintiff,       )
     vs.                   )  CASE NO.
MIDWEST INDUSTRIAL SUPPLY, )  2:06-CV-2141-DGC
INC., an Ohio corporation  )  ATTORNEYS' EYES
authorized to do business  )  ONLY PORTIONS
in Arizona,                )  CONTAINED WITHIN
          Defendant.       )
                     - - -
     Deposition of CHERYL L. DETLOFF, a witness
herein, called by the Plaintiff for Examination
pursuant to the Federal Rules of Civil
Procedure, taken before me, the undersigned,
Binnie Purser Martino, a Registered Diplomate
Reporter, Certified Realtime Reporter and Notary
Public in and for the State of Ohio, pursuant to
Notice and agreement of counsel at the offices
of Court Reporters of Akron, Canton and
Cleveland, 221 Springside Drive, Akron, Ohio, on
Monday, the 21st day of April, 2008, commencing
at 9:47 o'clock a.m.
```

**Page 2**

1  APPEARANCES:
2
3  On Behalf of the Plaintiff:
4      KUTAK ROCK LLP
5      BY:   E. Scott Dosek, Attorney at Law
6          Suite 300
7          8601 North Scottsdale Road
8          Scottsdale, Arizona 85253-2742
9          480/429-5000
10
11 On Behalf of the Defendant:
12     BROUSE McDOWELL
13     BY:   John M. Skeriotis Attorney at Law
14         388 South Main Street, Suite 500
15         Akron, Ohio 44311-4407
16         330/535-9999
17 ALSO PRESENT:
18         Chad Falkenberg
19         Robert Vitale
20            - - -

**Page 3**

### INDEX

EXAMINATION (By Mr. Dosek)        4

| | |
|---|---|
| Plaintiff's Exhibit 10 | 48 |
| Plaintiff's Exhibit 11 | 57 |
| Plaintiff's Exhibit 12 | 62 |
| Plaintiff's Exhibit 13 | 77 |
| Plaintiff's Exhibit 14 | 81 |
| Plaintiff's Exhibit 15 | 82 |
| Plaintiff's Exhibit 16 | 83 |
| Plaintiff's Exhibit 17 | 84 |
| Plaintiff's Exhibit 18 | 86 |
| Plaintiff's Exhibit 19 | 89 |
| Plaintiff's Exhibit 20 | 92 |
| Plaintiff's Exhibit 21 | 94 |
| Plaintiff's Exhibit 22 | 98 |
| Plaintiff's Exhibit 23 | 111 |
| Plaintiff's Exhibit 24 | 116 |
| Plaintiff's Exhibit 25 | 121 |

**Page 4**

                CHERYL L. DETLOFF
of lawful age, a witness herein, having been
first duly sworn, as hereinafter certified,
deposed and said as follows:
                EXAMINATION
**BY MR. DOSEK:**
Q. State your full name, please.
A. Cheryl L. Detloff. L for Lynn.
Q. What is your date of birth?
A. 10/3/64.
Q. Ms. Detloff, have you ever had your deposition taken before?
A. No.
Q. Have you ever testified in court before?
A. Yes.
Q. How many times?
A. I don't recall.
Q. More than five?
A. Yes.
Q. When was the last time you testified in court?
A. Probably six months ago.
Q. What kind of a proceeding was that?
A. Child visitation.
Q. Okay. You understand that you were just

**Page 25**

BY MR. DOSEK:
Q. Which is which?
A. I don't recall.
Q. Do you know who Todd Hawkins is?
A. Yes.
Q. How do you know him?
A. I used to work with him.
Q. What was his job when you worked with him?
A. I don't recall his exact title.
Q. Was he there when you joined Midwest Industrial Supply?
A. No.
Q. So he came after you were already there and he is no longer employed there, correct?
A. Correct.
Q. Did you ever report to him?
A. For a period of time, yes.
Q. But you don't know what -- do you know what his title was at that time that you reported to him?
A. No.
Q. Do you know what his job responsibilities were when you reported to him?
A. He was a Development Manager.
Q. As a Development Manager, do you know what

**Page 26**

he did on a day-to-day basis?
A. I don't recall.
Q. So you did know at one time, and you have forgotten, is that what you are telling me?
A. No. I don't remember the specifics of what he did day-to-day. Could you please be more specific maybe?
Q. Tell me generally, what did he do on a day-to-day basis, if you don't remember specifically.
A. He worked with some of the field development techniques of our products, as well as developing new product formulations.
Q. What does field development techniques mean?
A. Working in the field with our applications personnel to develop new techniques for applying and testing those techniques.
Q. Have you seen any of the pleadings that have been filed in this litigation?
A. No.
Q. Any of the court papers?
A. No.
Q. Are you aware of any of the claims that have been asserted by Soilworks against Midwest

**Page 27**

in the court papers?
A. Could you be more specific?
Q. Are you aware of any of the allegations that have been made by Soilworks against Midwest that Soilworks is asking the court to resolve?
A. I have not seen any of that paperwork.
Q. And you are not aware of any of that?
A. I am aware that there is litigation going on. The specifics, I don't know exactly what their -- you know, their specifics as to what they are counter-suing or suing us for.
