# Exhibit 5

# COURT REPORTERS
## OF AKRON CANTON AND CLEVELAND

Transcript of the Testimony of
# Todd Rhett Hawkins

**Taken On:** August 19, 2008
**Case Number:** 2:06-CV-2141-DGC

**Case:** Soilworks, LLC, vs. Midwest Industrial Supply, Inc.,

Court Reporters of Akron Canton and Cleveland
Phone: 800-804-7787
Fax: 330-666-9833
Email: reporters@courtreportersinc.com
Internet: www.courtreportersinc.com

**Page 1**

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

- - -

SOILWORKS, LLC, an Arizona )
corporation, )
  Plaintiff/Counterdefendant/ ) CASE NO.
  Counterclaimant, ) 2:06-CV-2141-DGC
    vs. )
MIDWEST INDUSTRIAL SUPPLY, )
INC., an Ohio corporation ) ATTORNEYS' EYES
authorized to do business ) ONLY PORTIONS
in Arizona, ) CONTAINED WITHIN
  Defendant/Counterclaimant/ )
  Counterdefendant. )

- - -

Videotaped deposition of TODD RHETT HAWKINS, a witness herein, called by the Plaintiff for Examination pursuant to the Federal Rules of Civil Procedure, taken before me, the undersigned, Mary Lyn Uphold, a Registered Diplomate Reporter, Certified Realtime Reporter and Notary Public in and for the State of Ohio, pursuant to Notice and agreement of counsel at the offices of Court Reporters of Akron, Canton and Cleveland, 221

**Page 2**

1  Springside Drive, Akron, Ohio, on Tuesday, the
2  19th day of August, 2008, commencing at 9:31
3  o'clock a.m.
4           - - -
5  **APPEARANCES:**
6
7  On Behalf of the Plaintiff:
8     KUTAK ROCK LLP
9  BY:  E. Scott Dosek, Attorney at Law
10    Suite 300
11    8601 North Scottsdale Road
12    Scottsdale, Arizona 85253-2742
13    480/429-5000
14
15 On Behalf of the Defendant:
16    BROUSE McDOWELL
17 BY:  John M. Skeriotis, Attorney at Law
18    388 South Main Street, Suite 500
19    Akron, Ohio 44311-4407
20    330/535-9999
21
22 Also Present:
23    Bob Vitale
24    Jim Torok, Videographer
25           - - -

**Page 3**

INDEX

EXAMINATION               4

Plaintiff's Exhibit 1     47
Plaintiff's Exhibit 2     49
Plaintiff's Exhibit 3     51
Plaintiff's Exhibit 4     53
Plaintiff's Exhibit 5     54
Plaintiff's Exhibit 6     63
Plaintiff's Exhibit 7     83
Plaintiff's Exhibit 8     84
Plaintiff's Exhibit 9     89
Plaintiff's Exhibit 10    129

**Page 4**

1      **THE VIDEOGRAPHER:** We are on the
2 record.
3      TODD RHETT HAWKINS
4 of lawful age, a witness herein, having been
5 first duly sworn, as hereinafter certified,
6 deposed and said as follows:
7      EXAMINATION
8 **BY MR. DOSEK:**
9 Q. State your full name, please.
10 A. Todd Rhett Hawkins.
11 Q. And what is your date of birth?
12 A. January 21st, 1962.
13 Q. Mr. Hawkins, have you ever had your
14 deposition taken before?
15 A. No.
16 Q. Have you ever testified in court before?
17 A. No.
18 Q. Have you ever testified under oath in any
19 kind of proceeding prior to today?
20 A. Possibly. I am not sure. Maybe during my
21 divorce. I mean, I may have. I am not sure if
22 you have to do that or not.
23 Q. Okay. Did you have to go to court for your
24 divorce?
25 A. Magistrate.

**Page 121**

1 isoalkanes.
2 Q. Forgive me if I asked you this before, but
3 do you know what a "Mercury 300 NMR spectrometer
4 test" is?
5 A. It's a spectrometer test, but no, I do not
6 know. I do not run those tests.
7 Q. What is a "spectrometer test"?
8 A. It gives you a reading of the composition
9 of materials you are analyzing.
10 Q. Have you ever done such a thing?
11 A. No.
12 Q. I am going to guess here that in order to
13 run a spectrometer test, you need to have a
14 spectrometer. Is that true, to your knowledge?
15 A. Yes.
16 Q. Do you know what a "spectrometer" is?
17 A. I've seen some, yes.
18 Q. What is it? Is it bigger than a bread box?
19 A. Yes.
20 Q. When you were an employee of Midwest
21 Industrial Supply, was there a spectrometer at
22 Midwest?
23 A. No.
24 Q. Have you ever conducted a spectrometer
25 test?

**Page 122**

1 A. Personally, no.
2 Q. Do you know if anyone else at Midwest
3 Industrial Supply ever did?
4 A. I don't know.
5 Q. So if I can just kind of go back and
6 summarize a little bit with respect to
7 Exhibit 23, in the first two pages, which
8 constitutes essentially a letter to the Patent
9 and Trademark Office, correct?
10 A. Correct.
11 Q. And that letter was written because it was
12 the feeling of the applicant, in January of '05,
13 or the belief of the applicant in January of
14 '05, that there was an infringing device or
15 product actually on the market, correct?
16 A. Correct.
17 Q. And that one of those products was the
18 Soilworks Durasoil product?
19 A. Yes.
20 Q. For which no chemical testing or analysis
21 had been done by you at that point, correct?
22 A. I personally had not done any chemical
23 analysis.
24 Q. Are you aware of any that had been done?
25 MR. SKERIOTIS: Objection, based

