1  E. SCOTT DOSEK #012114
   JOHN P. PASSARELLI #16018 (NE)
2  KUTAK ROCK LLP
   Suite 300
3  8601 North Scottsdale Road
   Scottsdale, AZ  85253-2742
4  (480) 429-5000
   Facsimile: (480) 429-5001
5  *Attorneys for*
   *Plaintiff/Counterdefendant/Counterclaimant*
6  *Soilworks, LLC*

7  CRAIG A. MARVINNEY #0004951 (OH)
   BROUSE MCDOWELL
8  1001 Lakeside Avenue, Suite 1600
   Cleveland, OH 44114
9  (216) 830-6830
   *Attorneys for*
10 *Defendant/Counterclaimant/Counterdefendant*
   *Midwest Industrial Supply, Inc.*
11
   JOHN M. SKERIOTIS #0069263 (OH)
12 BROUSE MCDOWELL
   388 S. Main Street, Suite 500
13 Akron, OH 44311-4407
   (330-535-5711
14 Facsimile: (330) 253-8601
   *Attorneys for*
15 *Defendant/Counterclaimant/Counterdefendant*
   *Midwest Industrial Supply, Inc.*
16
              **UNITED STATES DISTRICT COURT**
17
          **IN AND FOR THE DISTRICT OF ARIZONA**
18

19 SOILWORKS, LLC, an Arizona          NO.: 2:06-CV-2141-DGC
   corporation,
20                                      **JOINT PROPOSED JURY**
              Plaintiff / Counterdefendant /   **INSTRUCTIONS**
              Counterclaimant,
21
22 v.

23 MIDWEST INDUSTRIAL SUPPLY, INC.,
   an Ohio corporation authorized to do
   business in Arizona,
24
              Defendant / Counterclaimant /
25            Counterdefendant.

26

27

28

Dockets.Justia.com

1
2
3
4
5
6
7
8
9
10
11
12

**SECTION I**

13
14

**NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COURT'S INSTRUCTION NUMBER** _____

**ST    1.1A  DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.1A (2007) (verbatim)

GIVEN                         _____
GIVEN AS MODIFIED   _____
REFUSED                    _____
WITHDRAWN            _____

1

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.1C  DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Source**: Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures, § 1.1C (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED                      _____
WITHDRAWN              _____

**COURT'S INSTRUCTION NUMBER _____**

**PL    1.2  CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff claims that the defendant has made false representations regarding its own products and the products of plaintiff, has engaged in unfair competition against plaintiff.  [**Plaintiff further seeks a declaration that is Durasoil product does not infringe two patents owned by defendant.**] The plaintiff has the burden of proving these claims.

The defendant denies those claims and also contends that plaintiff's Durasoil product violates two of its patents, that plaintiff has committed trademark infringement, unfair competition and false designation of origin through plaintiff's use of defendant's Soil Sement trademark in the meta-tags of its web sites and the purchase of that trademark from Google's Adwords program.  The defendant has the burden of proof on these counterclaims. *and/or affirmative defenses.*]]

The plaintiff denies defendant's counterclaims and/or affirmative defenses.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.2 (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED            _____
WITHDRAWN          _____

**COURT'S INSTRUCTION NUMBER** _____

**ST     1.3  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.3 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED   _____
REFUSED                         _____
WITHDRAWN               _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.4 BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.4 (2007) (verbatim)

GIVEN                             _____
GIVEN AS MODIFIED    _____
REFUSED                        _____
WITHDRAWN                 _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.6  WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.6 (2007) (verbatim)

GIVEN                            _____
GIVEN AS MODIFIED  _____
REFUSED                      _____
WITHDRAWN            _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.7  WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.7 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED  _____
REFUSED                        _____
WITHDRAWN               _____

**ST    1.8  EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.]

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.8 (2007) (verbatim)

GIVEN                                _____
GIVEN AS MODIFIED    _____
REFUSED                            _____
WITHDRAWN                   _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.9  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.9 (2007) (verbatim)

GIVEN             _____
GIVEN AS MODIFIED  _____
REFUSED          _____
WITHDRAWN      _____

**COURT'S INSTRUCTION NUMBER** _____

**ST     1.10  RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Source**: Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures, § 1.10 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED    _____
REFUSED                         _____
WITHDRAWN                 _____

# COURT'S INSTRUCTION NUMBER _____

## ST   1.11  CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.11 (2007) (verbatim)

GIVEN                         _____
GIVEN AS MODIFIED  _____
REFUSED                    _____
WITHDRAWN            _____

**COURT'S INSTRUCTION NUMBER _____**

**ST     1.12  CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e mails.  Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [bailiff] [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.


**Source**: Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures, § 1.12 (2007) (verbatim)

GIVEN                                    _____
GIVEN AS MODIFIED  _____
REFUSED                              _____
WITHDRAWN                      _____

**COURT'S INSTRUCTION NUMBER _____**

**ST     1.13  NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.13 (2007) (verbatim)

GIVEN                                    _____
GIVEN AS MODIFIED    _____
REFUSED                              _____
WITHDRAWN                       _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.14  TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note taking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.13 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED   _____
REFUSED                         _____
WITHDRAWN               _____

## COURT'S INSTRUCTION NUMBER _____

**ST    1.15  QUESTIONS TO WITNESSES BY JURORS**

### Comment

Whether to allow jurors to ask questions is a subject debated among judges.  Many state courts have modified their past practice and now allow questions by jurors.  If a judge decides to allow questions, the following instruction and procedure is suggested.

### INSTRUCTION

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness.  You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court.  Do not sign the question.  I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### PROCEDURES

In the event the court allows jurors to submit questions for witnesses the committee recommends that judges use the following procedures:

1        1.    At the conclusion of each witness's testimony, the court asks if jurors have
2    written questions, which are brought to the judge;

3        2    Outside the presence of the jury, counsel are given the opportunity to make
4    objections to the question or to suggest modifications to the question, by passing the written
5    question between counsel and the court during a side bar conference or by excusing jurors to
6    the jury room;

7        3.    The judge asks the question of the witness;

8        4.    Counsel are permitted to ask appropriate follow up questions; and

9        5.    The written questions are made part of the record.

