# Exhibit 4

# COURT REPORTERS
## OF AKRON CANTON AND CLEVELAND

Transcript of the Testimony of
# Todd Rhett Hawkins

**Taken On:** August 20, 2008
**Case Number:** 2:06-CV-2141-DGC

**Case:** Soilworks, LLC, vs. Midwest Industrial Supply, Inc.,

Court Reporters of Akron Canton and Cleveland
Phone: 800-804-7787
Fax: 330-666-9833
Email: reporters@courtreportersinc.com
Internet: www.courtreportersinc.com

**122**

1  A. Personally, no.
2  Q. Do you know if anyone else at Midwest
3  Industrial Supply ever did?
4  A. I don't know.
5  Q. So if I can just kind of go back and
6  summarize a little bit with respect to
7  Exhibit 23, in the first two pages, which
8  constitutes essentially a letter to the Patent
9  and Trademark Office, correct?
10  A. Correct.
11  Q. And that letter was written because it was
12  the feeling of the applicant, in January of '05,
13  or the belief of the applicant in January of
14  '05, that there was an infringing device or
15  product actually on the market, correct?
16  A. Correct.
17  Q. And that one of those products was the
18  Soilworks Durasoil product?
19  A. Yes.
20  Q. For which no chemical testing or analysis
21  had been done by you at that point, correct?
22  A. I personally had not done any chemical
23  analysis.
24  Q. Are you aware of any that had been done?
25    MR. SKERIOTIS: Objection, based

**123**

1  upon -- same objection I lodged in the prior
2  depositions, that with respect to any testing
3  that's been done pursuant to an attorney or not,
4  we maintain the attorney work product.
5    If there was any testing done prior
6  to any attorney being involved and prior to this
7  litigation, you are free to answer that
8  question.
9    MR. DOSEK: I don't think there
10  is any work product in January of '05, John.
11    MR. SKERIOTIS: You didn't limit it
12  to January '05.
13    MR. DOSEK: Well, January '05
14  is the time that this exhibit was prepared,
15  Exhibit 23.
16    THE WITNESS: I am thoroughly
17  confused now.
18  BY MR. DOSEK:
19  Q. Okay.
20  A. If you would re --
21  Q. Fine, we will back up.
22    As of January '05, are you aware of any
23  chemical analysis or any other kind of analysis
24  that had been performed by or on behalf of
25  Midwest Industrial Supply with respect to the

**124**

1  Durasoil product?
2    MR. SKERIOTIS: Same objection. I
3  mean, if, in fact, some testing was done, it
4  would be in anticipation of litigation. So to
5  the degree that your objection is -- I mean, it
6  clearly references "allegedly infringing
7  product," and should Midwest have received the
8  patent as these claims were drafted on page 3, I
9  would assume litigation would be anticipated;
10  and therefore, I would maintain the objection.
11    And if, in fact, any of your response
12  would be that any testing or not was done with
13  an attorney present, then I instruct you not to
14  answer that question, unless you have knowledge
15  prior to any attorney being involved, of any
16  testing done.
17    THE WITNESS: I have no knowledge
18  of any testing being done without the attorney
19  being present.
20  BY MR. DOSEK:
21  Q. Do you have knowledge of testing being done
22  with an attorney present?
23    MR. SKERIOTIS: Objection.
24  Instruct you not to answer. Same objection.
25    MR. DOSEK: And you are

**125**

1  claiming that whether or not he knows whether
2  there was any testing done by any lawyer is
3  privileged?
4    MR. SKERIOTIS: Yes. It's attorney
5  work product, absolutely. Because then you
6  would know whether or not any testing was done.
7  And that whether or not any attorney did any
8  testing on any product pursuant to this
9  litigation in anticipation thereof is absolutely
10  privileged.
11    MR. DOSEK: And you're --
12    MR. SKERIOTIS: And that's the same
13  objection, Scott, I've noted in the Detloff
14  deposition and the Vitale deposition as well,
15  and I have never been questioned until today.
16  So --
17    MR. DOSEK: Well, just because
18  you haven't been questioned doesn't mean that
19  your objection is not ill founded, because it
20  is, John, particularly when you are talking
21  about something that is in the time frame of
22  January of '05, a year and a half before any of
23  the -- before the patent was issued, before any
24  of this --
25    MR. SKERIOTIS: Sure.

