DIANE J. HUMETEWA
United States Attorney

G. PATRICK JENNINGS
Trial Attorney, Tax Division
U.S. Department of Justice
PO Box 683
Ben Franklin Station
Washington DC 20044-0683
Telephone:   (202) 307-6648
Facsimile:    (202) 307-0054
Guy.P.Jennings@usdoj.gov

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ARIZONA

| | |
|---|---|
| GOLDEN WEST HOLDINGS TRUST;<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and INTERNAL REVENUE SERVICE,<br><br>    Defendants.<br><br>AND CONSOLIDATED CASES | Case No. 05-2237 PHX SMM (LEAD)<br>Case No. 05-2239 PHX JAT (CONS.)<br>Case No. 05-2238 PHX JAT (CONS.)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |

The United States submits this memorandum in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**Brief Factual Summary**

The United States incorporates by this reference its Separate Statement of Facts submitted herewith.  A brief summary follows.

In April, 2005, Internal Revenue Service Agents executed a jeopardy levy against the property of William G. Wadman, V, ("Wadman") in Florida, where Wadman and

Philip R. Black then resided. Wadman had engaged in a fraudulent federal tax refund scheme that had been discovered just before the jeopardy levy. The fraudulent refund scheme was the only significant source of income for Wadman. Despite receiving little or no income, Wadman fraudulently obtained tax refunds in excess of $1.2 million for the 2001 through 2004 tax years in his name and in the name of nominee entities. $1.6 million of false refund claims were frozen just before the jeopardy levy, which apparently motivated Wadman to flee Florida and create new nominees. At the time of the jeopardy levy, Wadman's three Florida properties were listed for sale.

Wadman attempted to conceal his assets from IRS collection by taking title in the name of purported entities which he in fact created and controlled. These entities were Golden West Holdings Trust ("GWHT") and Tri-Star Real Estate Investment Trust ("Tri-Star"). Wadman also used these entities to advance and expand the fraudulent refund scheme. Wadman signed each of the tax returns of GWHT and Tri-Star, forms that also contained forged signatures of a law firm as the return preparer, but which were not in fact prepared by that firm. (Facts, ¶ 25-31, Salkin Decl.).

Forms 1099 report to the IRS payments to independent contractors from a business, among other things. Wadman's fraudulent refund scheme consisted of the submission of false income tax returns with numerous fake Forms 1099 attached. Each of the fake Forms 1099 (1) listed substantial income purportedly paid by a publicly-traded corporation to Wadman, GWHT, or Tri-Star, and (2) falsely claimed that 30% of the income was purportedly paid to the IRS as withheld federal income tax.[1] The income tax returns claimed that the tax had been withheld in excess of the tax due, and requested a "refund" of the purported overpayment. In fact, no work had been done for the companies listed on the Forms 1099, no compensation paid to Wadman or the

---

[1] The use of publicly-traded corporations made it more difficult for the IRS to discover the fraud given the sheer volume of payments made each year by such entities.

entities, no tax payments had been made to the IRS as reported on the fake Forms 1099, and none of the companies had ever heard of Wadman, GWHT, or Tri-Star. The complete absence of any work performed is supported by the fact that the fraudulently-obtained refunds are virtually the only deposits to the bank accounts of Wadman, GWHT, and Tri-Star. The scheme was discovered just before the jeopardy levy, and IRS records indicate that Mr. Wadman telephoned the IRS to inquire about the intercepted refunds. (Decl. Bloxham, ¶ 10).

Wadman, with his close associate, Philip R. Black, controlled GWHT and Tri-Star. The fraudulently-obtained refunds were used by Wadman to purchase real estate enjoyed by Wadman and Black and to refurbish those properties. The funds also supported an expensive hobby – collecting classic cars. Another example of personal enjoyment of the funds is that Wadman spent more than $30,000 of these funds on a single piece of jewelry, a bracelet.

Wadman commenced this action by contesting the jeopardy levy, complaining that the IRS had no reasonable cause to engage in summary collection action. GWHT and Tri-Star each filed wrongful levy actions, contending that they were improper targets of levies to collect Wadman's tax liabilities. In their Second Amended Complaint, Wadman, GWHT, and Tri-Star seek return of the cash, real property, and personal property seized, but do not identify which property belongs to which plaintiff. The three cases have been consolidated in this action.