Q. Are you aware of any of the claims that have been asserted by Midwest against Soilworks?
A. I believe patent infringement.
Q. Okay. Anything else?
A. Oh, shoot. Trademark infringement.
Q. Anything else?
A. That is it.
Q. Okay. Are you aware of which product or products Midwest Industrial Supply believes infringe its patent?
A. Yes.
Q. Which?
A. EnviroKleen, EK35. Or could you please restate that?

**Page 28**

Q. Yes. It probably wasn't worded very well. I am asking if you are aware of which product or products of Soilworks are alleged to be infringing any patent owned by Midwest Industrial Supply?
A. Yes. Durasoil.
Q. Any others?
A. No, not that I am aware of.
Q. Have you done anything in your employment with Midwest to determine if, in fact, Durasoil infringes any patent?
    MR. SKERIOTIS: Objection. If you learned anything with respect to that answer pursuant to this litigation after it started or pursuant to preparation for litigation, then I instruct you not to answer. If you know that answer prior to any involvement by any lawyer, then you can answer that question.
    THE WITNESS: Could you be more specific in your question?
BY MR. DOSEK:
Q. Have you done anything in the course of your work to determine one way or another whether the Durasoil product infringes on Midwest's patent?

**29**

1        MR. SKERIOTIS: Same objection.
2  And again, unless it is outside of the scope of
3  a lawyer representing Midwest and efforts
4  regarding litigation, then I instruct you not to
5  answer.
6        THE WITNESS: You are asking me
7  if I have done anything personally?
8  BY MR. DOSEK:
9  Q. Yes.
10       MR. SKERIOTIS: But if it is within
11 the scope of your employment pursuant to
12 litigation, then I instruct you not to answer.
13       THE WITNESS: I myself have not
14 done anything outside of the scope of this
15 litigation to determine if Durasoil infringes
16 upon the patent.
17 BY MR. DOSEK:
18 Q. Have you been asked to do anything?
19       MR. SKERIOTIS: Same objection.
20 BY MR. DOSEK:
21 Q. Have you been asked to conduct any kind of
22 analysis or any kind of test on the Durasoil
23 product to make any determination as to whether
24 or not it infringes any patent owned by Midwest?
25       MR. SKERIOTIS: Same objection.

**30**

1        THE WITNESS: I have not done any
2  testing.
3  BY MR. DOSEK:
4  Q. My question is, have you been asked to do
5  any such testing?
6        MR. SKERIOTIS: Same objection.
7        THE WITNESS: I have not been
8  asked to do any such testing personally.
9  BY MR. DOSEK:
10 Q. Has anyone at, any individual at Midwest
11 Industrial Supply, to your knowledge, been asked
12 to do anything to try to determine whether or
13 not Durasoil violates any patent owned by
14 Midwest?
15       MR. SKERIOTIS: Objection, same
16 objection. Again, if it is pursuant to the
17 scope of litigation and with a lawyer present, I
18 instruct you not to answer.
19       THE WITNESS: I specifically do
20 not know of anyone who has been asked to do
21 something to determine that.
22 BY MR. DOSEK:
23 Q. Okay. Do you know if any attempt has been
24 made at Midwest Industrial Supply to do any kind
25 of chemical analysis or any other kind of

**31**

1  testing to make -- to determine whether or not
2  Durasoil infringes on any patent owned by
3  Midwest?
4        MR. SKERIOTIS: Same objection.
5        THE WITNESS: There has been no
6  testing at Midwest Industrial Supply to make
7  that determination.
8  BY MR. DOSEK:
9  Q. Has there been testing that you are aware
10 of at any other facility in an effort to make
11 that determination?
12       MR. SKERIOTIS: Same objection.
13       THE WITNESS: Yes, there was.
14 BY MR. DOSEK:
15 Q. Where?
16 A. Petro-Canada.
17 Q. When was that done?
18 A. I don't recall.
19 Q. How long ago?
20       MR. SKERIOTIS: Remember the scope
21 of his question, so we are accurate in the
22 record. It was for the purposes of
23 infringement, he is asking. Is that right,
24 Scott? Has there been any testing done for
25 purposes of infringement?

**32**

1  BY MR. DOSEK:
2  Q. For purposes of determining whether there
3  was an infringement, yes.
4  A. Then I don't recall.
5  Q. Okay. What do you recall about the testing
6  that was done at Petro-Canada of the Durasoil
7  product?
8  A. I have not reviewed the documents in some
9  time. I would have to review the documents.
10 Q. So without reviewing the documents, you
11 don't remember anything about that?
12 A. No, I do not recall.
13 Q. Was a Durasoil product sample sent to
14 Petro-Canada?
15 A. Yes.
16 Q. Did you participate in doing that?
17 A. Yes.
18 Q. Was it before the issuance of the '266 or
19 '270 patent by the United States Patent and
20 Trademark Office or after?
21 A. I don't recall.
22 Q. Do you know when those patents were issued?
23 A. After 1998.
24 Q. That is all you know?
25 A. That is all I know, yes.