**Page 123**

1 upon -- same objection I lodged in the prior
2 depositions, that with respect to any testing
3 that's been done pursuant to an attorney or not,
4 we maintain the attorney work product.
5 If there was any testing done prior
6 to any attorney being involved and prior to this
7 litigation, you are free to answer that
8 question.
9 MR. DOSEK: I don't think there
10 is any work product in January of '05, John.
11 MR. SKERIOTIS: You didn't limit it
12 to January '05.
13 MR. DOSEK: Well, January '05
14 is the time that this exhibit was prepared,
15 Exhibit 23.
16 THE WITNESS: I am thoroughly
17 confused now.
18 BY MR. DOSEK:
19 Q. Okay.
20 A. If you would re --
21 Q. Fine, we will back up.
22 As of January '05, are you aware of any
23 chemical analysis or any other kind of analysis
24 that had been performed by or on behalf of
25 Midwest Industrial Supply with respect to the

**Page 124**

1 Durasoil product?
2 MR. SKERIOTIS: Same objection. I
3 mean, if, in fact, some testing was done, it
4 would be in anticipation of litigation. So to
5 the degree that your objection is -- I mean, it
6 clearly references "allegedly infringing
7 product," and should Midwest have received the
8 patent as these claims were drafted on page 3, I
9 would assume litigation would be anticipated;
10 and therefore, I would maintain the objection.
11 And if, in fact, any of your response
12 would be that any testing or not was done with
13 an attorney present, then I instruct you not to
14 answer that question, unless you have knowledge
15 prior to any attorney being involved, of any
16 testing done.
17 THE WITNESS: I have no knowledge
18 of any testing being done without the attorney
19 being present.
20 BY MR. DOSEK:
21 Q. Do you have knowledge of testing being done
22 with an attorney present?
23 MR. SKERIOTIS: Objection.
24 Instruct you not to answer. Same objection.
25 MR. DOSEK: And you are

**125**

1 claiming that whether or not he knows whether
2 there was any testing done by any lawyer is
3 privileged?
4     MR. SKERIOTIS: Yes. It's attorney
5 work product, absolutely. Because then you
6 would know whether or not any testing was done.
7 And that whether or not any attorney did any
8 testing on any product pursuant to this
9 litigation in anticipation thereof is absolutely
10 privileged.
11     MR. DOSEK: And you're --
12     MR. SKERIOTIS: And that's the same
13 objection, Scott, I've noted in the Detloff
14 deposition and the Vitale deposition as well,
15 and I have never been questioned until today.
16 So --
17     MR. DOSEK: Well, just because
18 you haven't been questioned doesn't mean that
19 your objection is not ill founded, because it
20 is, John, particularly when you are talking
21 about something that is in the time frame of
22 January of '05, a year and a half before any of
23 the -- before the patent was issued, before any
24 of this --
25     MR. SKERIOTIS: Sure.

**126**

1     MR. DOSEK: -- controversy ever
2 arose.
3     MR. SKERIOTIS: You are absolutely
4 true.
5     MR. DOSEK: That is akin to an
6 insurance company claiming work product whenever
7 it drafts an insurance policy, because there may
8 be litigation about the insurance policy.
9     And, John, you know as well as I do
10 that the attorney work product doctrine does not
11 extend that far.
12     MR. SKERIOTIS: And I think we
13 disagree with respect to patent cases,
14 especially where you've got a document, Scott,
15 that says that they believe that there is a
16 product that is being infringed. How that's not
17 in anticipation of litigation is beyond question
18 to me.
19     So I am maintaining the objection and
20 you are welcome to disagree with it.
21     MR. DOSEK: All right. Just so
22 I am clear then, you are saying that this, in
23 January of '05, constitutes something that is in
24 anticipation of litigation, even though you
25 filed, in your motion to dismiss this lawsuit,

**127**

1 an argument that your letters to Polar Supply in
2 the summer of '06 did not constitute threats of
3 litigation, is that what you are saying?
4     MR. SKERIOTIS: That's exactly what
5 I am saying, with one caveat.
6     MR. DOSEK: Okay.
7     MR. SKERIOTIS: If you would take a
8 look, Scott, at page 3, the claim at issue is "A
9 compound for chemical soil stabilization and
10 dust control, the compound comprising: a
11 synthetic isoalkane," period. If that claim
12 were to have issued, that is exactly my
13 position.
14 **BY MR. DOSEK:**
15 Q. Are you aware of any chemical analysis or
16 testing that has been done with respect to the
17 Durasoil product?
18     MR. SKERIOTIS: Same objection.
19 Other than if an attorney was working on it --
20     THE WITNESS: Same answer as I
21 gave before.
22     MR. DOSEK: And you are saying,
23 John, that whether he knows if any such testing
24 has even been done -- I am not asking him for
25 the results of any such testing -- whether he

**128**

1 knows whether any such testing has been done is
2 privileged and work product?
3     MR. SKERIOTIS: If an attorney was
4 present, correct. You can ask him that
5 question, if an attorney wasn't present, if it
6 was done, yeah. That's exactly what I am
7 saying.
8 **BY MR. DOSEK:**
9 Q. The question was, are you aware of any
10 testing that's been done, chemical testing of
11 the Durasoil product, by anybody?
12     MR. SKERIOTIS: Same objection.
13     THE WITNESS: Same answer. Not
14 without the attorney present.
15 **BY MR. DOSEK:**
16 Q. So you are aware of testing of the Durasoil
17 product that was done under the supervision of
18 lawyers; is that correct?
19     MR. SKERIOTIS: Objection. Again,
20 he already asked and answered this question
21 already. So, I mean, to the degree you got your
22 answer, you got your answer. Let's move on.
23 You are just asking the same question a
24 different way.
25