10   Each court is encouraged to develop a form for juror use. The form makes it easier
11   for the court to retain the question for inclusion in the court record.

12   The form should include the case name and number. Most of the form's page should
13   be set aside for the juror to use in writing the proposed question. A section should also be
14   reserved for the court to use in noting the date and time when the question was proposed and
15   noting whether the judge allowed the question to be asked, either as proposed or as revised.
16   The form may also be used to provide jurors with additional information, or even just a
17   reminder, about the procedures discussed in this instruction.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY
TRIAL PROCEDURES, § 1.15 (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED   _____
REFUSED   _____
WITHDRAWN   _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    1.18  BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess.  Please understand that while you [are] [were] waiting, we [are] [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum.  I [may] [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 1.18 (2007) (verbatim)

GIVEN                                   _____
GIVEN AS MODIFIED    _____
REFUSED                             _____
WITHDRAWN                      _____

**ST    1.19  OUTLINE OF TRIAL**

Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Source**: Jury Instructions Committee of the Ninth Circuit, A Manual on Jury Trial Procedures, § 1.19 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED  _____
REFUSED                         _____
WITHDRAWN

**ST    2.2  STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You should therefore treat these facts as having been proved.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.2 (2007) (verbatim)

GIVEN                               _____
GIVEN AS MODIFIED  _____
REFUSED                         _____
WITHDRAWN                 _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    2.3  JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact], even though no evidence has been introduced on the subject.  You must accept this fact as true.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.3 (2007) (verbatim)

GIVEN                          _____
GIVEN AS MODIFIED  _____
REFUSED                     _____
WITHDRAWN           _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [witness] was taken on [date].  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.4 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED  _____
REFUSED                          _____
WITHDRAWN                   _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    2.10  USE OF INTERROGATORIES OF A PARTY**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers [have been] [were] given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.10 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED    _____
REFUSED                         _____
WITHDRAWN                  _____

**COURT'S INSTRUCTION NUMBER** _____

**ST    2.12  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.12 (2007) (verbatim)

GIVEN                                    _____
GIVEN AS MODIFIED   _____
REFUSED                               _____
WITHDRAWN                       _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    2.13  CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 2.13 (2007) (verbatim)

GIVEN                              _____
GIVEN AS MODIFIED    _____
REFUSED                          _____
WITHDRAWN                  _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    3.1  DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.1 (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED              _____
WITHDRAWN          _____

**COURT'S INSTRUCTION NUMBER _____**

**ST    3.2  COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.2 (2007) (verbatim)

GIVEN                                _____
GIVEN AS MODIFIED  _____
REFUSED                           _____
WITHDRAWN                  _____

**COURT'S INSTRUCTION NUMBER** _____

**ST    3.3  RETURN OF VERDICT**

A verdict form has been prepared for you.  [Any explanation of the verdict form may be given at this time.]   After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.3 (2007) (verbatim)

GIVEN _____
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

1               **COURT'S INSTRUCTION NUMBER _____**

2   **ST    15.0   PRELIMINARY INSTRUCTION – TRADEMARK**

The defendant, Midwest Industrial Supply, seeks damages against the plaintiff, Soilworks, for trademark infringement, false representation of origin and unfair competition.

To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.0 (2007) (modified to reflect that Midwest Industrial Supply is the claimant)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED
WITHDRAWN      _____

**COURT'S INSTRUCTION NUMBER**

**ST    15.24 TRADEMARK DAMAGES—ACTUAL OR STATUTORY NOTICE
(15 U.S.C. § 1111)**

In order for Midwest Industrial Supply to recover damages, Midwest Industrial

Supply has the burden of proving by a preponderance of the evidence that Soilworks had

either statutory or actual notice that Midwest Industrial Supply's the trademark was

registered.

Soilworks had statutory notice if:

> 1. Midwest Industrial Supply displayed with the trademark the words
> "Registered in U.S. Patent and Trademark Office" or
>
> 2.    Midwest Industrial Supply displayed with the trademark the words
> "Reg. U.S. Pat. & Tm. Off." or
>
> 3.    Midwest Industrial Supply displayed the trademark with the letter R
> enclosed within a circle, thus ®.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY
TRIAL PROCEDURES, § 15.24 (2007) (modified to reflect that the defendant is the claimant)

GIVEN
GIVEN AS MODIFIED _____
REFUSED
WITHDRAWN _____

1

**COURT'S INSTRUCTION NUMBER** _____

2 **PL    15.1 DEFINITION—TRADEMARK (15 U.S.C. § 1127)**

3      A trademark is any word, name, symbol, device[, or any combination thereof,] used

4 by a person to identify and distinguish that person's goods from those of others and to

5 indicate the source of the goods [, even if that source is generally unknown].

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Source**: Jury Instructions Committee of the Ninth Circuit, A Manual on Jury
23 Trial Procedures, § 15.1 (2007) (verbatim)

24
GIVEN
25 GIVEN AS MODIFIED  _____
REFUSED            _____
26 WITHDRAWN          _____

27

28

**COURT'S INSTRUCTION NUMBER** _____

**DF    15.1 DEFINITION—TRADEMARK (15 U.S.C. § 1127)**

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

A person who uses the trademark of another may be liable for damages.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.1 (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED    _____
REFUSED
WITHDRAWN    _____

**PL    15.4 TRADEMARK LIABILITY—THEORIES AND POLICIES**
**(15 U.S.C. §§ 1114(1), 1125(a))**

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for:

[1. infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers][;]

[2. unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]

[3. unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]

[4. infringing plaintiff's trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers] [;] [and]

[5. false advertising, by making a false statement that was material and that tended to deceive consumers, injuring the plaintiff in the market].