**Page 126**

1  MR. DOSEK: -- controversy ever
2  arose.
3  MR. SKERIOTIS: You are absolutely
4  true.
5  MR. DOSEK: That is akin to an
6  insurance company claiming work product whenever
7  it drafts an insurance policy, because there may
8  be litigation about the insurance policy.
9  And, John, you know as well as I do
10  that the attorney work product doctrine does not
11  extend that far.
12  MR. SKERIOTIS: And I think we
13  disagree with respect to patent cases,
14  especially where you've got a document, Scott,
15  that says that they believe that there is a
16  product that is being infringed. How that's not
17  in anticipation of litigation is beyond question
18  to me.
19  So I am maintaining the objection and
20  you are welcome to disagree with it.
21  MR. DOSEK: All right. Just so
22  I am clear then, you are saying that this, in
23  January of '05, constitutes something that is in
24  anticipation of litigation, even though you
25  filed, in your motion to dismiss this lawsuit,

**Page 127**

1  an argument that your letters to Polar Supply in
2  the summer of '06 did not constitute threats of
3  litigation, is that what you are saying?
4  MR. SKERIOTIS: That's exactly what
5  I am saying, with one caveat.
6  MR. DOSEK: Okay.
7  MR. SKERIOTIS: If you would take a
8  look, Scott, at page 3, the claim at issue is "A
9  compound for chemical soil stabilization and
10  dust control, the compound comprising: a
11  synthetic isoalkane," period. If that claim
12  were to have issued, that is exactly my
13  position.
14  BY MR. DOSEK:
15  Q. Are you aware of any chemical analysis or
16  testing that has been done with respect to the
17  Durasoil product?
18  MR. SKERIOTIS: Same objection.
19  Other than if an attorney was working on it --
20  THE WITNESS: Same answer as I
21  gave before.
22  MR. DOSEK: And you are saying,
23  John, that whether he knows if any such testing
24  has even been done -- I am not asking him for
25  the results of any such testing -- whether he

**Page 128**

1  knows whether any such testing has been done is
2  privileged and work product?
3  MR. SKERIOTIS: If an attorney was
4  present, correct. You can ask him that
5  question, if an attorney wasn't present, if it
6  was done, yeah. That's exactly what I am
7  saying.
8  BY MR. DOSEK:
9  Q. The question was, are you aware of any
10  testing that's been done, chemical testing of
11  the Durasoil product, by anybody?
12  MR. SKERIOTIS: Same objection.
13  THE WITNESS: Same answer. Not
14  without the attorney present.
15  BY MR. DOSEK:
16  Q. So you are aware of testing of the Durasoil
17  product that was done under the supervision of
18  lawyers; is that correct?
19  MR. SKERIOTIS: Objection. Again,
20  he already asked and answered this question
21  already. So, I mean, to the degree you got your
22  answer, you got your answer. Let's move on.
23  You are just asking the same question a
24  different way.
25

**Page 129**

1  BY MR. DOSEK:
2  Q. You are not aware of any testing of the
3  Durasoil product that's ever been done by the
4  Corps of Engineers?
5  A. Yes, I am aware of testing that was done to
6  the Durasoil product through the Corps of
7  Engineers. Chemical testing, no.
8  Q. What kind of testing are you referring to?
9  A. They were involved -- Durasoil was a
10  product that was tested at Yuma, Arizona the
11  following year that -- my previous reference.
12  Q. Is it fair to characterize that testing at
13  Yuma as performance testing?
14  A. Yes.
15  Q. As opposed to chemical analysis?
16  A. Yes.
17  (Thereupon, Plaintiff's Exhibit 10 of
18  the T.R. Hawkins deposition was
19  marked for purposes of
20  identification.)
21  THE WITNESS: Can I take a
22  lavatory break here real quick?
23  MR. DOSEK: You bet. You bet.
24  THE VIDEOGRAPHER: We're off the
25  record.

COURT REPORTERS OF AKRON CANTON AND CLEVELAND
330-666-9800          330-452-2400          216-621-6969