**ISSUES PRESENTED**

1. Whether agents of the Internal Revenue Service had a good faith belief that the collection of tax from William G. Wadman, V, was in jeopardy.
2. Whether Golden West Holdings Trust and Tri-Star Real Estate Investment Trust, are nominees, alter egos, or fraudulent transferees of Wadman.

**ARGUMENT**

1. **The jeopardy levy was reasonable under the circumstances.**

Jeopardy levies are made when the Internal Revenue Service believes that the normal procedures for collecting taxes will not be effective. Ordinarily, a taxpayer is entitled to advance notice of a levy or seizure under 26 U.S.C. ("I.R.C.") § 6330 ("collection due process"). Section 6330(f) makes an exception to the advance notice requirement for circumstances in which the collection of tax is in jeopardy. The general levy statute, I.R.C. § 6331(a) also permits immediate levy where collection is in jeopardy.

A taxpayer against whom a jeopardy levy has been made may seek administrative review of the reasonableness and appropriateness of the levy by requesting such administrative review within 30 days after the day on which the taxpayer is furnished a written statement of the information upon which the IRS relies in making a jeopardy levy. See I.R.C. § 7429(a)(2); see also § 7429(a)(3). Wadman sought administrative review and the collection action was sustained. Wadman then filed this action to challenge the jeopardy levy. 26 U.S.C. § 7429(b).

**Legal Standard**

The scope of the determination under I.R.C. § 7429 is summary and is limited to one question: (1) whether the jeopardy levy is reasonable under the circumstances.[2] *See* 26 U.S.C. § 7429(b)(3); *Varjabedian v. United States*, 339 F. Supp. 2d. 140, 144 (D. Mass. 2004); *Wellek v. United States*, 324 F. Supp. 2d. 905, 911 (N.D. Ill. 2004); *Magluta v. United States*, 952 F.Supp. 798, 801 (S.D. Fla. 1996); *Young v. United States*, 671 F.Supp. 1340, 1343 (S.D. Fla. 1987). The determination is not designed to establish the taxpayer's ultimate liability for the taxes that are at issue. *See Varjabedian*, 339 F. Supp. 2d. at 144 (citing *Rey Balaguer v. United States*, 656 F.

---

[2] Ordinarily a jeopardy assessment is made with a jeopardy levy. In this case, as discussed below at page 10, the tax deficiency procedures are not applicable and Wadman's tax liability was summarily assessed. The reasonableness of the amount of the jeopardy assessment is thus not at issue in this case.

- 4 -

Supp. 383, 385 (D. P.R. 1987)). That may be adjudicated in a later proceeding brought by the taxpayer in Tax Court, Court of Federal Claims, or a United States district court.

"The standards for determining whether a jeopardy levy under § 7429 is reasonable are the same as those for determining the reasonableness of a jeopardy assessment." *Friedman v. United States*, 2002 WL 31495842 p.6, n.8; 90 A.F.T.R.2d 2002-6998 (N.D.Ga. 2002). This brief will therefore use the terms 'jeopardy levy' and 'jeopardy assessment' interchangeably when discussing the standard to determine whether collection is in jeopardy.

I.R.C. § 7429 is a "summary proceeding in which hearsay and other usually inadmissible evidence may be considered, and rough determinations must necessarily be made." *Hurst v. United States*, 47 A.F.T.R.2d 81-509 (N.D.Fla.1980); *Central De Gas De Chihuahua, S.A. v. United States*, 790 F.Supp. 1302, 1304 (W.D.Tex. 1992).

It has been said that judicial review under I.R.C. § 7429 is similar to a preliminary examination for probable cause in a criminal proceeding. *United States v. Doyle*, 482 F. Supp. 1227, 1229 (E.D. Wis. 1980), *appeal dismissed*, 660 F. 2d 277 (7th Cir. 1981); *Nolan v. United States*, 539 F. Supp. 788, 790 (D. Ariz 1982).

Under I.R.C. § 7429(g)(1), the United States bears the burden of demonstrating whether the jeopardy assessment or jeopardy levy is "reasonable under the circumstances." While § 7429 does not set forth specific guidelines as to what constitutes "reasonable under the circumstances," the courts have stated that this term means "something more than not arbitrary and capricious and something less than supported by substantial evidence." *Felkel v. United States*, 570 F. Supp. 833, 838 (D. S.C. 1983); *Loretto v. United States*, 440 F. Supp. 1168, 1172 (E.D. Pa. 1977).