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.4 (2007) (verbatim)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**COURT'S INSTRUCTION NUMBER _____**

**DF    15.4 TRADEMARK LIABILITY—THEORIES AND POLICIES**
**(15 U.S.C. §§ 1114(1), 1125(a))**

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

In this case, the Court has already determined as a matter of law that Soilworks', use of Midwest Industrial Supply's trademark in the metatag coding for Soilworks' website and in Soilworks' purchase of that trademark in its Google™ Adwords advertising program constitutes trademark infringement, false representation of origin, and unfair competition under the Lanham Act. As the jury, you will be asked to determine the amount of damages (if any) that Midwest Industrial Supply may recover for this claim.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.4 (2007) (modified to reflect that Midwest Industrial Supply is the claimant); Court's August 7, 2008 Order and Opinion

GIVEN
GIVEN AS MODIFIED    _____
REFUSED
WITHDRAWN    _____

**DF    15.25 TRADEMARK DAMAGES— ACTUAL DAMAGES**
**(5 U.S.C. § 1117(a))**

If you find that Soilworks had statutory notice or actual notice of Midwest Industrial Supply's registered trademark, you must determine Midwest Industrial Supply's actual damages.

Midwest Industrial Supply has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Midwest Industrial Supply for any injury you find was caused by Soilworks' infringement of Midwest Industrial Supply's registered trademark.

You should consider the following:

1.  The injury to, or loss of Midwest Industrial Supply's reputation;

2.  The injury to, or loss of, the defendant's goodwill, including injury to Midwest Industrial Supply's general business reputation;

3.  The lost profits that Midwest Industrial Supply would have earned but for the Soilworks' infringement. Profit is determined by deducting all expenses from gross revenue;

4.  The expense of preventing customers from being deceived;

5.  The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of

such future costs should not exceed the actual damage to the value of Midwest Industrial

Supply's mark at the time of the infringement by Soilworks.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.25 (2007) (modified to reflect that the defendant is the claimant)

GIVEN          _____
GIVEN AS MODIFIED   _____
REFUSED        _____
WITHDRAWN      _____

## DF    15.26 TRADEMARK DAMAGES— PROFITS
### (15 U.S.C. § 1117(a))

In addition to actual damages, Midwest Industrial Supply is entitled to any profits earned by Soilworks that are attributable to the infringement, which Midwest Industrial Supply proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Soilworks' receipts from using the trademark in the sale of Soilworks' Gorilla-Snot and Soiltac products. Midwest Industrial Supply has the burden of proving Soilworks' gross revenue by a preponderance of the evidence.

Expenses are all [operating] [overhead] and production costs incurred in producing the gross revenue. Soilworks has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of Soilworks' Gorilla Snot and Soiltac products using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.26 (2007) (modified to reflect that the defendant is the claimant)

GIVEN                                  _____
GIVEN AS MODIFIED        _____
REFUSED                           _____
WITHDRAWN                    _____

**PL     15.27 TRADEMARK DAMAGES—INTENTIONAL INFRINGEMENT
(15 U.S.C. § 1117(b))**

You must also determine whether Soilworks used the trademark intentionally, knowing it was an infringement.

**Source**: JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 15.27 (2007) (modified to reflect that the defendant is the claimant)

GIVEN                            _____
GIVEN AS MODIFIED     _____
REFUSED                       _____
WITHDRAWN               _____

**SECTION II**

**STIPULATED NON-MODEL INSTRUCTIONS**

**STIPULATED JURY INSTRUCTION NO. _____**
**FALSE ADVERTISING UNDER THE LANHAM ACT**

Both parties have asserted claims for false advertising under the Lanham Act against one another. A party is liable for false advertising if, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

To prevail on a claim for false advertising under the Lanham Act, a plaintiff-party must demonstrate: (1) a false or misleading statement of fact was made about a party or its product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of the advertisement's or promotion's audience; (4) the deception was material, in that it was likely to influence purchasing decisions; (5) the defendant-party caused the statement to enter interstate commerce; (6) the plaintiff-party was likely to be injured as a result of the statement, either by a direct loss of sales or a lessening of the goodwill associated with its products.

**Source**: USC § 1125(a)(1)(B); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1136 (9th Cir. 1997); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

GIVEN
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

**STIPULATED JURY INSTRUCTION NO. _____**

**FALSE ADVERTISING (MIDWEST)**

Midwest's false advertising claim is based upon Soilworks' statement that it is a "manufacturer of Durasoil."

To establish its claim for false advertising, Midwest must prove:

(a) Soilworks statement that it is a "Manufacturer of Durasoil" is false or misleading statement of fact which was made by Soilworks in a commercial advertising or promotion;

(b) Soilworks statement that it is a "Manufacturer of Durasoil" actually deceived or has the tendency to deceive a substantial segment of its audience;

(c) the deception is material, in that it is likely to influence the purchasing decisions of Soilworks audience;

(d) Soilworks caused its false statement to enter interstate commerce; and

(e) Midwest has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Soilworks or by a loss of goodwill associated with its products.

**Source**: *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *See also* 15 U.S.C. § 1125(a).

GIVEN
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

**PL  JURY INSTRUCTION NO. _____**

**FALSE ADVERTISING (SOILWORKS)**

Soilworks also asserts a false advertising claim.  Soilworks alleges that the following statements constitute false advertising:

- Marketing materials which announces that Midwest has gained "exclusive control" over the synthetic organic dust control category of products.

- Midwest's statement in its marketing materials that it has "secured exclusive rights to the products and methods that define the [synthetic organic dust control] category."

- Midwest's statement in its marketing materials that the Midwest Patents "provide it with the exclusive right to manufacture and sell synthetic organic soil stabilization and dust suppressant technology."