The general test the courts have used to determine whether the making of a jeopardy levy is reasonable includes, but is not limited to, an inquiry into whether (1) the taxpayer is or appears to be planning to quickly depart from the United States or to conceal himself; or (2) the taxpayer is or appears to be designing to place his property beyond the reach of the Government either by removing it from the United States or by

concealing it, or by transferring it to other persons, or by dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled. *Varjabedian*, 339 F. Supp. 2d. at 155; *Wellek*, 324 F. Supp. 2d. at 912; *Cantillo v. Coleman*, 559 F. Supp. 205, 206-7 (D. N.J. 1983). If any one of the above three conditions is found to exist, the making of a jeopardy assessment is reasonable. *See Nolan v. United States*, 539 F. Supp. 788, 790 (D. Ariz. 1982), citing S. Rep. No. 94-938, p. 365 n. 6, reprinted at 1976 U.S. Code Cong. & Ad. News at 3795.

Further, a taxpayer's involvement in **illegal activity** alone is sufficient to warrant the use of a jeopardy assessment or levy. *Harvey v. United States*, 730 F. Supp. 1097, 1103 (S.D. Fla. 1990); *Young v. United States*, 671 F.Supp. 1340, 1343 (S.D.Fla.1987); *White v. United States*, 754 F.Supp. 66, 67 (M.D. N.C. 1991), *Guillaume v. Commissioner*, 290 F.Supp.2d 1349, 1354 (S.D. Fla. 2003); *Magluta v. United States*, 952 F.Supp. 798, 802 (S.D. Fla. 1996). Involvement in illegal activity shows the reasonableness of a jeopardy levy because it is suggestive of any one of the above-listed factors, as such activity often involves evasion or concealment. *Mueller v. Commissioner*, 882 F.Supp. 1060, 1062 (S.D. Fla.1995); *Harvey v. United States*, 730 F.Supp. at 1106. Thus, Wadman's involvement in tax-related criminal activity indicates a jeopardy determination was reasonable. *Harvey v. United States*, 730 F.Supp. at 1106.

Other factors may also support the making of a jeopardy assessment. The court may consider: (1) whether the taxpayer possesses, or deals in, large amounts of cash; (2) whether prior tax returns reporting little or no income despite possession of large amounts of cash; (3) whether assets have been dissipated through forfeiture, expenditures for attorney's fees, appearance bonds; (4) whether there is a lack of assets from which potential tax liability can be collected; (5) whether the taxpayer has used aliases which makes it more difficult to locate either the taxpayer or his assets; (6) whether the taxpayer has failed to supply appropriate financial information; and (7) whether the taxpayer has used multiple addresses, making it hard to find the taxpayer.

*Mesher v. United States*, 736 F.Supp. 233, 235-36 (D. Or.1990); *Magluta v. United States*, 952 F.Supp. 798 (S.D. Fla. 1996) (several factors including involvement in illegal activity, possession of large amounts of cash, prior tax returns reporting little or no income despite possession of large amounts of cash); *Bean v. United States*, 618 F. Supp. 652, 658 (N.D. Ga. 1985)(listing numerous factors); *Simpson v. Internal Revenue Service*, 573 F.Supp. 146 (M.D. Tenn. 1983) (alleged involvement in criminal enterprise, possession of large amounts of cash and failure to file tax returns); *Vernon v. United States*, 586 F.Supp. 115 (M.D.N.C. 1984) (involvement in illegal drug activities, cash and drugs found in home, small amounts of income previously reported by taxpayer, evidence of major cash purchases).

Courts have also found that **erratic fiscal behavior** can satisfy the general test for reasonableness when the fiscal behavior is the kind that suggests tax dollars are in jeopardy. *Welleck v. United States*, 324 F.Supp.2d 905, 912 (N.D. IL. 2004) ($12 million in musty cash in a warehouse, failure to file tax returns).