- Midwest's suggestion in its marketing materials that competitors cannot design around the Midwest Patents: "Midwest competitors may claim to offer synthetic organic dust control technology, but only Midwest can offer the products and methods that define this technology.  Those competitors are either not supplying synthetic organic dust control technology . . . or they are infringing Midwest's patents."

These statements are referred to collectively as Midwest's Marketplace Statements

Because Soilworks' False Advertising and Unfair Competition claims relate, in part, to statements concerning the Midwest Patents, it must show that Midwest acted in bad faith.

With regard to your determination of whether Midwest acted in bad faith, statements to the effect that a competitor is incapable of designing around a patent are inherently suspect.  They are suspect not only because with sufficient effort it is likely that most patents can be designed around, but also because such a statement appears nearly impossible to confirm on its face.  A patent holder who exaggerates the scope of his patents may overstep the boundaries of legality set in the Lanham Act.

With regard to Midwest's Marketplace Statements, I've already made the following ruling:

- Midwest's Marketplace Statements have been disseminated sufficiently to constitute commercial advertisement for purposes of Soilworks' false advertising claim;

- Because Midwest's Marketplace Statements are both "exclusive provider" statements and statements that the Midwest Patents cannot be designed around, the bad faith element is much easier to satisfy.

**Source**: This Court's August 7, 2008 Order and *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (9th Cir. 1999).

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DF JURY INSTRUCTION NO. _____**

**FALSE ADVERTISING (SOILWORKS)**

Soilworks also asserts a false advertising claim against Midwest. Soilworks alleges that the following statements made by Midwest in marketing materials that announced the issuance of two patents to Midwest constitute false advertising:

- Midwest has gained "exclusive control" over the synthetic organic dust control category of products.

- Midwest has "secured exclusive rights to the products and methods that define the [synthetic organic dust control] category."

- Midwest's patents "provide it with the exclusive right to manufacture and sell synthetic organic soil stabilization and dust suppressant technology."

- Midwest's statement that "Midwest competitors may claim to offer synthetic organic dust control technology, but only Midwest can offer the products and methods that define this technology. Those competitors are either not supplying synthetic organic dust control technology, as recited above, or they are infringing Midwest's patents."

These statements are referred to collectively as "Midwest's Marketplace Statements."

Because Soilworks' False Advertising and Unfair Competition claims relate, in part, to statements concerning the Midwest Patents, Soilworks must show that Midwest acted in bad faith by clear and convincing evidence.

With regard to Midwest's Marketplace Statements, I've already made the following ruling:

- Midwest's Marketplace Statements have been disseminated sufficiently to constitute commercial advertisement for purposes of Soilworks' false advertising claim

-

**Source**: Court's August 7, 2008 Order; *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999); *Golan v. Pingel Enterprises, Inc.*, 310 F.3D 1360 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3D 1367 (Fed. Cir. 2004).

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**STIPULATED JURY INSTRUCTION NO. _____**
**PROOF REQUIRED FOR FALISITY**

To demonstrate falsity within the meaning of the Lanham Act, Soilworks and Midwest must show that the other party's statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.

**Source**: *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**STIPULATED JURY INSTRUCTION NO. _____**

**COMMON LAW UNFAIR COMPETITION**

Both parties have alleged claims for common law unfair competition against one another. Common law unfair competition is based upon principles of equity. The general purpose of the doctrine is to prevent business conduct that is contrary to honest practice in industrial and commercial matters. Common law unfair competition encompasses several tort theories, such as trademark infringement, false advertising, palming off and misappropriation.

**Source**: *Fairway Construction, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. App. 1998).

GIVEN _____
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**SECTION III**

16
17

**NON-MODEL INSTRUCTIONS REQUESTED BY PLAINTIFF**

18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**ACCOUNTING OF SOILWORKS' PROFITS (LANHAM ACT CLAIMS)**

This Court may order an accounting of Soilworks' profits for Midwest's Count I Lanham Act claims under one of two circumstances: (1) as a remedy for Soilworks' willful infringement of Soil-Sement or (2) as a measure of Midwest's damages.

**Source:** *See Lindy Pen Co. v. Bic Pen Corp.*, 892 F.2d 1400, 1406-1407 (9th Cir. 1993)

**Midwest's Objections**:   The correct Trademark Insturctions are already submitted by Defendant under Proposed Model Instructions 15.4 through 15.27.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**ACCOUNTING OF SOILWORKS' PROFITS (LANHAM ACT CLAIMS)**

Before this Court may order an accounting of Soilworks' profits for Midwest's Count I Lanham Act claims you must decide that Midwest has proved, by a preponderance of the evidence, either (i) that Soilworks possessed a willful intent to *deceive* through its use of the soil-sement trademark in its metatags and as a keyword in Google's AdWords program or (ii) the fact and amount of its damages and that such damage, if any, was caused by Soilworks' infringement of Soil-Sement.

**Source**: *Lindy Pen Co. v. Bic Pen Corp.*, 892 F.2d 1400, 1406-1407 and 1407-1409 (9th Cir. 1993).

**Midwest's Objections**:   The correct Trademark Insturctions are already submitted by Defendant under Proposed Model Instructions 15.4 through 15.27.

GIVEN
GIVEN AS MODIFIED   _____
REFUSED                       _____
WITHDRAWN              _____

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**PROOF OF WILLFUL INFRINGEMENT (LANHAM ACT CLAIMS)**

In order for Midwest to be entitled to an accounting of Soilworks' profits as a remedy for Soilworks' willful infringement of Midwest's Soil-Sement trademark, Midwest must prove, by a preponderance of the evidence, that Soilworks deliberately intended to deceive or confuse customers by its use of the Soil-Sement trademark in its metatags and as a keyword in Google's AdWords program.  Soiloworks' infringement is considered willful if you find that its infringing conduct was false, misleading, or fraudulent.