**Evidentiary Standard**

In light of the fact that the proceeding is intended to be summary in nature with the United States merely required to establish reasonableness of the assessment, the proof the United States can use to satisfy its burden of proof under I.R.C. § 7429(g)(1) need not be in a form that satisfies the requirements of the Federal Rules of Evidence. *Miller v. United States*, 615 F. Supp. 781, 786 (N.D. Ohio 1985); *Marranca v. United States*, 587 F. Supp. 663, 668 (M.D. Pa. 1984). While the United States bears the burden of demonstrating reasonableness of the jeopardy assessment and jeopardy levy, the burden is light because "(1) the IRS does not have to show that the information it relied upon in making the assessments would be admissible at trial on the merits and (2) the government is not required to make its final case against the taxpayer, but only a preliminary showing of reasonableness." *Hiley v. United States*, 807 F.2d 623, 629 (7th Cir. 1986). Furthermore, it is not essential that each specific item of information upon which the jeopardy assessment or levy is based be accurate in order for the jeopardy

determination to be reasonable under § 7429.  *Serpa v. United States*, 1981 WL 1759, 81-1 U.S.T.C. ¶9323, (D. Neb. 1981).

In determining whether the assessment or levy is reasonable, the Court is to take into account not only information available to the Internal Revenue Service at the time of the jeopardy levy, but also any other information which bears on the issues before it. *Haskin v. United States*, 444 F. Supp. 299, 304 (C.D. Cal. 1977) (citing S. Rep. No. 94-938 at 365) (wilful failure to file corporate income tax returns); *see also Magluta*, 952 F.Supp. at 801; *Harvey*, 703 F.Supp. at 1104.

Appearances are what count:  "In order to establish that the making of a jeopardy levy is reasonable under the circumstances, the Service "need only establish that the taxpayer's circumstances appear to be jeopardizing collection of a tax—not whether they definitely do so."  *Miller v. United States*, 615 F. Supp. 781, 786 (N.D. Ohio 1985) (quoting *Cantillo*, 559 F. Supp. at 207); *Bean*, 618 F. Supp. at 658 ("Whether Bean in fact intended to depart the country, liquidate his assets and thereby avoid payment of his taxes is irrelevant").

**The Jeopardy levy was reasonable in this case**

The fact that Wadman appears to be the perpetrator of a massive fraudulent tax refund scheme is – without more – sufficient to uphold the IRS determination that tax collection was in jeopardy.  *Harvey v. United States*, 730 F. Supp. 1103; *Young v. United States*, 671 F.Supp. 1343.  The fraudulent refund scheme was discovered just before the jeopardy levies, and IRS records indicate that Mr. Wadman telephoned the IRS to inquire about the status of the "refunds" which had been intercepted by the IRS. (Decl. Bloxham, ¶ 10).  The interception of these fraudulent claims is likely to have alerted Wadman that his scheme had been discovered, likely stimulating a desire to flee and conceal himself and his property.  Wadman left Florida just after the Service seized his ill-gotten goods.  Multiple addresses, such as Wadman's shift from Florida to Arizona, make it hard to find the taxpayer, supporting a finding of jeopardy. *Mesher v.*

*United States*, 736 F.Supp. 235-36. Wadman's behavior includes many more jeopardy factors in addition to that of association with illegal activity.

Wadman was previously convicted of a crime of dishonesty, and was incarcerated for years after his conviction. Using the name Gary Alan Emerson, he was convicted of presenting false statements to financial institutions in violation of 18 U.S.C. § 1014 . *United States v. Gary A. Emerson*, CR94-00488-TJH (C.D. Cal. 1995). (Declaration of G. Patrick Jennings, Ex. 9). One condition of his probation was that Wadman "shall use only his true and legal name." On January 24, 2001, Wadman violated the terms of his parole and his probation was revoked. (Jennings Decl., Ex. 9). Conviction of a crime of dishonesty shows a willingness to lie which makes concealment of assets, a primary jeopardy factor, much more likely. Attempts to evade capture are more likely when the perpetrator knows the consequences of being caught. This is precisely Wadman's circumstances as his fraudulent refund scheme was discovered just before the jeopardy levy. The first thing Wadman did after leaving Florida and setting up shop in Arizona was to create a new nominee, Atlantic Industries Corporation, to conceal the money he had stolen.