**Source:** *Lindy Pen Co. v. Bic Pen Corp.*, 892 F.2d 1400, 1406 (9th Cir. 1993); *See also National Lead Company v. Wolfe*, 223 F.2d 195, 203 (9th Cir. 1955), *cert. denied*, 350 U.S. 883.

**Midwest's Objections**:  The correct Trademark Insturctions are already submitted by Defendant under Proposed Model Instructions 15.4 through 15.27.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED
WITHDRAWN

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**PROOF OF THE FACT, AMOUNT AND CAUSATION OF
DAMAGES (LANHAM ACT CLAIMS)**

In order for Midwest to be entitled to an accounting of Soilworks' profits as a measure of Midwest's damages, Midwest must prove, by a preponderance of the evidence, all of the following:

(1) The fact damage; and

(2) The amount of damage; and

(3) That the damage was directly caused by Soilworks' use of Soil-Sement.

**Source:** *Lindy Pen Co. v. Bic Pen Corp.*, 892 F.2d 1400, 1407 (9th Cir. 1993)

**Midwest's Objections**:  The correct Trademark Insturctions are already submitted by Defendant under Proposed Model Instructions 15.4 through 15.27.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED
WITHDRAWN  _____

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**FALSE ADVERTISING (SOILWORKS)**

Soilworks also asserts a false advertising claim. Soilworks alleges that the following statements made by Midwest in marketing materials constitute false advertising:

- Midwest has gained "exclusive control" over the synthetic organic dust control category of products.

- Midwest has "secured exclusive rights to the products and methods that define the [synthetic organic dust control] category."

- Midwest's statement in its marketing materials that the Midwest Patents "provide it with the exclusive right to manufacture and sell synthetic organic soil stabilization and dust suppressant technology."

- Midwest's suggestion in its marketing materials that competitors cannot design around the Midwest Patents: "Midwest competitors may claim to offer synthetic organic dust control technology, but only Midwest can offer the products and methods that define this technology. Those competitors are either not supplying synthetic organic dust control technology . . . or they are infringing Midwest's patents."

These statements are referred to collectively as Midwest's Marketplace Statements

Because Soilworks' False Advertising and Unfair Competition claims relate, in part, to statements concerning the Midwest Patents, it must show that Midwest acted in bad faith.

With regard to your determination of whether Midwest acted in bad faith, statements to the effect that a competitor is incapable of designing around a patent are inherently suspect. They are suspect not only because with sufficient effort it is likely that most patents can be designed around, but also because such a statement appears nearly impossible to confirm on its face. A patent holder who exaggerates the scope of his patents may overstep the boundaries of legality set in the Lanham Act.

With regard to Midwest's Marketplace Statements, I've already made the following ruling:

- Midwest's Marketplace Statements have been disseminated sufficiently to constitute commercial advertisement for purposes of Soilworks' false advertising claim;

- Midwest's Marketplace Statements are both "exclusive provider" statements and statements that the Midwest Patents cannot be designed around, the bad faith element is much easier to satisfy.

**Source**: This Court's August 7, 2008 Order and *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (9th Cir. 1999).

**Defendant's Objection**:  Soilworks' proposed jury instruction does not accurately reflect the content of Midwest's alleged Marketplace Statements, the applicable legal elements and evidentiary standards for Lanham Act false advertising claims involving a patent holder's marketplace statements concerning its patent rights, or the Court' August 7, 2008 Order.  *See* Court's August 7, 2008 Order; *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999); *Golan v. Pingel Enterprises, Inc.*, 310 F.3D 1360 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3D 1367 (Fed. Cir. 2004). Midwest proposes the following jury instruction, which more accurately reflects the elements of Lanham Act false advertising claims as they related to Midwest's alleged statements.

Soilworks also asserts a false advertising claim against Midwest.  Soilworks alleges that the following statements made by Midwest in marketing materials that announced the issuance of two patents to Midwest constitute false advertising:

- Midwest has gained "exclusive control" over the synthetic organic dust control category of products.

- Midwest has "secured exclusive rights to the products and methods that define the [synthetic organic dust control] category."

- Midwest's patents "provide it with the exclusive right to manufacture and sell

55

synthetic organic soil stabilization and dust suppressant technology."

- Midwest's statement that "Midwest competitors may claim to offer synthetic organic dust control technology, but only Midwest can offer the products and methods that define this technology. Those competitors are either not supplying synthetic organic dust control technology, as recited above, or they are infringing Midwest's patents."

These statements are referred to collectively as "Midwest's Marketplace Statements."

Because Soilworks' False Advertising and Unfair Competition claims relate, in part, to statements concerning the Midwest Patents, Soilworks must show that Midwest acted in bad faith by clear and convincing evidence.

With regard to Midwest's Marketplace Statements, I've already made the following ruling:

- Midwest's Marketplace Statements have been disseminated sufficiently to constitute commercial advertisement for purposes of Soilworks' false advertising claim

**Source**: Court's August 7, 2008 Order; *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999); *Golan v. Pingel Enterprises, Inc.*, 310 F.3D 1360 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3D 1367 (Fed. Cir. 2004).

GIVEN
GIVEN AS MODIFIED ———
REFUSED ———
WITHDRAWN ———

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. _____**

**SOILWORKS MUST SHOW BAD FAITH**

If you find that Midwest's Marketplace Statements were made in bad faith, then you must decide whether Soilworks has establish its claim for false advertising. In order to establish its claim for false advertising, Soilworks must prove:

(a) any of Midwest's Marketplace Statements are either false or a misleading statement of fact;

(b) any of Midwest's Marketplace Statements actually deceived or have the tendency to deceive a substantial segment of its audience;

(c) the deception is material, in that it is likely to influence the purchasing decisions of Midwest's audience;

(d) Soilworks has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to opposing party or by a loss of goodwill associated with its products.