While on probation, Wadman departed the jurisdiction without permission, and his probation was revoked. Wadman has demonstrated his proclivity to depart from a jurisdiction, even when legally bound to stay. *White v. United States*, 754 F.Supp. 66, 67 (M.D. N.C. 1991) (probation violation a factor showing jeopardy). Wadman's three Florida properties were listed for sale before the jeopardy levy, also demonstrating his intent to depart from Florida and place his assets beyond the government's reach.

Wadman filed federal tax returns under multiple names and was convicted under a different name. Of course, use of an alias makes it more difficult to locate the taxpayer and his assets and by itself puts the collection of his tax in jeopardy. *Magluta*, 952 F.Supp. at 802. Wadman's demonstrated willingness to forge documents to banks and to the IRS further jeopardizes collection by facilitating the creation of new fake identities.

In addition to illegal activity, a primary factor applicable to Wadman is the use of **nominees** or shell corporations to conceal possession of property. *E.g., Varjabedian v. United States*, 339 F.Supp.2d 140, 156 (D. Mass. 2004) (safe deposit box in name of sister). Wadman's use of nominees, GWHT, Golden West Holdings LLC, Atlantic Industries Corporation, Metropolitan Partners Southwest, LLP, and Tri-Star, to conceal property is discussed in detail in the second section of this brief beginning at page 11, below. Wadman attempted to conceal his assets from IRS collection by taking title in the name of purported entities which he in fact created and controlled, GWHT and Tri-Star. Wadman also used these entities to advance and expand the fraudulent refund scheme. The large, fraudulently-obtained tax refunds are liquid and easily transferrable beyond the reach of the United States. The use of shell corporations indicates an aversion toward voluntary compliance with the federal income tax laws which renders normal tax collection proceedings ineffective. *Harvey*, 730 F. Supp. at 1107; *Arnold v. United States*, 1998 WL 1181206, 83 AFTR 2d 99-3018 (M.D. Fla. 1999).

**Tax Deficiency Procedures Not Applicable**

The main argument raised by the plaintiffs in each of the now-consolidated actions is that the Service failed to follow the tax deficiency notice procedures of I.R.C. § 6213 prior to issuing the jeopardy notices of levy in this case. The reversal of false withholding credits, as was done in this case, is not subject to the deficiency procedures. See I.R.C. §6201(a)(3), §6213(b)(2) and *Loadholt Trust v. Commissioner*, T.C. Memo. 2000-349. Therefore, the Service was correct in issuing the jeopardy levies without first issuing a notice of deficiency. § 6201(a)(3) provides:

> (3) Erroneous income tax prepayment credits
>
> If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213 (b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph.

Thus, "in certain circumstances, pursuant to the general authority of section 6201, the Commissioner can summarily (immediately) assess certain amounts, including overstatements [of withholding credits] on a return or a claim for refund of the credit for income tax withholdings." *Stephen C. Loadholt Trust v. Commissioner*, T.C. Memo. 2000-349, 2000 WL 1690283 (2000). The deficiency procedures do not apply to corrections of overstatements of withholding, which was the basis of the Wadman scheme.[3]

Unlike most cases involving a jeopardy levy, there was no jeopardy assessment in this case. Once the overstated and false withholdings were reversed, the tax on the remaining income Wadman reported was summarily assessed. The tax owed by an individual taxpayer on income reported on his personal income tax return is summarily "assessed" under I.R.C. § 6201(a)(1).

> **2. Golden West Holdings Trust and Tri-Star Real Estate Investment Trust, are nominees, alter egos, or mere conduits of Wadman and so their wrongful levy complaints should be dismissed for lack of jurisdiction.**

GWHT and Tri-Star each filed wrongful levy cases, contending that they were improper targets of a levy to collect Wadman's tax liabilities. The three cases are consolidated in this action. GWHT and Tri-Star cannot make the required showing under the wrongful levy statute that they have an interest in the property seized, because they are the nominees or alter egos holding property for Wadman.

Congress has expressly waived the sovereign immunity of the United States for actions by third parties whose property the IRS has levied to satisfy the tax liabilities of another person. See I.R.C. § 7426. Section 7426, in relevant part, provides as follows:

(a) Actions permitted.--

---

[3] Wadman's forum to contest the assessment is to (1) fully pay the tax and (2) make a claim for a tax refund. Wadman is familiar only with the latter.