**Source**: *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *See also* 15 U.S.C. § 1125(a).

**Defendant's Objection**: Soilworks' proposed jury instruction does not accurately reflect the content of Midwest's alleged Marketplace Statements, the applicable legal elements and evidentiary standards for Lanham Act false advertising claims involving a patent holder's marketplace statements concerning its patent rights, or the Court' August 7, 2008 Order. *See* Court's August 7, 2008 Order; *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999); *Golan v. Pingel Enterprises, Inc.*, 310 F.3D 1360 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3D 1367 (Fed. Cir. 2004). Midwest accordingly proposes the following jury instruction, which more accurately reflects the elements and evidentiary of Lanham Act false advertising claims as they related to Midwest's alleged statements.

If you find that Midwest's Marketplace Statements were made in bad faith, then you must decide whether Soilworks has established its claim for false advertising. In order to establish its claim for false advertising, Soilworks must prove, by clear and convincing evidence:

(a)  Midwest's Marketplace Statements are either a false or misleading statement of fact;

(b)  Midwest's Marketplace Statements actually deceived or have the tendency to deceive a substantial segment of its audience;

(c) the deception is material, in that it is likely to influence the purchasing decisions of Midwest's audience;

(d)  Soilworks has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to opposing party or by a loss of goodwill associated with its products.

**Source**: *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *See also* 15 U.S.C. § 1125(a); *Zenith Electronics Corporation v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999); *Golan v. Pingel Enterprises, Inc.*, 310 F.3D 1360 (Fed. Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3D 1367 (Fed. Cir. 2004).

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**SECTION IV**

**NON-MODEL INSTRUCTIONS REQUESTED BY DEFENDANT**

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

**WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case also involves a dispute relating to two United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the patent examiner is called an "office action." More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to the office action and sometimes changes the

claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN
GIVEN AS MODIFIED   _____
REFUSED   _____
WITHDRAWN   _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

**PATENTS AT ISSUE**

[The court should show the jury the patent at issue and point out the parts including the specification, drawings and claims including the claims at issue.]


**Source:** Model Patent Jury Instructions for the Northern District of California.


GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

*Patent Litigation*

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the need for damages.

A granted patent is presumed to be valid and, in this case, the patent's validity is not in issue and I will direct you on that at the close of the case. I will now briefly explain the parties' basic contentions in more detail.

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN                        _____
GIVEN AS MODIFIED  _____
REFUSED                   _____
WITHDRAWN             _____

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Midwest and Soilworks. The case involves two United States patents obtained by Midwest's inventors, Todd R. Hawkins, Leland E. Beyersdorff, and Robert W. Vitale, and they assigned their entire right, title and interest to Midwest. The patents involved in this case are United States Patent Numbers 7,074,266 and 7,081,270 and both are entitled "Method of Chemical Soil Stabilization and Dust Control." For convenience, the parties and I will often refer to the patents by the last three numbers of the patent, the '266 Patent and the '270 Patent being the last three numbers of each patent number. When I say "the Midwest Patents," I am referring to both of them collectively.

Soilworks initially filed this suit seeking, among other things, that they do not infringe Midwest's Patents. Midwest thereafter filed a counterclaim in this court seeking money damages from Soilworks for allegedly infringing the Midwest Patents by making, having made, importing, using, selling, and/or offering for sale a product known as Durasoil and a for the method of applying Durasoil. Midwest argues that Durasoil and the method of applying Durasoil are covered by at least claim 1 of each patent. Midwest also argues that Soilworks has actively induced infringement of these claims of the Midwest Patents by others and contributed to the infringement of these claims of the Midwest Patents by others.

Soilworks denies that it has infringed claims any claim of the Midwest Patents. Your job will be to decide whether any claims of the Midwest Patents have been infringed. If you decide that any claim of the Midwest Patents has been infringed, you will then need to

decide any money damages to be awarded to Midwest to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

**Source:**  Model Patent Jury Instructions for the Northern District of California

**Soilworks' objections**: Midwest has asserted no claim for contributory infringement or inducement.

GIVEN
GIVEN AS MODIFIED    _____
REFUSED    _____
WITHDRAWN    _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**Standards of Proof**

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.

Midwest will present its evidence on its contention that some of the claims of the Midwest Patents have been and continue to be infringed by Soilworks and that the infringement has been and continues to be willful. To prove infringement of any claim, Midwest must persuade you that it is more likely than not that Soilworks has infringed that claim. To persuade you that any infringement was willful, Midwest must prove that it is highly probable that the infringement was willful.

Soilworks will put on evidence responding to Midwest's infringement and willfulness contention.

Midwest will then return and will have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Soilworks of non infringement or lack of willfulness.

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection:** Duplicative of earlier instruction.

GIVEN
GIVEN AS MODIFIED _____
REFUSED
WITHDRAWN _____
_____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. \_\_\_\_\_**
**INFRINGEMENT – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Midwest has proven that Soilworks has infringed one or more of the asserted claims of the Midwest Patents. To prove infringement of any claim, Midwest must persuade you that it is more likely than not that Soilworks has infringed that claim.

**Source:** *Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); Seal-Flex, Inc. v. Athletic Track and Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); Morton Int'l, Inc. v. Cardinal Chem. Co., 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: Duplicative of earlier instruction.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. The second step is to decide whether Soilworks has made, had made for it, used, sold or offered for sale a product or method covered by a claim of the Midwest Patents. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Soilworks' Durasoil product and the method of applying Durasoil infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

Authorities

*35 U.S.C. § 271; Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 11 (Fed. Cir. 2005); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); Seal-Flex, Inc. v. Athletic Track and Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. \_\_\_\_\_**
**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that Soilworks's Durasoil product and the method of applying Durasoil does not literally infringe an asserted patent claim, you must then decide whether that Durasoil product and the method of applying Durasoil infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the Durasoil product and the method of applying Durasoil can infringe an asserted patent claim if its composition or method are identical or equivalent to the requirements of the claim. If the Durasoil product and the method of applying Durasoil is missing an identical or equivalent composition or method to even one requirement of the asserted patent claim, the Durasoil product and the method of applying Durasoil cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the Durasoil product and the method of applying Durasoil has either an identical or equivalent composition or method to that individual claim requirement.