- 11 -

> (1) Wrongful levy.--If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

In order to prevail in a wrongful levy action under 26 U.S.C. § 7426, (1) a plaintiff must first show some interest in the property to establish standing, (2) the burden then shifts to the IRS to prove a nexus between the property and the taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer. *See Flores v. United States*, 551 F.2d 1169, 1175, 1176 (9th Cir.1977); *Oxford Capital Corp. v. United States*, 211 F.3d 280 (5th Cir. 2000); *Century Hotels v. United States*, 952 F.2d 107, 109 (5th Cir.1992).[4] (9th Cir. 1977). "The first of these requirements ensures standing; the second focuses on the condition precedent to government seizure, a nexus between the taxpayer and the property." *Flores,* 551 F.2d at 1171*; see also Allied/Royal Parking L.P. v. United States,* 166 F.3d 1000, 1004 (9th Cir. 1999)*; Frierdich v. United States*, 985 F.2d 379, 383 (7th Cir.1993) ("the right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon"); *Aspinall v. United States*, 984 F.2d 355, 357 (10th Cir.1993) ("Under § 7426, a plaintiff must make an initial showing of some interest in the property levied on to have standing."); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 168 (D.C.Cir.1980).

If they existed at all, GWHT and Tri-Star held assets only as nominees for Wadman. Property held by a nominee will be encumbered by a federal tax lien against the property of the true owner. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51, (1977); *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 728-29

---

[4] The burden is on the United States to show nominee status by a preponderance of the evidence. *United States v. Marsh*, 114 F. Supp.2d 1036, 1046 (D. Hawaii 2000); *United States v. Reed*, 168 F.Supp.2d 1266, 1268 (D. Utah 2001).

- 12 -

(11th Cir.1989); *LiButti v. United States*, 107 F.3d 110, 119 (2nd Cir.1997). A nominee lacks standing to bring a wrongful levy claim. *City View Trust v. Hutton*, No. 98-CV-1001-B, 1998 WL 1031525, at *10 (D.Wyo. 1998).

Courts have considered the following factors to be relevant in determining whether an entity is the nominee of an individual: (a) no consideration or inadequate consideration paid by the nominee for the property; (b) property is placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) close relationship between transferor and the nominee; (d) failure to record a conveyance; (e) retention of possession by the transferor; and (f) continued enjoyment by the transferor of benefits of the transferred property. *Towe Antique Ford Foundation v. I.R.S.*, 791 F.Supp. 1450, 1454 (D.Mont. 1992), *aff'd*, 999 F. 2d 1387 (9th Cir. 1993), *citing United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031 (10th Cir.1974) (legal title holder was merely the nominee of the taxpayer); *United States v. Bell*, 27 F.Supp.2d 1191 (E.D. Cal. 1998). The key factor is the degree to which a party continues to exercise control over an entity and its assets. *Shades Ridge Holding Co., Inc.*, 888 F.2d at 728-29; *LiButti*, 107 F.3d at 119; *United States v. Bell*, 27 F.Supp.2d at 1195. Under California law, a "person cannot place his property ... beyond the reach of his creditors so long as he himself retains the right to ... use it...." *In re Camm's Estate*, 76 Cal.App.2d 104, 172 P.2d 547, 551 (1946).

**Close Relationship Between Transferor and the Nominee**

The circumstances show an identity of interest between GWHT, Tri-Star, and Wadman. Wadman was the trustee of each entity. Wadman had signature authority on the Suntrust bank accounts. There is no evidence of any beneficiary other than Wadman and Black. Under the common law of trusts, and under Florida law, being both trustee and beneficiary is sufficient to merge a trust. "A fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment; and no trust can exist where the same person possesses both." *Axtell v.*

*Coons*, 82 Fla. 158, 89 So. 419 (1921). Wadman therefore owned, as a matter of law, all property held by GWHT and Tri-Star.

**Wadman Exercised Control**

Wadman exercised complete control over the assets now claimed by GWHT and Tri-Star. He created the entities and had signature authority on the respective entity bank accounts at Suntrust Bank. Wadman spent funds from the entity accounts for his personal benefit, including the purchase and substantial renovation of his personal residence. The entities were integral participants in the fraudulent refund scheme. There is no evidence – other than bare legal title – of any existence of the entities separate from that of Wadman.