The composition of the Durasoil product and the method of applying Durasoil is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the composition or method and the claim requirements were not substantial as of the time of the alleged infringement.

Another way to decide whether any difference between composition of the Durasoil product and the method of applying Durasoil is not substantial is to consider whether, as of the time of the alleged infringement, the Durasoil product and the method of applying

4823-5708-5955.1

Durasoil performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the Durasoil product and the method of applying Durasoil is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the composition or method with the claimed requirement. The known interchangeability between the claim requirement and the composition or method of the Durasoil product and the method of applying Durasoil is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the composition or method in the Durasoil product and the method of applying Durasoil and the claim requirement is not substantial. The fact that the Durasoil product and the method of applying Durasoil performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Authorities

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950); Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1378 (Fed. Cir. 2005); Johnson & Johnston Assoc. v. R.E. Service Co., 285 F.3d 1046 (Fed. Cir. 2002) (en banc); Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998); Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 397 (Fed. Cir. 1994).*

**Source:**  Model Patent Jury Instructions for the Northern District of California.

```
GIVEN
GIVEN AS MODIFIED    _____
REFUSED              _____
WITHDRAWN            _____
```

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**INDIRECT INFRINGEMENT – GENERALLY**

Midwest also argues that Soilworks contributed to infringement by another and/or induced another to infringe the claims of the '270 Patent. Soilworks cannot contributorily infringe or induce infringement unless Midwest proves that someone other than Soilworks directly infringes the '270 Patent claim by making, using, selling, offering for sale or importing a Durasoil product and the method of applying Durasoil that includes all of the requirements of the asserted claims. If there is no direct infringement, Soilworks cannot have contributed to infringement or induced infringement.

Authorities

*Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: Inducing infringement and contributory infringement were not pled.

GIVEN
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**CONTRIBUTORY INFRINGEMENT**


Midwest [also] argues that Soilworks has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Soilworks, someone other than Soilworks must directly infringe a claim of the Midwest Patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the Midwest Patents, then contributory infringement exists if Soilworks supplied an important component of the infringing part of the method.


Authorities

*35 U.S.C. § 271(c); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476 (1964); DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1303 (Fed. Cir. 2006); Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365 (Fed. Cir. 2001); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990); Preemption Devices, Inc. v. Minn. Mining & Mfr. Co., 803 F.2d 1170, 1174 (Fed. Cir. 1986).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: Inducing infringement and contributory infringement were not pled.

GIVEN                               _____
GIVEN AS MODIFIED   _____
REFUSED                          _____
WITHDRAWN               _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**INDUCING PATENT INFRINGEMENT**

Midwest argues that Soilworks has actively induced another to infringe the Midwest Patents. In order for there to be inducement of infringement by Soilworks, someone else must directly infringe a claim of the Midwest Patents; if there is no direct infringement by anyone, there can be no induced infringement. In order to be liable for inducement of infringement, Soilworks must:

1. have intentionally taken action that actually induced direct infringement by another;

2. have been aware of the '270 Patent; and

3. have known or should have known that its actions would cause direct infringement by another.

In order to prove induced infringement, Midwest must either prove that the method of applying Durasoil necessarily infringes the '270 Patent or prove acts of direct infringement by others that were induced by Soilworks. Midwest must further prove the number of direct acts of infringement of the '270 Patent because the amount of damages for induced infringements is limited by the number of specific instances of direct infringement.


Authorities

*35 U.S.C. § 271(b); Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd., 2007 U.S. App LEXIS 21822 (Fed. Cir. 2007); DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (en banc) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005)); Metabolite Labs., Inc. v. Lab. Corp. of Am., 370 F.3d 1354, 1365 (Fed. Cir. 2004); Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1274-76 (Fed. Cir. 2004); Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega Systems, LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003).*

**Source:**  Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: Inducing infringement and contributory infringement were not pled.

GIVEN
GIVEN AS MODIFIED   _____
REFUSED                    _____
WITHDRAWN            _____

## DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____
## WILLFUL INFRINGEMENT

In this case, Midwest argues that Soilworks willfully infringed the Midwest's Patents.

To prove willful infringement, Midwest must first persuade you that Soilworks infringed a claim of the Midwest's Patents. The requirements for proving such infringement were discussed in my prior instructions.

If you find by a preponderance of the evidence that [the Defendant] infringed [the Plaintiff]'s patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.     Soilworks was aware of Midwest's patents,

2.     Soilworks acted despite an objectively high likelihood that its actions infringed a valid patent, and

3.     This objectively high likelihood of infringement was either known or so obvious that it should have been known to Soilworks.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Soilworks intentionally copied the claimed invention or a product covered by Midwest's patent, whether Soilworks relied on competent legal advice , and whether Soilworks presented a substantial defense to infringement, including the defense that the patent is invalid.


Authorities:

*In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc).*

**Source:** Model Patent Jury Instructions American Intellectual Property Association 2008.

**Soilworks' Objection**: Willful patent infringement was not pled.

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

**DAMAGES – BURDEN OF PROOF**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Soilworks infringed any claim of the Midwest Patents, you must then determine the amount of money damages to be awarded to Midwest to compensate it for the infringement.

The amount of those damages must be adequate to compensate Midwest for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Midwest has the burden to persuade you of the amount of its damages. You should award only those damages that Midwest more likely than not suffered. While Midwest is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Midwest is not entitled to damages that are remote or speculative.

Authorities

*Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); Grain Processing Corp. v. American Maize-Prod. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: Duplicative of Standard Instruction.