Wadman created and requested the initial Employer Identification Number ("EIN") for each entity. (Decl. Bloxham, ¶ 11). Payroll information is required to be reported to the IRS under the EIN of an entity such as GWHT or Tri-Star. For example, quarterly employment tax returns (Forms 941) list tax amounts withheld from employee's wages. IRS records for 2003 and 2004 show no filings of Forms 941 for GWHT and Tri-Star, indicating that they had no employees. (Decl. Bloxham, ¶ 12). Similarly, they reported no payments to independent contractors. (*Id.*, ¶ 13)

Wadman signed each of the tax returns of GWHT and Tri-Star, forms that also contained forged signatures of a law firm as the return preparer, but which were not in fact prepared by that firm. (Facts, ¶ 25-31, Salkin Decl.). Presumably the use of a firm as the tax preparer made the returns appear more credible. Wadman, under the name of Gary Emerson, was a client of the firm during his previous probation revocation. (Decl. Salkin, ¶ 10). Wadman's illegal use of the law firm identity further demonstrates his willingness to use false fronts to conceal his activities.

**Entities Paid No Consideration**

No consideration or fee was paid by either GWHT or Tri-Star in exchange for the large treasury checks which Wadman procured for them. This is not an arm's-length exchange between Wadman and the entities and so is more likely to be fraudulent.

1451869.1

Inadequate consideration is a factor to show nominee status. *Towe Antique Ford Foundation,* 791 F.Supp. at 1454. The entities had no capital apart from the scheme.

**Property Transferred in Anticipation of Occurrence of Liabilities**

After the scheme was uncovered, Wadman understood that the United States would seek to recover the money he obtained. The United States taxes persons on the value of the property they receive by theft. *James v. United States*, 366 U.S. 213, 218 (1961) (all unlawful gains are taxable). Even if he did not fear an order of restitution, Wadman knew or should have known he was incurring a massive tax liability as he spent the fraudulently-obtained refunds. This is an additional impending liability which motivated his use of nominees to hold property for him.

**Continued Enjoyment of Benefits after Transfer**

The purchase of classic cars is the epitome of a hobby. Holding the titles of the cars in the name of GWHT did not reduce Wadman's ability to use and enjoy the vehicles. The purchase and improvement of his private residence with the fraudulently-obtained refunds is another example.

Wadman filed a petition to commence a Chapter 11 bankruptcy case in Arizona on March 29, 2006. *In re William G. Wadman, V*, 2:06-00819-PHX-RJH (Bankr. D. Az.) In his Bankruptcy Schedules, Wadman has admitted in a sworn statement under penalty of perjury that he actually owned a Rolls Royce Silver Spur (titled in the name of GWHT). There can be no better evidence that GWHT holds property which in fact is owned by Wadman. Wadman at first opposed a motion to lift stay in his bankruptcy case, but later agreed to the sale of the cars so long as the proceeds were held by his bankruptcy attorney. Wadman also listed the Del Mar property, the Pompano Beach property, and the Key West property, all purchased or improved with tax refund money, as his assets in his bankruptcy schedules. This is an admission that the GWHT and Tri-Star property was in fact property of Wadman's bankruptcy estate, i.e. owned by Wadman. (Jennings Decl., Ex. 6, portions).

## CONCLUSION

The nominee factors applied to Wadman's circumstances, as a matter of law, show that Wadman held fraudulently-obtained refunds in other names in order to evade IRS detection and collection and to conceal illegal activity. The use of nominees to conceal ownership of property is exactly the type of concealment which also supports a conclusion that collection of tax from Wadman was in jeopardy. The illegal activity of the fraudulent tax refund scheme alone is sufficient to show the jeopardy levy was reasonable. Considered with the use of nominees, aliases, and forgery, it is difficult to imagine a case where collection of tax would appear to be in greater jeopardy. The Court is respectfully requested to summarily adjudicate the jeopardy levy issue in favor of the United States and to determine that there is no genuine issue of material fact as to the nominee or alter ego status of GWHT and Tri-Star, and that they therefore lack standing to bring their wrongful levy claims.

DIANE J. HUMETEWA
United States Attorney

Dated: September 26, 2008

/s/ G. Patrick Jennings
G. PATRICK JENNINGS
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 683
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6648