GIVEN
GIVEN AS MODIFIED ‗‗‗‗‗‗‗
REFUSED
WITHDRAWN ‗‗‗‗‗‗‗

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. \_\_\_\_\_**
**LOST PROFITS – GENERALLY**

In this case, Midwest seeks to recover lost profits for some of Soilworks' sales of Durasoil, and a reasonable royalty on the rest of Soilworks' sales.

To recover lost profits for infringing sales, Midwest must show that but for the infringement there is a reasonable probability that it would have made sales that Soilworks made of the infringing product. Midwest must show the share of Soilworks' sales that it would have made if the infringing product had not been on the market.

Authorities

*35 U.S.C. § 284; Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 502-07 (1964); Beauregard v. Mega Sys., LLC, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); Central Soya Co. v. George A. Hormel & Co., 723 F.2d 1573, 1579 (Fed. Cir. 1983); Lam, Inc. v. Johns-Mansville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**LOST PROFITS – FACTORS TO CONSIDER**

Midwest is entitled to lost profits if it proves all of the following:

(1)     that there was a demand for the patented Durasoil product and the method of applying Durasoil;

(2)     that there were no non-infringing substitutes, or, if there were, the number of the sales made by Soilworks that Midwest would have made despite the availability of other acceptable non-infringing substitutes.   An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.   Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Soilworks had to design or invent around the patented technology to develop an alleged substitute;

(3)     that Midwest had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Midwest seeks an award of lost profits; and

(4)     the amount of profit that Midwest would have made if Soilworks had not infringed.

Authorities

*Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed. Cir. 2003); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); Carella v. Starlight Archery, 804 F.2d 135,*

*141 (Fed. Cir. 1986); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552 (Fed. Cir. 1984); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN
GIVEN AS MODIFIED _____
REFUSED
WITHDRAWN _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**LOST PROFITS – MARKET SHARE**

One way Midwest may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products. You may award Midwest a share of profits equal to that market share.

In deciding Midwest's market share, you must decide which products are in Midwest's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

Authorities

*Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1124 (Fed. Cir. 2003); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection**: No claims, disclosure or evidence of market share.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**

**Lost Profits – Doubts Resolved Against Infringer**

All doubts resulting from Soilworks' failure to keep proper records are to be resolved in favor of Midwest.  Any incorrectness or confusion in Soilworks' records should be held against Soilworks, not Midwest.


Authorities:

*Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).*


**Source:**  Model Patent Jury Instructions American Intellectual Property Law Association.

**Soilworks' Objection**: Not supported by claimed authority – not an accurate statement of the law.


GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**REASONABLE ROYALTY – ENTITLEMENT**

If Midwest has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Midwest should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

Authorities

*35 U.S.C. § 284; Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336 (Fed. Cir. 2001); Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).*

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Soilworks' Objection:** Not an accurate statement of the law.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

# DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____
## REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

You may not limit or increase the royalty based on the actual profits Soilworks made.

Authorities

*Golight, Inc., v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.,* 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**Source:**  Model Patent Jury Instructions for the Northern District of California.


GIVEN          _____

GIVEN AS MODIFIED   _____
REFUSED   _____
WITHDRAWN   _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**DATE OF COMMENCEMENT – PRODUCTS**

Damages that Midwest may be awarded by you commence on the date that Soilworks has both infringed and been notified of the Midwest Patents, which was July 11, 2006.

Authorities

*35 U.S.C. § 287; Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336 (Fed. Cir. 2001); Nike Inc. v. Wal-Mart Stores, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); Maxwell v. Baker, Inc., 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); American Med. Sys. v. Medical Eng'g Corp., 6 F.3d 1523, 1534 (Fed. Cir. 1993); Devices for Med., Inc. v. Boehl,* 822 F.2d 1062, 1066 (Fed. Cir. 1987).

**Source:** Model Patent Jury Instructions for the Northern District of California.

**Objection:** Misstates the law. A person cannot be liable for damages for infringement prior to the date the patent(s) issues.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**GLOSSARY**

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Continuation Application:  A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product or method that contains the claimed invention.

Examination: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement: Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for non-infringing uses.

Limitation: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Patent: A patent is an exclusive right granted by the U.S. Patent and Trademark

Office to an inventor to prevent others from making, using or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued). When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO): An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

Patent Examiners – Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

Prosecution History: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Royalty: A royalty is a payment made to the owner of a patent by a non-owner in

exchange for rights to make, use or sell the claimed invention.

Specification: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

**Source:** Model Patent Jury Instructions for the Northern District of California.

GIVEN
GIVEN AS MODIFIED _____
REFUSED _____
WITHDRAWN _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**UNJUST ENRICHMENT**

Midwest has asserted an unjust enrichment claim against Soilworks. In order to establish an unjust enrichment claim, a plaintiff must demonstrate: (1) enrichment by the defendant; (2) impoverishment by the plaintiff (c) a connection between impoverishment and enrichment; (d) the absence of justification for the enrichment and impoverishment, and (e) the absence of a legal remedy.

**Source:** *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. App. 1995)

GIVEN
GIVEN AS MODIFIED  _____
REFUSED
WITHDRAWN  _____

**DEFENDANT'S PROPOSED JURY INSTRUCTION NO. _____**
**UNJUST ENRICHMENT - DAMAGES**

If you find in favor of Midwest Industrial Supply on its unjust enrichment claim, the damages that you as the jury may award for this claim are *quantum meruit*-based damages. Quantum meruit is the measure of damages for unjust enrichment and should reflect the benefit conferred to Soilworks at Midwest Industrial Supply's expense.

**Source:**  *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. App. 1995); Model Jury Instructions for the State of Arizona.

GIVEN
GIVEN AS MODIFIED  _____
REFUSED  _____
WITHDRAWN  _____

| | |
|---|---|
|     /s E. Scott Dosek     |     /s Craig Marvinney     |
| Attorney for Plaintiff | Attorney for Defendant |
| Soilworks LLC | Midwest Industrial Supply, Inc. |